United States Department of Justice
Office of the United States Trustee
1100 Commerce St. Room 976
Dallas, Texas 75242
(214) 767-1073

Susan B. Hersh
for the United States Trustee
Texas Bar No. 09543925
Susan.Hersh@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **In re:** <br><br> **Scanrock Oil & Gas, Inc.**[1] <br> **Debtors.** | **Chapter 11** <br><br> **Case No. 25-90001-MXM-11** <br><br> **(Jointly Administered)** <br><br> **Hearing to be Set** |

**United States Trustee's Motion for An Order Directing the Appointment of**
**Chapter 11 Trustees under 11 U.S.C. § 1104(a)**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

Lisa L. Lambert, the United States Trustee for the Region 6 ("United States Trustee"), moves for the appointment of chapter 11 trustees under 11 U.S.C. § 1104(a). The United States Trustee would show:

**Summary**

Cause exists to direct the appointment of not less than three (3) chapter 11 trustees in the above cases due to irreconcilable conflicts of interest preventing the current identical decision

---

[1] The Debtors in these Chapter 11 cases are as follows: O'Ryan Family Limited Partnership 25-90003-MXM-11; O'Ryan Production & Exploration, Ltd. 25-90004-MXM-11; O'Ryan Ranches, Ltd. 25-40434-MXM-11; Ryan C. Hoerauf, Inc. 25-90006-MXM-11; Smackover Oil Treaters, Ltd. 25-90007-MXM-11; O'Ryan Ponderosa, LLC 25-90005-MXM-11; EON Production, LLC 25-90002-MXM-11

Motion for Appointment of Chapter 11 Trustees – Page 1

makers from proper exercise of their fiduciary duties. Each of these eight (8) debtors are directly or indirectly owned and/or controlled by Ryan C. Hoerauf ("Mr. Hoerauf"). Seven of the eight debtors are related to oil and gas production, of which two –Smackover Oil Treaters, Limited ("Smackover") and Ryan C. Hoerauf, Inc. d/b/a O'Ryan Oil & Gas ("RCH") were income producing entities and have the overwhelming majority of non-insider unsecured creditors. The revenue generated by Smackover and RCH has been transferred liberally to multiple other debtor and non-debtor entities in Mr. Hoerauf's orbit. As such, some of the primary assets of certain of these debtor estates may be the receivables owed to them from other debtor and non-debtor entities owned and/or controlled by Mr. Hoerauf and/or persons and entities related to him.

As such, it is impossible for there to be same decision maker for each of these entities and, more problematic, for the chapter 11 management decisions to be subject to the approval of Mr. Hoerauf.

Under the circumstances, the United States Trustee seeks the appointment of separate chapter 11 trustees for Smackover, RCH and O'Ryan Family Limited Partnership ("FLP") and for such other appointments as the Court deems necessary for the fulfillment of the fiduciary obligations of the presently filed chapter 11 debtors.

**Jurisdiction**

1.　The Court has subject matter jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. §157(a)(1), and the standing order of reference. Appointing a trustee impacts the case administration and therefore is a core matter that the Court has the power to resolve. 28 U.S.C. § 157(b)(2)(A).

2.　The United States Trustee has standing to seek appointments of chapter 11 trustees. 11 U.S.C. §§ 307, 1104.

**Facts**

3.  On February 3, 2025, Scanrock Oil & Gas, Inc. ("Scanrock") and O'Ryan Ranches, Ltd. ("Ranch") filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Texas.

4.  RCH, Smackover, and the remaining debtors filed voluntary chapter 11 petitions on February 9, 2025.

5.  All of the voluntary petitions were signed by Brad Walker, Chief Restructuring Officer ("Mr. Walker").

6.  On March 18, 2025, the United States Trustee appointed an official committee of unsecured creditors ("UCC") in these cases.

7.  A detailed background regarding the Debtors' businesses and the circumstances leading to the filing of the Debtors' cases was provided in the First Day Declaration filed by Mr. Walker, at Docket No. 28.

8.  Mr. Walker has testified on several occasions that the oil and gas revenues were routinely transferred to pay the expenses of other entities and for debt service generally.

9.  Mr. Walker further testified that he, and his professionals, are still working to accurately identify and account for the intercompany transfers among the Debtors and other related parties.

10. Mr. Hoerauf is the ultimate owner and controlling person of all of the debtor entities and, prior to Mr. Walker's retention a few days prior the filing, was primarily responsible for managing and running their business dealings.

