Phillip Lamberson - Texas Bar No. 00794134
Annmarie Chiarello - Texas Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 745-5400
Facsimile:   (214) 745-5390
E-mail: plamberson@winstead.com
E-mail: achiarello@winstead.com

**ATTORNEYS FOR PROSPERITY BANK**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **SCANROCK OIL & GAS, INC.** *et al.*,[1] | § | |
| | § | CASE NO. 25-90001-MXM |
| DEBTORS. | § | |

## PROSPERITY BANK'S PARTIAL JOINDER TO UNITED STATES TRUSTEE MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF CHAPTER 11 TRUSTEES UNDER 11 U.S.C. §1104(a)

Prosperity Bank ("Prosperity") files this Partial Joinder (the "Joinder") to United States Trustee's Motion for an Order Directing the Appointment of Chapter 11 Trustees [Dkt No. 183] under 11 U.S.C. §1104(a) (the "Trustee Motion") and states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Scanrock Oil & Gas, Inc. (0380); O'Ryan Family Limited Partnership (1913); O'Ryan Production & Exploration Ltd. (9950); Ryan C. Hoerauf, Inc. (0493); Smackover Oil Treaters, Ltd. (9529); O'Ryan Ponderosa, LLC (1476); EON Production, LLC (0136); and O'Ryan Ranches, Ltd. (7184). The location of the Debtors' service address is 8180 Lakeview Center, Ste. 300, Odessa, TX 79765.

---

**PROSPERITY'S PARTIAL JOINDER TO TRUSTEE MOTION**                                   **Page 1 of 10**

## BACKGROUND

*A.     Prosperity's Claim*

1.  Prosperity is owed about $50,000,000 by the Debtors and various non-debtors, including Ryan Hoerauf, the Debtors' principal. Prosperity's collateral primarily consists of the following:

   a. A roughly 1,700 acre ranch in Llano County, Texas owned by Debtor O'Ryan Ranches, Ltd. (the "Llano Ranch"). The Llano Ranch generates no meaningful income. The Debtors recently listed a smaller undeveloped portion of the Llano Ranch for an exorbitant price.[2] The Debtors have not listed the valuable lake and improvements, nor the majority of the acreage, of the Llano Ranch.

   b. A roughly 44,000 acre ranch in Crooks County, Oregon owned by two non-debtor entities (the "Oregon Ranch"), although those entities are owned by O'Ryan Family Limited Partnership, which is a Debtor. The Oregon Ranch generates no meaningful income, but has significant upkeep expenses. The Oregon Ranch has been listed for sale with at least two different brokers beginning in 2021, although it has only been *fully* listed in the last month or so.[3] The Oregon Ranch has also been listed at $75 million, which about 25% above its appraised value of $60 million, raising the question of whether even now the Debtors are actually serious about selling the Oregon Ranch.

---

[2] According Mr. Walker's testimony, the listing price will be $17,800 per acre. Based on a review on Land.com, this would make the listing far and away the most expensive land only listing for property in Llano County not directly located on the Llano River.
[3] Prosperity holds a second lien on the Oregon Ranch.

---
**PROSPERITY'S PARTIAL JOINDER TO TRUSTEE MOTION**                                                    Page 2 of 10

    c. A lake house at Horseshoe Bend, Texas owned by non-debtor Ryan Hoerauf, individually, and valued at roughly $3 to 4 million.[4] To the best of the Lender's knowledge, the lake house is not listed for sale.

    d. 64,000 shares of stock in PB Materials Holdings, Inc. ("PB Materials") owned by Debtor O'Ryan Production & Exploration, Ltd. (the "PB Materials Stock"). Certificate #4 issued by PB Materials and documenting the PB Materials Stock is currently in Prosperity's possession. In early 2024, Mr. Hoerauf represented to Prosperity that the PB Materials Stock was worth about $13,000,000. As discussed below, most of the PB Materials Stock was allegedly secretly sold without Prosperity's consent around the first of the year for about $4,200,000.[5]

    e. Various oil and gas producing and processing assets owned by some of the Debtors, which currently lose about $450,000 per month without including administrative expenses of this case.