11. Although Mr. Walker is the CRO for these Debtors, certain of his actions are subject to the approval of Mr. Hoerauf.

12.   On March 10, 2025, the Debtors each filed their Schedules of Assets and Liabilities and Statement of Financial Affairs.

13.   Each of the Debtor's filed Statements of Financial Affairs fails to disclose transfers made within the applicable period between and among the Debtors and other debtor and non-debtor affiliated entities, perhaps in part, due to the Debtors unilaterally changing the definition of "insider", as described in their "Global Notes," from the statutory definition in the Bankruptcy Code.

14.   The Debtors are indebted to Prosperity Bank, in the approximate amount $50 million, which is secured by a number of assets (including real property) owned by the Debtors and related non-debtor entities.

**Intercompany Transfers per the Schedules**

15.   The following summarizes, in part, certain intercompany transfers as can be identified from the various individual Schedules of Assets and Liabilities and Statement of Financial Affairs filed in these cases:

**Smackover Oil Treaters, Limited** (99% owned by FLP, 1% Ryan Missions)

- Notes/Accounts Receivables (assets):

    (i)    $6.4 -$7.1M due from RCH[2]

    (ii)   $14.3M due from FLP

    (iii)  $40K due from O'Ryan Production and Exploration, Ltd. ("OPE")

- Notes/Accounts Payable (liabilities):

---

[2] RHC schedules a debt to Smackover in the amount of $7.1M; Smackover schedules a receivable from RCH in the amount of $6.4M.

Motion for Appointment of Chapter 11 Trustees – Page 4

    (i)    $ 3.0M to RCH

    (ii)    $17.8 M to EON Production, LLC ("EON")

    (iii)    $33K to non-debtor O'Ryan Mission (its 1% owner)

**Ryan C. Hoerauf, Inc.** (100% owned by Ryan C. Hoerauf)

- Notes/Accounts Receivables (assets):

  - (i) $1.2 M due from Scanrock
  - (ii) $ 3.0 M due from Smackover
  - (iii) $ 12.7 M due from FLP
  - (iv) $5.3 M due from EON[3]
  - (v) An unknown amount due from Ranch[4]
  - (vi) $1.4K due from non-debtor Amber Hoerauf Trust
  - (vii) $ 553K due from non-debtor O'Ryan Heavy Haul, LLC[5]
  - (viii) $256K due from non-debtor Ryan Drillings/O'Ryan Drilling
  - (ix) $2.4 M due from non-debtor O'Ryan/Ryan (this may also be Drillings)
  - (x) $1.7 M due from non-debtor Ryan Properties

- Notes/Accounts Payable (liabilities):

  - (i) $ 873K to Scanrock
  - (ii) $ 7.1 M to Smackover
  - (iii) $55K to FLP
  - (iv) $7.75 M to OPE

---

[3] EON schedules a debt to RCH in the amount of $5.3M; RCH schedules a receivable from EON in the amount of $391K.
[4] Ranch schedules a debt to RCH in an unknown amount; RCH does not list any receivable owing from Ranch.
[5] RCH also schedules a liability to non-debtor O'Ryan Heavy Haul, LLC in the amount of $561K.

  (v)  $ 377K to EON

  (vi)  $153K to Ranch

  (vii)  $1.2 M to non-debtor Mr. Hoerauf

  (viii)  $ 306 K to non-debtor O'Ryan Missions

  (ix)  $159K to non-debtor Mathew Hoerauf Trust

  (x)  $150K to non-debtor Deanna K. Loerauf

**O'Ryan Family Limited Partnership** ("FLP")(owned 59% by Mr. Hoerauf, 40% by Ryan C. Hoerauf 2008 Delaware Trustee 1% Ryan Properties)

- Notes/Accounts Receivables (assets):

  (i)  $ 60 K due from Scanrock

  (ii)  $ 55K due from RCH

  (iii)  $ 2.7 M due from OPE

  (iv)  $3.0 M due from EON

  (v)  An unknown amount due from Ranch[6]

  (vi)  $1.3 M due from non-debtor Amber Hoerauf Trust

  (vii)  $ 767 K due from non-debtor Mathew Hoerauf Trust

  (viii)  $ 28 K due from non-debtor O'Ryan Heavy Haul, LLC

  (ix)  $ 1.6 M due from non-debtor Ryan Drillings/O'Ryan Drilling

- Notes/Accounts Payable (liabilities):

  (i)  $ 12.7 M to RCH

  (ii)  $ 14.3 M to Smackover

---

[6] Ranch schedules a debt to FLP in an unknown amount; FLP does not list any receivable owing from Ranch.