2. These cases were filed to stop Prosperity's scheduled foreclosure sales for the Llano Ranch and the PB Materials Stock.

### B. *Sale of the PB Materials Stock*

3. As noted, O'Ryan Production and Exploration, Ltd. (of the Debtors in this case) (the "P&E Debtor") owned 64,0000 of stock in PB Materials, a privately held business based in Odessa, Texas but with locations throughout west Texas and eastern New Mexico. Indisputably, Prosperity held a lien on the PB Materials Stock, including a pledge from the P&E Debtor, a filed UCC-1 specifically listing the stock and even physical possession of the stock certificate.

---

[4] Prosperity holds a second lien on the lake house behind Mr. Hoerauf's ex-wife's support obligations.
[5] Although Brad Walker has testified that the PB Materials Stock was sold for about $4.6 million, the limited sale materials provided to Prosperity only show a deposit of roughly $4.2 million. The whereabouts of the other $400,000 is unknown.

---

**PROSPERITY'S PARTIAL JOINDER TO TRUSTEE MOTION**      Page 3 of 10

4. In late 2024, Prosperity was advised for the first time that 58,000 shares (roughly 90%) of the PB Materials Stock had been sold to PB Materials and received $4,212,406.00 in net proceeds. To this day, Prosperity is unaware of how the P&E Debtor was able to sell the PB Materials Stock without Prosperity' consent or releasing its lien and while Prosperity was holding the stock certificate issued by PB Materials, and Prosperity reserves all rights related to this alleged sale.[6]

5. The Debtors have funded this case entirely from the proceeds of the PB Materials Stock, including a failed new drill, a likely failed workover, significant professional expenses, a huge raise to the Debtors' principal, Ryan Hoerauf, and even a $130,000 mortgage payment for the benefit of a non-debtor insider.

*C.    The Debtors Failed Drill and Workover*

6. Henderson (Smackover) Unit #6 ("HSU #6") is a well the Debtors recently drilled on an existing oil and gas lease in Henderson County, Texas. HSU #6 was completed around the Petition Date. The Debtors projected that HSU #6 will produce more hydrocarbons than all of their other wells combined – about $1,000,000 per month at current prices. However, the Debtors have admitted that HSU #6 is a dry hole, and will not produce any meaningful hydrocarbons, even after an acidization treatment.

7. Unbeknownst to Prosperity (at least until after the fact), the Debtors paid for the drilling and completion of HSU #6 from Prosperity's collateral. At least $ 1,600,000 came from the proceeds of the alleged sale of the PB Materials Stock, and $700,000 came from the proceeds of the sale of properties in Lea County, New Mexico. Notably, Prosperity was not told that the PB Materials Stock was being sold and Prosperity did not consent to the sale of the PB Materials

---

[6] Prosperity is undertaking discovery on this point in connection with this Joinder, and reserves the right to amend this Joinder.

**PROSPERITY'S PARTIAL JOINDER TO TRUSTEE MOTION**    Page 4 of 10

Stock, even though Prosperity holds a perfected lien on such stock and even holds the physical stock certificate. As to the Lea County proceeds, Prosperity agreed in writing with the Debtors that about $315,000 could be used for workovers on two wells named Cedar Creek and Henderson (Smackover) Unit #5 ("HSU #5"); instead, it appears the Debtors used $700,000 to drill HSU #6.

8. The Debtors also used approximately at least $750,000 of Prosperity's collateral, including PB Materials Stock proceeds, to perform a workover on HSU #5. This workover also appears to be a failure, although the Debtors continue to spend unauthorized cash collateral to complete this workover.[7]

9. As the Court is aware, the Debtors operations are cash flow negative. The Debtors' recently approved cash collateral budget shows that they lose about $434,000 per month from oil and gas operations before paying any debt service or expenses from this bankruptcy case. See Docket # 201, pg. 35. Including Chapter 11 professional expenses, the Debtors lose more than $1,300,000 per month. *Id*. HSU #6 will not help this situation because it is a dry hole. It is unlikely that the workover on HSU #5 will help much either. The Debtors have been thus far been filling the gap with the remaining proceeds from the PB Materials Stock, although they are projected to run out of money this month (April 2024).