Motion for Appointment of Chapter 11 Trustees – Page 6

  (iii)  $ 6.15 M to O'Ryan/Ryan

  (iv)  $ 3.3 M to O'Ryan Mission

**Lack of Income in these Cases**

16. The Debtors have filed their monthly operating reports for the month of February 2025.

17. For February 2025, five Debtors reported zero income; two Debtors reported a loss: RCH: ($106K) and FLP ($48K); and one entity, Smackover, had $523,000.00 in revenue, which was transferred to RCH.

18. RCH owns some real property.

19. Ranch owns real property that is not income producing, but is otherwise incurring expenses.

## Legal Analysis and Argument

 **A. Appointment of a trustee required where there is a finding of cause or where it is in the best interest of creditors**

20. The United States Trustee is charged with monitoring the federal bankruptcy system. *See* 28 U.S.C. § 586(a)(3). *See also United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994).

21. Before confirmation, the Court "shall order the appointment of a trustee . . . for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause." 11 U.S.C. §1104(a)(1). Alternatively, the Court must appoint a trustee "if such appointment is in the interest of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2).

22. The duties of a trustee are defined in § 1106, and the Court has the ability to tailor some of them. 11 U.S.C. § 1106(a).

23. "Cause" to appoint a trustee may be a reason other than the enumerated factors. *Oklahoma Ref. Co. v. Blaik (In re Oklahoma Ref. Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988); *cf. Little Creek Dev. Corp. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Corp.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (defining "cause" in context of dismissal statute).

24. Courts have appointed trustees when the debtor's insiders have conflicts of interest arising from the sale of the debtor's assets. In *Cajun Electric*, the Fifth Circuit affirmed the appointment of a trustee, in part, because the co-operative members were interested in purchasing part or all of Cajun Electric's assets. *Cajun Elec. Power Cooperative, Inc. v. Central Louisiana Elec. Co., Inc. (In re Cajun Elec. Power Cooperative, Inc.)*, 69 F.3d 746, 751 (5th Cir. 1995) (Garza, J., dissenting), *adopted as majority opinion on reh'g,* 74 F.3d 599 (5th Cir. 1996). The Fifth Circuit held that "a trustee may be the only effective way to pursue reorganization" when the management has cross-purposes. *Cajun Elec.*, 69 F.2d at 751.

25. Two circuits have held that "cause" exists when appointing a chapter 11 trustee "is the only effective way to pursue reorganization." *Cajun Elec. Power Coop., Inc. v. Central La. Elec. Coop., Inc. (In re Cajun Elec. Power Coop., Inc.),* 74 F.3d 599, 600 (5th Cir.) (adopting on rehearing the opinion of dissent in 69 F.3d 746, 751), cert. denied, 519 U.S. 808 (1996); *see also In re Marvel Entertainment Group, Inc*., 140 F.3d 463 (3d Cir. 1998) (adopting reasoning of *Cajun Electric* and affirming appointment of trustee when acrimony between debtor's management and creditors undermined any ability to prosecute bankruptcy case). While *Cajun Electric* and *Marvel* have factual distinctions, both *Cajun Electric* and *Marvel* focused on the underlying problem that exists

in this case: this case can proceed properly through the chapter 11 process only if a chapter 11 trustee is appointed.

### B. Cause exists to appoint a chapter 11 trustee

26. Cause exists to appoint a trustee for each of the Smackover, FLP and RCH estates because management is conflicted from effectively maximizing the value of the Debtor's assets which include the recovery of the Debtors' prepetition transfers to insiders. The Smackover and RCH cases have the majority of non-insider unsecured creditors and FLP is also the owner of the entities that own the Oregon Ranch (which may have considerable equity), and which entities may also have been recipients or beneficiaries of pre-petition transfers of monies from these debtors. The transfers in these cases (which are still being investigated and identified) exceed tens of millions of dollars.

27. Other than the entities with real estate, the remaining Debtors have limited activity and limited assets with which to repay creditors and the value of which assets may depend on how (and from which assets) the claims of Prosperity Bank are satisfied. It is likely that the various receivables may be the more likely source of recovery for the unsecured creditors in this case. This is particularly true as certain of the related non-debtor parties who owe monies to the debtors may have valuable assets or other means with which to satisfy their obligations to the Debtors.