10. Even more concerning, the Debtors have also largely ignored the cash collateral budgets approved by this Court and agreed to by Prosperity. The best example of this is the Debtors' use of funds for HSU #5 and HSU #6. The Debtors' March cash collateral budget budgeted $80,000 for HSU #5 and HSU #6, but the Debtors actually spent $193,143 on these wells in March. The Debtors' April cash collateral budget budgeted $30,000 for HSU #5 and HSU #6,

---
[7] Based on representations that the Debtors made to Prosperity in connection with a pre-petition forbearance agreement (attached), the workover on HSU #5 started in November 2024 – six months ago. It has yet to produce a single barrel of oil.

_____

but astoundingly the Debtors actually spent $270,000 on these wells *so far* in April. To Prosperity's knowledge, neither of these wells has yet produced any hydrocarbons in this case. Rather, this money was spent out of desperation by the Debtors to drill their way out of their problems.

### D. *The Oregon Ranch*

11. As noted, the Oregon Ranch has been listed since 2021 by at least two different brokers. But it was just in the last month or so that the full 44,000 acres of the Oregon Ranch were listed for sale, and even then at a huge price jump that put the price 25% above the ranch's appraised value.

12. As the Court is aware, in March 2024, a $68,000,000 offer was allegedly made and was accepted for the Oregon Ranch, although the buyer backed out as soon as it was required to post a deposit. Prosperity has deep suspicions about the legitimacy of this offer because:

(1) Although the buyer was presented as a significant real estate investor and its principal as a wealthy and prominent business executive, background searches disprove this. To the contrary, the buyer appears to be a small real estate investor with few properties and the principal appears to have never worked for any entities other than his own small companies and possibly as a country club manager. The principal also appears to have previously filed chapter 7 bankruptcy and had multiple non-dischargeable fraud judgments entered against him in connection with a real estate purchase scam where he represented that he would use funds from a family trust (that did not exist) to acquire a golf course;

(2) The offer was for *more* than the then current listing price (almost exactly enough to pay the first lien and Prosperity after closing costs) even accounting for the extra acreage the purchaser was allegedly acquiring;

___

(3) The buyer never provided proof of funds, but rather provided a letter from a very small accounting firm in a small Oregon city effectively promising that the buyer had the necessary funding to acquire the Oregon Ranch with no specifics and, *notably* directing all further questions to the alleged buyer and principal, not the accounting firm that allegedly sent the letter. When Prosperity repeatedly pointed out that this letter was not proof of funds and requested that the buyer provide actual proof of liquid funds or that the Debtors reach out to the accounting firm to confirm the accuracy of the letter, the Debtors ignored the request;

(4) The buyer backed out of the contract (having provided nothing but a signature) on the very day it was required to provide a deposit.[8]

13. Ryan Hoerauf, the Debtors' principal, also obstructed the Oregon Ranch sale process for his personal benefit. When the offer was first made, Hoerauf demanded that he retain a stake in the entity that would be the new owner of the Oregon Ranch. When the buyer recommended that this be disclosed, Hoerauf required that his participation be excluded from what was presented to Prosperity and in the bankruptcy case. In emails, the buyer made it very clear that this was Hoerauf's demand, not his, and even initially backed out of the contract over this issue. Ultimately, the buyer agreed to language that the parties would negotiate Hoerauf's personal ongoing interest in the Oregon Ranch, but this was not a condition to closing. This may have been intended as an "anchoring" term that other (real) buyers were expected to follow.

---

[8] Notably, this same buyer had provided a LOI to purchase the Oregon Ranch pre-petition as well, but also backed out of that offer.