28. Just before they filed for bankruptcy, the Debtors retained Mr. Walker, as CRO. While he may be more objective, to the extent that he is still beholden to Mr. Hoerauf (or subject to Mr. Hoerauf's final decisions), he cannot be truly independent. However, even if Mr. Walker were truly independent, he cannot act a fiduciary for multiple entities with competing and mutually

exclusive interests – as is present under these facts.

29. At present, Mr. Walker is expected to act as a fiduciary for multiple debtors who have receivables owing from the same obligor (and for which he is also, simultaneously, expected to act as a fiduciary). This situation is untenable. A single decision maker cannot satisfy his fiduciary obligations to competing and conflicting interests simultaneously. Moreover, Mr. Hoerauf still maintains significant control over these debtors and he, independently, has personal interests that conflict with the fiduciary obligations of these debtors.

30. Chapter 11 trustees would be better positioned to investigate, assert and seek recovery of assets resulting from Debtors' pre-petition transfers to insiders. The only types of fiduciaries provided for under the Code are trustees and examiners. *See* 11 U.S.C. § 1104; *see also In re Adelphia Comm. Corp.,* 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006). *Cf. In re Roxwell Performance Drilling, LLC,* Case No. 13-50301-RLJ-11, 2013 WL 6799118, at *4-*5 (Bankr. N.D. Tex. Dec. 20, 2013)(directing appointment of a chapter 11 trustee because duties of receiver, who authorized debtor to file bankruptcy, were "wholly ill-defined" under the Bankruptcy Code). A chapter 11 trustee would not be beholden to Debtors' shareholders and has clear authority under Chapter 5 of the Bankruptcy Code to investigate and prosecute these transactions. Furthermore, a chapter 11 trustee would control any pre-petition attorney-client privilege on the Debtors' behalf, which would assist in determining whether the Debtors' transfers to insiders are avoidable. *Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 355-56 (1985).

31. Although the UCC will be helpful in these cases, only a trustee or debtor-in-possession has "*independent* standing to pursue chapter 5 avoidance actions and other estate causes of action." *In re Cooper,* 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009). The Fifth Circuit Court of Appeals has

Motion for Appointment of Chapter 11 Trustees – Page 10

held stated that if "harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate…In that situation, only the bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in the recovery." *Buccaneer Energy Ltd. v. Burton (In re Buccaneer Resources), LLC,* 912 F.3d 291, 293 (5th Cir. 2019)(citations omitted).

  C. **It is in the best interests of creditors to appoint chapter 11 trustees**.

32. Appointment of chapter 11 trustees for Smackover, RCH and FLP is also in the best interests of creditors, equity security holders, and other interests of the estate. The Court should direct the appointment of a chapter 11 trustee to serve the "interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. §1104(a)(2).

33. It is in the best interests of creditors to have an independent trustee assume control over each of the Smackover, RCH, and FLP estates. Neutral trustees can determine how best to proceed in investigating and recovering possible fraudulent transfers. Chapter 11 trustees would assist in maximizing estate proceeds for the benefit of creditors. Therefore, it is in the best interests of creditors and the estate to appoint chapter 11 trustees.

## Conclusion

  In conclusion, the United States Trustee respectfully requests this Court to enter an order directing her to appoint a chapter 11 trustee for each of the estates of Smackover, RCH and FLP and such other appointments as the Court deems necessary. The United States Trustee further requests any other relief to which she may be entitled.

DATED: March 28, 2025          Respectfully submitted,

                                               LISA L. LAMBERT
                                               UNITED STATES TRUSTEE

                                               */s/ Susan B. Hersh*
                                               Texas State Bar No. 09543925
                                               Office of the United States Trustee
                                               1100 Commerce Street, Room 976
                                               Dallas, Texas 75242
                                               (214) 767-1073
                                               susan.hersh@usdoj.gov

## **Certificate of Conference**

I certify that on March 28, 2025, I conferred with Garrick Smith and Davor Rukavina, counsel for Debtors, who informed me that Debtors oppose the relief sought in this Motion.

                                               */s/ Susan B. Hersh*

## **Certificate of Service**

I certify that a copy of the foregoing document was served via ECF on the date this motion was filed on all parties entitled to receive such notice.

                                               */s/ Susan B. Hersh*