---

**PROSPERITY'S PARTIAL JOINDER TO TRUSTEE MOTION**　　　　　　　　　　　　　　　　　　**Page 7 of 10**

# JOINDER

## I. A Trustee Should be Appointed for Debtors O'Ryan Family Limited Partnership and O'Ryan Ranches, Ltd.

14. Prosperity joins the US Trustee's request that a chapter 11 trustee be appointed for O'Ryan Family Limited Partnership, which is the Debtor that indirectly owns and controls the Oregon Ranch. The Oregon Ranch must be sold as soon as possible, with no games or gotchas. These cases cannot possibly succeed with the Debtors collectively owing Prosperity $50,000,000 and other creditors millions more, but owning a nice ranch. Although the Debtors presumably acknowledge this, they (more specifically Hoerauf) refuse to take appropriate action on it. A trustee charged with selling the Oregon Ranch in the most prudent and expeditious manner is critical. The parties can be assured that a trustee will sell the Oregon Ranch, and will not have ulterior motives and/or be driven by desperation to try to achieve unrealistic results.

15. Prosperity also agrees with the conflicts between the estates raised by the US Trustee in the Trustee Motion. The ranch entities appear to have received funds from the non-ranch entities that may create a claim for the benefit of those entities. A trustee will be in a position to analyze these claims made against its estate objectively and resolve them without the conflicts Hoerauf has in trying to keep these funds for himself and his trusts (as the equity owners of the ranch entities). A trustee can also analyze whether substantive consolidation is a proper remedy here in an objective and disinterested manner.[9]

16. For identical reasons, Prosperity believes that the same trustee should be appointed for O'Ryan Ranches, Ltd. (the entity that owns the Llano Ranch). The Llano Ranch should also

---

[9] To be clear, Prosperity is not advocating for substantive consolidation nor admitting that it is an appropriate remedy here.

be sold, or at least the decision on when and how to sell it made, by a trustee in order to fund creditor claims in this case.

17. Taken at its most basic level, these cases can be broken down into two camps: *first*, the real estate/ranch debtors that have assets that should be liquidated to pay claims, including legitimate claims of other debtors; and *second*, the oil and gas debtors that unfortunately likely do not have assets that can be liquidated for much positive value (based on the failed new drill and workover and significant royalty liabilities), but may have claims against the ranch entities. Aligning the fiduciaries to maximize this structure is the spirit of the US Trustee's Trustee Motion, and Prosperity supports it.

## II. A Trustee Should Not be Appointed for Debtors Ryan C. Hoerauf, Inc. and Smackover Oil Treaters, Ltd.

18. Finally, at this time, Prosperity does not agree that trustees should be appointed for Debtors Ryan C. Hoerauf, Inc. and Smackover Oil Treaters, Ltd. Although those debtors may have conflicting claims with other debtors (and maybe each other), Prosperity currently believes that the unsecured creditors committee can appropriately analyze and assert any claims these estates might have for the benefit of unsecured creditors. Again, if substantive consolidation is the ultimate remedy in this case, having competing trustees complicates folding the estates together. It would also be incredibly disruptive and expensive to have multiple trustees, and Prosperity would prefer to reach that as a last resort.

## **PRAYER**

Prosperity requests that the Court immediately order the appointment of a chapter 11 trustee for O'Ryan Family Limited Partnership and O'Ryan Ranches, Ltd. Prosperity also requests general relief.

**DATED:  April 23, 2025.**

Respectfully submitted,

By:  */s/ Phillip Lamberson*
Phillip Lamberson
Texas Bar No. 00794134
Annmarie Chiarello
Texas Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 745-5400
Facsimile:  (214) 745-5390
E-mail:  plamberson@winstead.com
E-mail:  achiarello@winstead.com

**ATTORNEYS FOR PROSPERITY BANK**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2025, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding pursuant to the Electronic Filing Procedures in this District.

*/s/ Phillip Lamberson*
One of Counsel

4907-4338-8464v.4 57235-190 4/23/2025