IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCANROCK OIL & GAS, INC., *et al.*, | § | Case No. 25-90001-mxm-11 |
| | § | |
| Debtors. | § | Jointly Administered |

---

## DEBTORS' JOINT CONSOLIDATED PLAN OF REORGANIZATION

---

| | |
|---|---|
| Davor Rukavina, Esq.<br>Texas Bar No. 24030781<br>Thomas D. Berghman, Esq.<br>Texas Bar No. 24082683<br>Garrick C. Smith, Esq.<br>Texas Bar No. 24088435<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>4000 Ross Tower<br>500 N. Akard Street<br>Dallas, Texas  75201<br>Telephone: (214) 855-7500<br><br>**ATTORNEYS FOR THE**<br>**OIL AND GAS DEBTORS** | Hudson M. Jobe, Esq.<br>Texas Bar No. 24041189<br>**JOBE LAW PLLC**<br>6060 North Central Expressway, Suite 500<br>Dallas, TX 75206<br>(214) 807-0563<br>hjobe@jobelawpllc.com<br><br>**ATTORNEYS FOR**<br>**O'RYAN RANCHES, LTD.** |

**DATED: APRIL 28, 2025.**

## TABLE OF CONTENTS

I. DEFINITIONS AND INTERPRETATION.................................................................1

   1.1. Rules of Interpretation .................................................................1
   1.2. Definitions.................................................................................1

II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS............................10

   2.1. Classification Generally................................................................10
   2.2. Unclassified Claims ....................................................................10
   2.3. Classified Claims and Interests ....................................................10

III. PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS............10

   3.1. Administrative Claim Applications and Deadline ..............................10
   3.2. Treatment of Allowed Administrative Claims...................................11
   3.3. Treatment of Professional Claims..................................................11
   3.4. Administrative Tax Claims...........................................................11
   3.5  Section 505 ..............................................................................12

IV. PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS ................12

   4.1. Class 1:    Priority Claims...........................................................12
   4.2. Class 2:    Secured Tax Claims....................................................12
   4.3. Class 3:    AgWest Secured Claim ..............................................12
   4.4. Class 4:    Prosperity Bank Secured Claims...................................14
   4.5. Class 5:    Mechanics Liens Secured Claims.................................16
   4.6. Class 6:    Royalty Claims..........................................................16
   4.7. Class 7:    Unsecured Claims......................................................17
   4.8. Class 8:    Convenience Claims...................................................18
   4.9. Class 9:    Equity Interests .........................................................19

V. MEANS FOR IMPLEMENTATION OF THE PLAN.........................................19

   5.1.  Substantive Consolidation .........................................................19
   5.2.  Plan Funding...........................................................................20
   5.3.  Sale of the Oregon Ranch .........................................................20
   5.4   Sale of the Llano Ranch Parcel 1 ...............................................22
   5.5.  Conditional Sale of Llano Ranch Parcel 2....................................23
   5.6.  Modification of Prosperity Bank Liens.........................................24
   5.7.  Exit Financing.........................................................................24
   5.8.  The Hoerauf Contribution..........................................................24
   5.9.  Maintenance of the Oregon Ranch ..............................................25
   5.10.  Junior Lien for Allowed Royalty Claims .....................................25
   5.11. Assumption of Executory Contracts ...........................................26
   5.12. Vesting of Assets....................................................................26
   5.13. Assumption of Debt.................................................................26
   5.14. Automatic Stay.......................................................................26

5.15. Rights Under Section 505 ...................................................................................27
5.16. Management of the Reorganized Debtors.........................................................27
5.17. Prohibition of Dividends ...................................................................................27
5.18. Corporate Existence ..........................................................................................27
5.19. Incorporation of Exhibits ..................................................................................27
5.20. Prepayment .........................................................................................................28
5.21. Retention of Preservation of Causes of Action ................................................28
5.22. Prohibition on Creditor Action .........................................................................28
5.23  Plan Agent ..........................................................................................................28
5.24  Postconfirmation Reporting ...............................................................................30
5.25  Default and Cure ................................................................................................30
5.26  Creditor Escrow .................................................................................................30
5.27  Dissolution of Committee ..................................................................................31

VI.  ACCEPTANCE OR REJECTION OF PLAN....................................................................31

6.1.  Impairment Controversies..................................................................................31
6.2.  Classes and Claims Entitled to Vote .................................................................31

VII.  TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS ..................31

7.1.  Objection Deadline .............................................................................................31
7.2.  Creditor Response to Objection .........................................................................31
7.3.  No Waiver of Right to Object.............................................................................32
7.4.  Miscellaneous Provisions for Disputed Claims ................................................32
7.5.  Allowance of Disputed Claims ..........................................................................32
7.6  Amendments to Claims; Claims Filed After the Confirmation Date ........................33
7.1  Disputed Claims Reserves ..................................................................................33

VIII.  EFFECTS OF PLAN CONFIRMATION...........................................................................34

8.1.  Discharge ............................................................................................................34
8.2.  Plan Injunction ...................................................................................................34
8.3.  No Liability for Solicitation or Participation ....................................................34
8.4.  Exculpation .........................................................................................................34

IX.  CONDITIONS PRECEDENT............................................................................................35

9.1.  Conditions Precedent to Confirmation and Effectiveness of Plan.............................35
9.2.  Non-Occurrence of the Effective Date ..............................................................35
9.3.  Notice of the Effective Date ..............................................................................35
9.4.  Modification of this Plan ....................................................................................35
9.5.  Revocation or Withdrawal of this Plan ..............................................................36
9.6.  Inadmissible Settlement Offer ...........................................................................36

X.  RETENTION OF JURISDICTION AND CLAIMS ..........................................................36

10.1.  Jurisdiction of Bankruptcy Court.......................................................................36
10.2.  Failure of Bankruptcy Court to Exercise Jurisdiction......................................38
10.3.  No Creation of Jurisdiction ...............................................................................38

10.4.   Retention and Preservation of General Rights ......................................................38
10.5.   Retention and Preservation of Specific Rights ....................................................38

XI.  MISCELLANEOUS PROVISIONS ...............................................................................39

11.1.  Payment of Statutory Fees ..................................................................................39
11.2.  Exercise of Liens ..................................................................................................39
11.3.  No Admissions ......................................................................................................39
11.4.  Plan Controls ........................................................................................................39
11.5.  Governing Law ......................................................................................................39
11.6.  Substantial Consummation of Plan ....................................................................39
11.7.  Successors and Assigns ......................................................................................39
11.8.  Severability ...........................................................................................................39
11.9.  Notices and Distributions ....................................................................................39
11.10.  Unclaimed Property ............................................................................................40
11.11.  Binding Effect .....................................................................................................40
11.12.  Withholding and Reporting ................................................................................40
11.13   Credit for Non-Debtor Payments .......................................................................40

XII.  CONFIRMATION REQUEST ......................................................................................40

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCANROCK OIL & GAS, INC., *et al.*, | § | Case No. 25-90001-mxm-11 |
| | § | |
| Debtors. | § | Jointly Administered |

## DEBTORS' JOINT CONSOLIDATED PLAN OF REORGANIZATION

The Debtors (defined below), being the debtors-in-possession in the above styled and numbered jointly administered Bankruptcy Case (defined below), hereby propose the following *Joint Consolidated Plan of Reorganization* pursuant to section 1121 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1    Rules of Interpretation.

(i)    Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time.  Words denoting the singular number shall include the plural number and *vice versa*.  In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

(ii)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii)    Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor (although the Plan is otherwise already binding on all partoes-in-interest and creditors).

1.2    Definitions.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

**"Administrative Claim"** means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.  For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

"**<u>Administrative Claims Bar Date</u>**" means the day that is thirty (30) days after the Effective Date.

"**<u>Administrative Tax Claim</u>**" means any *ad valorem* tax claim assessed against, or payable by, the Debtors or the Estates or their property for or on account of a period after the Petition Date, specifically excluding Secured Tax Claims.

"**<u>AgWest</u>**" means AgWest Farm Credit, FLCA.

"**<u>AgWest Loan Documents</u>**" means all promissory notes, deeds of trust, fixture filings, grants of security interests, and other agreements between the Oregon Debtors and AgWest, including that certain Deed of Trust Financing Statement and Fixture Filing dated February 8, 2023 and recorded as Instrument No. 2023-321165 in the records of Crook County, Oregon, and the promissory notes dated February 8, 2023 and March 22, 2019 from the Oregon Debtors.

"**<u>AgWest Secured Claim</u>**" means all Claims, rights, and interests of AgWest against the Oregon Ranch and the Oregon Debtors as of the Petition Date under the AgWest Loan Documents and all applicable law, including all principal, interest, default interest, and other fees and charges permitted under the applicable AgWest Loan Documents and applicable law.

"**<u>Allowed</u>**" as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

(i)     which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which:
    a.  no proof of Claim has been timely filed; and
    b.  no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

(ii)    as to which a proof of Claim has been timely filed and either:
    a.  no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or
    b.  such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)   which has been expressly allowed under the provisions of this Plan; or

(iv)    which has been expressly allowed by Final Order of the Bankruptcy Court.

"**<u>Allowed Administrative Claim</u>**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (ii) an Administrative Claim which: (a) is incurred by the Debtors after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtors; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**<u>Allowed Priority Claim</u>**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**<u>Allowed Secured Claim</u>**" means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**<u>Allowed Unsecured Claim</u>**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**<u>Avoidance Actions</u>**" means any and all rights, claims or actions which the Debtors may assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

"**<u>Bankruptcy Case</u>**" means jointly administered Bankruptcy Case No. 25-90001-mxm-11 in the Bankruptcy Court.

"**<u>Bankruptcy Code</u>**" means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**<u>Bankruptcy Court</u>**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**<u>Bankruptcy Rules</u>**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"**<u>Bar Date</u>**" means, with respect to each Debtor, the date established by an order of the Bankruptcy Court or by a provision of the Bankruptcy Code or Bankruptcy Rules by which any given creditor must file a proof of claim against that Debtor's Estate.

"**<u>Business Day</u>**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**<u>Claim</u>**" means a claim against one or more of the Debtors, the Estates, and/or property of the Debtors or the Estates, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said section 101(5) of the Bankruptcy Code.

"**<u>Claims Objection Deadline</u>**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be 120 days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

"**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case by the United States Trustee.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Consolidated Estate**" has the meaning assigned to it in section 5.1.1 of this Plan.

"**Convenience Class Claim**" has the meaning assigned to it in section 4.8.1 of this Plan.

"**Creditor**" means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Creditor Escrow**" has the meaning assigned to it in section 5.26 of this Plan.

"**Cure Claim**" means a Claim required to be paid under section 365 of the Bankruptcy Code in order to assume any Executory Contract, including, as may be applicable, any nonmonetary portion thereof.

"**Debtor**" means any of the Debtors.

"**Debtors**" means, collectively, Scanrock Oil & Gas, Inc.; EON Production, LLC; O'Ryan Family Limited Partnership; O'Ryan Production & Exploration Ltd.; O'Ryan Ponderosa, LLC; Ryan C. Hoerauf, Inc.; and Smackover Oil Treaters, Ltd.; and O'Ryan Ranches, Ltd.; O'Ryan Ranches, LLC; and O'Ryan Oregon Ranches, LLC.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i)     has been disallowed by a Final Order of the Bankruptcy Court;

(ii)     is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or

(iii)    is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

"**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article IX hereof are satisfied.

"**Equity Interests**" means any ownership of any equity in the Debtors, including, as may be applicable, any membership unit, partnership interest, share, stock, or stock certificate.

"**Estate**" means the estate created for each Debtor pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Estates**" means, collectively, each Estate.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtors as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code, expressly excluding Oil and Gas Leases.

"**Exit Financing**" has the definition assigned to it in section 5.7 of this Plan.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i)    the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or

(ii)    any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**Hoerauf**" means Ryan C. Hoerauf.

"**Hoerauf Contribution**" has the meaning assigned to it in section 5.8 of this Plan.

"**Hoerauf House**" means that certain real property and improvements located thereon located at 18 La Paz Cir., Odessa, Texas 79765.

"**Hoerauf Releasees**" means each of Hoerauf, Mathew Hoerauf, Amber Hoerauf Gill, Condor Ranches, LLC, Amber Hoerauf Trust, Amber Hoerauf Children's Trust, ARG Trust, Mathew Hoerauf Trust, MRH Trust, Ryan C. Hoerauf 2008 Delaware Trust, Ryan C. Hoerauf Grantor Retained Annuity Trust, and further includes the spouse, child, stepchild, trustee, employee, member, manager, representative, agent, or attorney of any of the foregoing.

"**Llano Ranch**" means all real property, improvements, timber, minerals, and fixtures, but expressly excluding personal property (including vehicles, furnishings, and furniture), owned by O'Ryan Ranches, consisting of approximately 1,739.514 contiguous acres of real property located in the southwest portion of Llano County, Texas.

"**Llano Ranch Parcel 1**" means a portion of the Llano Ranch, identified as 817 +/- acres out of - W RABB ABST #624 3.012 AC, H W Karnes ABST #444 655.324 AC, M MOSS ABST #501, 381.927 AC, H W Karnes ABST #444 0.500 AC, J B Mattingly ABST #497 233.501 AC, M MOSS ABST #501 340.136 AC, J B Mattingly ABST #497 125.114 AC, as more specifically identified on Exhibit ____ to the Disclosure Statement.

"**Llano Ranch Parcel 2**" means all of the Llano Ranch other than the Llano Ranch Parcel 1.

"**Mechanics Liens Secured Claims**" means a claim against the Oil and Gas Debtors asserted to be secured by a mechanics or materialman's lien where such claim and lien arise prior to the Petition Date.

"**Oil and Gas Debtors**" means Scanrock Oil & Gas, Inc., EON Production, LLC, O'Ryan Production & Exploration Ltd., O'Ryan Family Limited Partnership, O'Ryan Ponderosa, LLC, Ryan C. Hoerauf, Inc., and Smackover Oil Treaters, Ltd.

"**Oil and Gas Leases**" means any and all unexpired leases or instruments in which any of the Debtors or Reorganized Debtors, as the case may be, hold an existing leasehold, working interest, royalty interest, or similar interest in oil and gas and/or other liquid or gaseous hydrocarbons, including methane, and all other minerals including, but not limited to, brine, minerals, non-hydrocarbons, and all substances that may be later extracted from any such brine, including, but not limited to, bromine, lithium chloride, magnesium or zinc, as of the Effective Date.

"**Oregon Ranch Carbon Credits**" means any past, present, or future rights to payment, including as the same may be presently under negotiation, that either or both of the Oregon Debtors may claim or obtain from any source, related to carbon credits from their ownership and/or operation of the Oregon Ranch.

"**Oregon Debtors**" means, together, O'Ryan Ranches, LLC and O'Ryan Oregon Ranches, LLC.

"**<u>Oregon Ranch</u>**" means all real property, improvements, timber, minerals, and fixtures, but expressly excluding personal property (including vehicles, furnishings, and furniture), owned by either or both of the Oregon Debtors in the State of Oregon, and otherwise known as the "Ochoco Ranch," consisting of approximately 44,328 acres of timber land located in Crook County, Oregon.  For purposes of this Plan only, the Oregon Ranch Carbon Credits shall not be considered part of the Oregon Ranch but shall instead be a separable class of property.

"**<u>O'Ryan Ranches</u>**" means O'Ryan Ranches, Ltd., one of the Debtors.

"**<u>PB Materials Stock</u>**" means any stock, shares, or equity interests of any of the Debtors in PM Materials Holdings, Inc., owned prior to and as of the Petition Date.

"**<u>Person</u>**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**<u>Petition Date</u>**" means, with respect to each Debtor, the date on which it filed its Chapter 11 petition for relief as jointly administered in the Bankruptcy Case.

"**<u>Plan</u>**" means this *Debtors' Joint Consolidated Plan of Reorganization*, either in its present form or as it may be altered, amended or modified from time to time.

"**<u>Plan Agent</u>**" is the person named in section 5.23.2 of this Plan.

"**<u>Plan Rate</u>**" means the federal postjudgment interest rate as of the Effective Date.

"**<u>Priority Claim</u>**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

"**<u>Professional</u>**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**<u>Professional Claim</u>**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

"**<u>Professional Fees Escrow</u>**" means the "Fee Escrow" as defined in the *Third Interim Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Modifying the Automatic Stay; (iv) Scheduling a Final Hearing; and (v) Granting Related Relief*, entered at Docket No. 201 in the Bankruptcy Case.

"**<u>Prosperity Bank</u>**" means Prosperity Bank, including as successor-in-interest to Lone Star State Bank of West Texas and Amarillo National Bank.

"**Prosperity Bank Loan Documents**" means the documents and instruments identified on Exhibit B to the *Third Interim Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Modifying the Automatic Stay; (iv) Scheduling a Final Hearing; and (v) Granting Related Relief*, entered at Docket No. 201 in the Bankruptcy Case, but only insofar as any of the foregoing apply to a Debtor or an Estate, and its property.  For the avoidance of doubt, the rights of Prosperity Bank as against any non-debtor and its property are not modified by this Plan, subject only to the temporary injunction against collection provided in section 4.4.10 of this Plan.

"**Prosperity Bank Secured Claim**" means all Claims, rights, and interests of Prosperity Bank against the Debtors and their property, including against the Oregon Ranch, the Llano Ranch, and the property of the Oil and Gas Debtors, and including under any cash collateral order entered in the Bankruptcy Case, and including all rights under the Prosperity Bank Loan Documents and all applicable law, including all principal, interest, default interest, and other fees and charges permitted under the applicable Prosperity Bank Loan Documents and applicable law.

"**Rejection Damages Claim**" means the Claim in favor of a counterparty to an Executory Contract that is rejected by the Debtors, but that is not an Administrative Claim.

"**Rejection Damages Claim Bar Date**" means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

"**Reorganized Debtor**" means a Debtor on and after the Effective Date.

"**Reorganized Debtors**" means the Debtors on and after the Effective Date.

"**Royalty Claim**" means any Claim for unpaid oil and gas royalties from any of the Debtors as of the Petition Date, but expressly excludes any suspense royalties and resulting suspense funds.

"**Sale Metrics**" means the Plan Supplement filed under seal which provides, with respect to the sale of the Oregon Ranch and the Llano Ranch Parcel 1, the dates, listing prices, and release prices on which the Plan Agent must accept and close any bid for such properties falling within said dates and prices.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtors or the Estates; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

"**Secured Tax Claim**" means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Debtors or the Estates arising prior to the Petition Date even if first payable after the Petition Date.

"**Subordinated Claims**" means all Claims that are subordinated under section 510 of the Bankruptcy Code, or voluntarily in this Plan, or otherwise voluntarily through a document filed in the Bankruptcy Case.

"**Substantial Consummation**" means the date on which any of the following first happens: (i) the Bankruptcy Court enters an order on the fee application of the Debtors' general counsel or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

"**Tax Escrow**" has the meaning assigned to it in section 5.3.3 of this Plan.

"**Unsecured Claim**" means any alleged Claim against the Debtors that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtors or the Estates, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

"**Voting Deadline**" means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1     Classification Generally.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2     Unclassified Claims.  The following types of Claims are not classified under the Plan:

> Administrative Claims

> Administrative Tax Claims

2.3     Classified Claims and Interests.  Claims and Equity Interests are classified under this Plan as follows:

| | |
|---|---|
| Class 1: | Priority Claims |
| Class 2: | Secured Tax Claims |
| Class 3: | AgWest Secured Claim |
| Class 4: | Prosperity Bank Secured Claims |
| Class 5: | Mechanics Liens Secured Claims |
| Class 6: | Royalty Claims |
| Class 7: | General Unsecured Claims |
| Class 8: | Convenience Claims |
| Class 9: | Equity Interests |

## ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1     Administrative Claim Applications and Deadline.  Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' businesses which may be paid in the ordinary course of the Debtors' businesses without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estates under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtors, the United States Trustee, the Committee, and all other parties otherwise entitled to notice thereof.  Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtors and the Estates, and the Reorganized Debtors and the Consolidated Estate, and the property of any of the foregoing including property transferred pursuant to the Plan.  Except as specifically provided in

this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2    Treatment of Allowed Administrative Claims.    Except with respect to Administrative Tax Claims (see Section 3.4 below), and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall be paid in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by the Reorganized Debtors and the Consolidated Estate, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than ten (10) Business Days after the Effective Date, from cash on hand and the Exit Financing (and not the Hoerauf Contribution).

3.3    Treatment of Professional Claims.    Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1), and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim shall be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis, prior to the payment of any amount remaining owing and unpaid; and (vi) any portion of the Professional Fees Escrow attributable to the Professional Claim shall be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis, prior to the payment of any amount remaining owing and unpaid.  For the avoidance of doubt, nothing in this Plan changes or alters any Professional's rights with respect to any retainer or any portion of the Professional Fees Escrow or combines or merges any of the foregoing so that one Professional may be paid from a retainer or portion of the Professional Fees Escrow attributable to any other Professional.    Any portion of the Professional Fees Escrow remaining after application to all applicable Allowed Professional Claims shall be transferred to Prosperity Bank for application to the Allowed Prosperity Bank Secured Claim.

3.4    Administrative Tax Claims.    Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by this Plan, and shall survive this Plan without need for any action on the part of the holder thereof.    Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when the same otherwise become due and payable.    Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtors or the Estates free and clear of any lien securing an Administrative Tax

Claim.  Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under section 505 of the Bankruptcy Code, are preserved and vest in the Reorganized Debtors as of the Effective Date.

3.5     Section 505.   For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtors and the Estates reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, and transfer the same hereunder to the Reorganized Debtors and the Consolidated Estate.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

4.1     Class 1:  Priority Claims.   Class 1 consists of all Priority Claims.  Nothing in this Plan allows any Priority Claim, and the Debtors and the Estates reserve all rights to object to any Priority Claim, which rights are vested in the Reorganized Debtors and the Consolidated Estate.  In full and final satisfaction, release and discharge of, and in exchange for, each Priority Claim, the Reorganized Debtors shall pay each Priority Claim, to the extent Allowed, and without any interest, attorney's fees, or other charges or penalties arising after the Petition Date or Effective Date, in cash from the Exit Financing and the operations and cash on hand of the Oil and Gas Debtors, no later than ten (10) Business Days after becoming Allowed.  Class 1 is not impaired under this Plan.

4.2     Class 2:  Secured Tax Claims.   Notwithstanding anything contained in this Plan to the contrary, each holder of a Secured Tax Claim shall retain all liens securing the same, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists.   Each Secured Tax Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Secured Tax Claim and any lien securing the same, including all interest, default interest, fees, and costs as provided under otherwise applicable nonbankruptcy law, but without penalties, by the Reorganized Debtors and the Consolidated Estate: (i) from the sale of the Oregon Ranch at the closing thereof, with respect to Allowed Secured Tax Claims against the Oregon Ranch; (ii) from the sale of the Llano Ranch Parcel 1 at the closing thereof, with respect to Allowed Secured Tax Claims against the Llano Ranch; and (iii) with respect to Allowed Secured Tax Claims against the Oil and Gas Debtors, in cash through eight (8) equal quarterly calendar payments, with the first such payment due by the end of the calendar quarter in which the Effective Date occurs, and with each subsequent payment due by the end of the succeeding calendar quarter, and the final payment including such additional otherwise applicable interest as is necessary to pay such Allowed Secured Tax Claim in full.  Class 2 is impaired under this Plan.

4.3     Class 3: AgWest Secured Claim.

4.3.1     Identification of Class.   Class 3 consists of the AgWest Secured Claim and, additionally, includes all claims, rights, interests, and remedies of AgWest arising at any time between the Petition Date and the Effective Date against the Oregon Debtors and the Oregon Ranch.

4.3.2     Allowance of Claim.   Class 3 is an Allowed as a  fully Secured Claim in

the following amount as of the Effective Date (the "<u>Allowed AgWest Secured Claim</u>"): (i) the amount of $10,838,604.86 as of the Petition Date; (ii) plus the amount of interest accrued at the non-default rate of interest provided by the AgWest Loan Documents between the Petition Date and the Effective Date; and (iii) such other fees and charges, including attorney's fees, as are reasonable and allowable under section 506(b) of the Bankruptcy Code, with respect to which the Bankruptcy Court shall retain core jurisdiction to determine the allowance thereof.

4.3.3   <u>Liens</u>.  Notwithstanding anything contained in this Plan to the contrary, AgWest shall retain all liens securing AgWest Secured Claims, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists, and which liens shall, additionally, secure all obligations of the Reorganized Debtors to AgWest arising on and after the Effective Date.

4.3.4   <u>Postconfirmation Interest</u>.  The Allowed AgWest Secured Claim shall accrue interest at the Plan Rate on and after the Effective Date until paid in full.

4.3.5   <u>Postconfirmation Rights</u>.  Other than any obligation modified by this Plan or rendered not feasible by the fact of the Bankruptcy Case or this Plan, the Oregon Debtors shall comply with reasonable non-monetary obligations contained in the AgWest Loan Documents, including any reporting and insurance requirements.

4.3.6   <u>Subordination Agreement</u>.  Nothing in this Plan modifies or prejudices any right or obligation of AgWest under any subordination agreement with any other creditor, including that certain *Subordination Agreement* between AgWest and Lone Star State Bank of West Texas, as predecessor-in-interest to Prosperity.

4.3.7   <u>Treatment</u>.  In full and final satisfaction, release, and discharge of the Allowed AgWest Secured Claim and all liens securing the same, the Reorganized Debtors, through the Plan Agent, shall pay the same in cash at the closing of the sale of the Oregon Ranch is provided for in section 5.3 of this Plan.

4.3.8   <u>Exercise of Foreclosure Rights</u>.  If Prosperity Bank is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against the Oregon Ranch, including to foreclose its liens against the same, AgWest shall, at the same time, be granted all relief from this Plan to exercise its rights against the Oregon Ranch, including to foreclose against the same.

4.3.9   <u>Temporary Protection of Guarantors</u>.  So long as the Reorganized Debtors are not in uncured default of their obligations under this Plan to AgWest, AgWest shall be temporarily restrained from exercising any rights or remedies against any guarantor of the Allowed AgWest Secured Claim (provided that such guarantor is not also a Debtor), and any statute of limitations otherwise applicable to same shall be automatically tolled.

4.3.10   <u>Impairment</u>.  Class 3 is impaired under this Plan.

4.4   <u>Class 4: Prosperity Bank Secured Claims.</u>

4.4.1   <u>Identification of Class</u>.  Class 4 consists of the Prosperity Bank Secured

Claim and, additionally, includes all claims, rights, interests, and remedies of Prosperity Bank arising at any time between the Petition Date and the Effective Date against the Debtors and their property.

4.4.2   <u>Allowance of Claim</u>.  Class 3 is an Allowed as a  fully Secured Claim in the following amount as of the Effective Date (the "<u>Allowed Prosperity Bank Secured Claim</u>"): (i) the amount of $50,142,060.73 as of February 9, 2025; plus (ii) default interest under the Prosperity Bank Secured Loan Documents accruing after said date and before the Petition Date for the Oregon Debtors; plus (iii) interest after the Petition Date for the Oregon Debtors at the non-default rate of interest provided by the under the Prosperity Bank Loan Documents through the Effective Date; plus (iv) such other fees and charges, including attorney's fees, as are reasonable and allowable under section 506(b) of the Bankruptcy Code, with respect to which the Bankruptcy Court shall retain core jurisdiction to determine the allowance thereof; less (v) all such attorney's fees and expenses paid by any of the Debtors during the Bankruptcy Case.

4.4.3   <u>Liens</u>.  Except as provided for in section 5.6 of this Plan, Prosperity Bank shall retain all liens securing the Allowed Prosperity Bank Secured Claims, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists, and which liens shall, additionally, secure all obligations of the Reorganized Debtors to Prosperity Bank arising on and after the Effective Date, and Prosperity Bank shall have such additional liens as provided for in section 5.6 of this Plan and potentially in section 4.4.8 of this Plan securing all of the foregoing.

4.4.4   <u>Postconfirmation Interest</u>.  The Allowed Prosperity Bank Secured Claim shall accrue interest at the Plan Rate on and after the Effective Date until paid in full.

4.4.5   <u>Postconfirmation Rights</u>.  Other than any obligation modified by this Plan or rendered not feasible by the fact of the Bankruptcy Case or this Plan, the Debtors shall comply with reasonable non-monetary obligations contained in the Prosperity Bank Loan Documents, including any reporting and insurance requirements, but expressly excluding the property of the Oil and Gas Debtors with respect to which Prosperity Bank's liens are modified under section 5.6 of this Plan.

4.4.6   <u>Subordination Agreement</u>.  Nothing in this Plan modifies or prejudices any right or obligation of Prosperity Bank under any subordination agreement with any other creditor, including that certain *Subordination Agreement* between AgWest and Lone Star State Bank of West Texas, as predecessor-in-interest to Prosperity Bank.

4.4.7   <u>Treatment</u>.  In full and final satisfaction, release, and discharge of the Allowed Prosperity Bank Secured Claim and all liens securing the same, the Reorganized Debtors, through the Plan Agent, shall pay the same in cash at the closing of the sale of the Oregon Ranch is provided for in section 5.3 of this Plan and at the closing of the Llano Ranch Parcel 1 as provided for in section 5.4 of this Plan, or through valuations of deeds-in-lien provided to Prosperity Bank as otherwise provided for in said sections.  If the foregoing are insufficient to pay the Allowed Prosperity Bank Secured Claim in full, then the Reorganized Debtors, through the Plan Agent, shall pay any such unpaid and remaining amount from the sale of the Llano Ranch Parcel 2 as provided for in section

5.5 of the Plan. If all of the foregoing are insufficient to pay the Allowed Prosperity Bank Secured Claim in full, then the Reorganized Debtors shall remain liable to Prosperity Bank, jointly and severally, for any such deficiency, and Prosperity Bank may exercise any and all of its rights against the Reorganized Debtors and their properties regarding such deficiency claim.

4.4.8   <u>Potential Settlement of Lien Issues</u>. If Prosperity Bank affirmatively votes to accept this Plan, then its lien shall extend to the whole of the Oregon Ranch notwithstanding any argument, claim, or defense to the contrary, with the same priority as its lien otherwise exists except as provided in the next sentence. If Prosperity Bank so votes, and AgWest does not affirmatively vote to accept this Plan, then, to the extent that AgWest does not have a perfected lien to any of the Oregon Ranch, the lien of Prosperity Bank granted or conferred by this section to any such portion of the Oregon Ranch shall be superior to in priority to any asserted lien of AgWest to such portion.

4.4.9   <u>Exercise of Foreclosure Rights</u>. If AgWest is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against the Oregon Ranch, including to foreclose its liens against the same, Prosperity Bank shall, at the same time, be granted all relief from this Plan to exercise its rights against the Oregon Ranch, including to foreclose against the same. If the Plan Agent is permitted under this Plan or an order of the Bankruptcy Court to exercise his rights with respect to the lien granted under section 4.6.4 of this Plan, including to foreclose against the same, then, at the same time, Prosperity Bank shall be granted all relief from this Plan to exercise its rights against the Llano Ranch, including to foreclose its interests against the same.

4.4.10   <u>Temporary Protection of Guarantors</u>. So long as the Reorganized Debtors are not in uncured default of their obligations under this Plan to Prosperity Bank, Prosperity Bank shall be temporarily restrained from exercising any rights or remedies against any guarantor of the Allowed Prosperity Bank Secured Claim (provided that such guarantor is not also a Debtor), and any statute of limitations otherwise applicable to same shall be automatically tolled. At the conclusion of the sale (including by deed-in-lieu) of the Llano Ranch Parcel 1, if the Allowed Prosperity Bank Secured Claim is not fully paid by or at such sale, this temporary injunction shall immediately lift without need for further order.

4.4.11   <u>New Loan Documents</u>. If promptly requested by Prosperity Bank after the Effective Date, the Reorganized Debtors shall execute and deliver to Prosperity Bank such new loan and lien documents and instruments as may be reasonably appropriate to evidence the treatment of the Allowed Prosperity Bank Secured Claim under this Plan, and which shall contain such ordinary and customary reasonable secured lender provisions as are consistent with, and do not frustrate, the provisions of this Plan as applied to Prosperity Bank and its collateral. In no event shall the same relieve any guarantor of the Allowed Prosperity Bank Secured Claim of any and all obligations to Prosperity Bank. The Bankruptcy Court shall determine the reasonableness of any such new loan documents by motion practice initiated by either Prosperity Bank or the Debtors and Reorganized Debtors.

4.4.12   <u>Impairment</u>. Class 4 is impaired under this Plan.

4.5     Class 5: Mechanics Liens Secured Claims.

    4.5.1     Identification of Class.  Class 5 consists of all Mechanics Liens Secured Claims.  Each Mechanics Liens Secured Claim is a Disputed Claim under this Plan, unless Allowed by Final Order prior to or at the Confirmation Hearing.

    4.5.2     Allowance of Claims.  For the avoidance of doubt, nothing in this Plan Allows any Mechanics Liens Secured Claim, and such Allowance shall remain subject to all applicable laws and rules and any objection thereto, which objections are vested in the Consolidated Estate and the Reorganized Debtors under this Plan.  Any such claim that is Allowed shall be treated, to the extent Allowed in Class 5 of this Plan, while any such claim, to the extent disallowed as a Secured Claim but Allowed as an Unsecured Claim, shall be treated to the extent so Allowed in Class 7 of this Plan.  For the purposes of voting on this Plan, but for no other purpose, each asserted Mechanics Lien Secured Claim shall, to the extent asserted as a Secured Claim, vote in Class 5, subject to all other requirements and rules of voting.

    4.5.3     Treatment of Junior Secured Claim.  To the extent that a Mechanics Lien Secured Claim is Allowed as a Secured Claim in a priority that is lower than the priority of the liens of Prosperity Bank as they existed on the Petition Date, then such Allowed Mechanics Lien Secured Claim shall be deemed wholly unsecured and shall be paid under Class 7 of this Plan.

    4.5.4     Treatment of Senior Secured Claim.  To the extent that a Mechanics Lien Secured Claim is Allowed as a Secured Claim in a priority that is higher than the priority of the liens of Prosperity Bank as they existed on the Petition Date, then, if the same is determined prior to at the Confirmation Hearing, such Allowed Mechanics Lien Secured Claim shall be paid in full and final satisfaction, release, and discharge of such Allowed Mechanics Lien Secured Claim and all liens securing the same from the Exit Financing, together with such interest accruing prior to and after the Petition Date as the Bankruptcy Court may determine.  If such determination is made by Final Order after the Confirmation Hearing, then the Oil and Gas Debtors, as Reorganized Debtors, shall, in full and final satisfaction, release, and discharge of such Allowed Mechanics Lien Secured Claim and all liens securing the same pay the same in full, together with such interest accruing prior to and after the Petition Date as the Bankruptcy Court may determine, through eight (8) equal calendar quarterly payments.  The first such calendar quarterly payment shall be paid no later than ten (10) business days following the end of the first full calendar quarter after the Effective Date.

    4.5.5     Impairment.  Class 5 is impaired under this Plan.

4.6     Class 6: Royalty Claims.

    4.6.1     Identification of Class.  Class 6 consist of all Royalty Claims.

    4.6.2     Allowance of Claims.  For the avoidance of doubt, nothing in this Plan Allows any Royalty Claim, and such Allowance shall remain subject to all applicable laws and rules and any objection thereto, which objections are vested in the Consolidated Estate and the Reorganized Debtors under this Plan.

4.6.3   <u>Postpetition Interest and Fees</u>.  No Royalty Claim shall accrue any interest or be entitled to any attorney's fees or other charges for the period between the Petition Date and the Effective Date.

4.6.4   <u>Lien to Secure Repayment</u>.  Allowed Royalty Claims are hereby granted a junior lien against the Llano Ranch, junior to all other liens existing against the same as of the Effective Date, which lien shall be held and exercised by the Plan Agent for their pro-rata benefit as provided for in section 5.10 of this Plan, and which lien shall be foreclosed upon any uncured default by the Reorganized Debtors to Class 6 under this Plan or at the maturity of the treatment of Class 6 as provided below.

4.6.5   <u>Postconfirmation Interest</u>.  On and after the Effective Date, each Allowed Royalty Claim shall accrue interest at the rate specified by Texas law for unpaid mineral royalty claims until paid in full and, if there is no such specified rate, then at the Plan Rate.

4.6.6   <u>Treatment</u>.  In full and final satisfaction, release, and discharge of each Royalty Claim, the Oil and Gas Debtors, as Reorganized Debtors, shall pay each such Royalty Claim, to the extend Allowed, in full and in cash through periodic payments, secured by the lien granted under section 4.6.4 above, and additionally pursuant to section 5.4.2 of this Plan.  Such periodic payments shall be as follows: each month after the Effective Date that the Oil and Gas Debtors make a payment to a royalty interest holder who also holds an Allowed Royalty Claim, the Oil and Gas Debtors shall pay 150% of such monthly amount to such holder, with the excess 50% being applied to such holder's Allowed Royalty Claim until the same, with postconfirmation interest, is paid in full.  Said payments shall continue for 59 months after the Effective Date until each such Allowed Royalty Claim with postconfirmation interest is paid in full, unless paid sooner.  At the end of such 59 months, to the extent that any such Allowed Royalty Claim remains unpaid, the balance thereof shall be paid in full in the 60th month.  If, after the 60th month, any such amount(s) remain unpaid, the Plan Agent may foreclose on the lien granted under section 4.6.4 above and pay the proceeds thereof pro-rata on all remaining Allowed Royalty Claims then unpaid, with any surplus paid as provided for in the underlying deed of trust.

4.6.7   <u>Exercise of Foreclosure Rights</u>.  If Prosperity Bank is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against the Llano Ranch, including to foreclose its liens against the same, the Plan Agent shall, at the same time, be granted all relief from this Plan to exercise the lien granted in section 4.6.4 of this Plan, including to foreclose against the same.

4.6.8   <u>Impairment</u>.  Class 6 is impaired under this Plan.

4.7   <u>Class 7: Unsecured Claims</u>.

4.7.1   <u>Identification of Class</u>.  Class 7 consist of all Unsecured Claims.  For the avoidance of doubt, Class 7 does not include any deficiency claim of AgWest or Prosperity Bank, the same otherwise treated as fully Secured under this Plan.

4.7.2   <u>Allowance of Claims</u>.  For the avoidance of doubt, nothing in this Plan

Allows any Unsecured Claim, and such Allowance shall remain subject to all applicable laws and rules and any objection thereto, which objections are vested in the Consolidated Estate and the Reorganized Debtors under this Plan.

4.7.3   <u>Postpetition Interest and Fees</u>.   No Unsecured Claim shall accrue any interest or be entitled to any attorney's fees or other charges for the period between the Petition Date and the Effective Date and for the period after the Effective Date.

4.7.4   <u>Default Treatment</u>.   In full and final satisfaction, release, and discharge of each Unsecured Claim, the Oil and Gas Debtors, as Reorganized Debtors, shall pay the full Allowed amount thereof through twenty (20) equal quarterly payments, to be applied pro-rata to Allowed Unsecured Claims and subject to the Disputed Claims Reserve.   Each such calendar quarter payment shall be made no later than ten (10) business days after the end of each calendar quarter, with the first such payment being made for the first calendar quarter to occur after the Effective Date.   Allowed Unsecured Claims shall additionally be paid as provided for in section 5.4.2 of this Plan.

4.7.5   <u>Optional Treatment</u>.   The Ballot for each voting holder of an Unsecured Claim shall be marked with an election, which must be affirmatively marked by such holder to accept said election, in which case this section 4.7.5 of the Plan shall apply to such holder's Unsecured Claim to the exclusion of section 4.7.4 of this Plan.   Under said election, and in full and final satisfaction, release, and discharge of each Unsecured Claim making said election, the Oil and Gas Debtors, as Reorganized Debtors, shall pay 30% of the Allowed amount of said Unsecured Claim in cash, no later than ten (10) business days after the Effective Date or after the Unsecured Claim becomes Allowed, whichever is later, and subject to the Disputed Claims Reserve.   The source of such quarterly payments shall be operations and cash on hand, including the Exit Financing.

4.7.6   <u>Impairment</u>.   Class 7 is impaired under this Plan.

4.8     <u>Class 8: Convenience Claims</u>.

4.8.1   <u>Identification of Class</u>.   Class 8 consists of all Unsecured Claims asserted in an amount of $1,000.00 or less.

4.8.2   <u>Allowance of Claims</u>.   Unless a Convenience Class Claim is filed after the Bar Date, each Convenience Class Claim shall be automatically Allowed in the asserted amount.

4.8.3   <u>Treatment</u>.   Each Convenience Class Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Convenience Class Claim, by the Reorganized Debtors, the amount of such Allowed Convenience Class Claim, in cash, and without interest, attorneys' fees, or costs, no later than ten (10) Business Days after becoming Allowed.   The source of such quarterly payments shall be operations and cash on hand, including the Exit Financing.

4.8.4   <u>Impairment</u>.   Class 8 is not impaired under this Plan.

4.9     Class 9: Equity Interests.  All Equity Interests in any of the Debtors shall be retained by the respective holder(s) thereof.  Class 9 is not impaired under this Plan.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Substantive Consolidation. Automatically on the Effective Date, and without need for further order, document, or action, the Estates shall be substantively consolidated for the limited purposes of making all payments and satisfying all obligations under this Plan, as follows.

5.1.1    Consolidated Estate.  This section of the Plan creates an estate, defined as the "Consolidated Estate," which is comprised of all legal and equitable property, rights, and interests of each of the Debtors and the Estates at any time prior to the Effective Date, with all of such property, rights, and interests substantively consolidated into and with the Consolidated Estate, the effect of which is that the Debtors each guarantee the obligations of each of the other Debtors and combine and merge their property and the property of the Estates for purposes of paying all Claims under this Plan as otherwise Allowed and provided for in this Plan, subject to any and all liens, claims, interests, and encumbrances against the Debtors and the Estates as otherwise exist and as may be preserved, created, modified, released, or discharged in this Plan.  Except as otherwise provided in the Plan, a claim against any of the Debtors or the Estates and any property of any of the Debtors or the Estates arising prior to the Effective Date shall attach to the Reorganized Debtors and their property, jointly and severally, with the same validity, extent, and priority as otherwise exists and as provided for in this Plan, but only for purposes of making all payments and satisfying all obligations under this Plan.  Except as otherwise provided in this Plan, all such claims shall be paid from the Consolidated Estate and its property notwithstanding the original obligor on such claim such that any Reorganized Debtor may pay an Allowed claim against any other Reorganized Debtor. For the avoidance of doubt, the Reorganized Debtors shall have *in personam* liability for Allowed Claims against the Consolidated Estate as otherwise provided for and modified, and discharged, under this Plan.

5.1.2    No Merger.  Notwithstanding this Section of this Plan, and for the avoidance of doubt: (i) nothing in this Plan merges the Debtors or the Estates for corporate, tax, or governmental purposes; (ii) any claim arising after the Effective Date against the Reorganized Debtors shall exist against the respective Reorganized Debtor and its property, as otherwise appropriate, and not against the Consolidated Estate; (iii) the Reorganized Debtors shall maintain separate bank accounts, reporting, finances, and books and records as they have historically maintained; and (iv) in the event of property of the Consolidated Estate that is subject to a lien, encumbrances, or interest, the consolidation of the Debtors, the Estates, and their property into the Consolidated Estate does not modify, affect, limit, release, discharge, or waive such lien, encumbrance, or interest, unless a different provision of this Plan effectuates such result.  For the further avoidance of doubt, it is the specific intention and operation of this Plan that: (i) the substantive consolidation provided by this Plan be a legal fiction only, used to facilitate

and effectuate the Plan; (ii) not prejudice any rights, liens, encumbrances, or interests against property of the Estates that survive this Plan, or the ability of the holder of any such rights, liens, encumbrances, or interests to exercise and foreclose on the same, if otherwise consistent with this Plan; and (iii) not apply to any new claims or issues arising after the Effective Date, such that, to the world after the Effective Date the Reorganized Debtors shall remain separate entities for all purposes, but that to all creditors and persons affected by this Plan, the Debtors and the Estates be consolidated in order to satisfy their obligations under this Plan to such creditors and affected persons.

5.1.3    No Separate Existence.    The Consolidated Estate refers merely to the property of the Reorganized Debtors for the purpose of paying Allowed Claims under this Plan as provided for in this Plan.    The Consolidated Estate is not, and shall not be deemed to be, a separate legal entity or to have any legal existence, other than as provided for under this Plan as a mechanism to pay Allowed claims.

5.1.4    Release of Intercompany Claims.    Any Claim that any of the Debtors or Estates has against any other Debtor or Estate prior to the Effective Date, for funds lent, intercompany receivable, Avoidance Action, or related to joint and several liability, contribution, or rights of reimbursement on account of the payment by one of a debt jointly owned with another, including any such debt in the capacity of co-maker or co-obligor, is hereby released and discharged as between the Debtors, the Estates, and Reorganized Debtors.    For the avoidance of doubt, such releases include any claim that any Creditor may be able to assert derivatively for any Debtor, or for fraudulent transfer, or for *alter ego*, or any other cause of action that, under the Bankruptcy Code, becomes property of an Estate.

5.2    Plan Funding.    The Plan shall be funded through the following, as otherwise specified and with differing rights between Creditors provided for in this Plan:

(i)    sale of the Oregon Ranch;

(ii)    sale of the Llano Ranch Parcel 1;

(iii)    potential sale of the Llano Ranch Parcel 2;

(iv)    the Exit Financing;

(v)    the Hoerauf Contribution;

(vi)    retainers, carveouts under any order entered in the Bankruptcy Case, and Professional Fees Escrow; and

(vii)    revenues from operations and cash flow from and after the Petition Date and the Effective Date.

5.3    Sale of the Oregon Ranch.    On and after the Effective Date, the Oregon Debtors shall continue to reasonable and appropriately market for sale the whole of the Oregon Ranch (although, in their reasonable discretion, the Oregon Ranch may be split into one or more parcels for separate sales, provided that the whole of the Oregon Ranch is otherwise marketed for sale

and sold).  Less than the whole of the Oregon Ranch may be sold, provided that the net sale proceeds are otherwise sufficient to pay the Allowed AgWest Secured Claim and the Allowed Prosperity Bank Secured Claim then remaining unpaid at the closing of such sale.

5.3.1    Control.  The Plan Agent shall have exclusive and final control over the sale of the Oregon Ranch, including with respect to listing price and purchase price, provided, however, that such control shall be subject to the Sale Metrics which shall control.  The Plan Agent shall cause the Oregon Ranch to be sold at any time that the purchase price complies with the Sale Metrics, and provided that such sale otherwise complies with all applicable non-bankruptcy laws.

5.3.2    Payments.  At the closing of any sale of the Oregon Ranch, the Plan Agent shall ensure that, from the gross proceeds of such sale, the following are paid and/or funded in the following priority: (i) all customary and ordinary closing, title, insurance, and broker costs, fees, and expenses, with respect to which, for the avoidance of doubt, the Bankruptcy Court shall retain core jurisdiction to determine any dispute; (ii) *ad valorem* and other property taxes assessed against the Oregon Ranch and secured by a lien, provided that a portion thereof for current taxes may be credited to the buyer, who shall be liable for the same, as would otherwise be ordinary and appropriate in the State of Oregon; (iii) the Allowed AgWest Secured Claim as specified in section 4.3.7 hereof; (iv) the Tax Escrow (defined below), unless waived by Hoerauf; (v) the Allowed Prosperity Bank Secured Claim, to the extent of any and all proceeds remaining, as specified in section 4.4.7 hereof; and (vi) to the extent of any proceeds remaining after application to (i) through (v) above, all such remaining proceeds shall be transferred into the Creditor Escrow.

5.3.3    Tax Escrow.  From the gross sales proceeds of the Oregon Ranch, and after payment of the Allowed AgWest Secured Claim, the amount of estimated federal and state income and/or capital gains tax that may have to be paid as a result of such sale shall be set aside by the Plan Agent into a separate interest bearing account (the "Tax Escrow").  To the extent not used to pay any such taxes, Prosperity shall hold the first-priority lien and security interests against the Tax Escrow, unless and until the Allowed Prosperity Bank Secured Claim is paid in full.  The Tax Escrow shall be controlled by the Plan Agent.  The Plan Agent shall release the Tax Escrow to pay any such taxes when satisfied that the same have been calculated and are payable, and shall ensure that such release is actually applied to and paid to such taxes, and not to Hoerauf or any other person personally or for any other reason or purpose.  Any portion of the Tax Escrow not used for such purposes by one (1) year after the Effective Date shall, first, be paid to Prosperity Bank to be applied against any of the Allowed Prosperity Bank Secured Claim then remaining unpaid, and, second, shall be released to O'Ryan Family Limited Partnership as a Reorganized Debtor.

5.3.4    Execution of Transfer Deeds and Other Closing Documents.  For the avoidance of doubt, and to the exclusion of any and all other management of the Oregon Debtors, the Plan Agent and only the Plan Agent shall be authorized to execute all transfer deeds and other closing documents necessary or appropriate to sell the Oregon Ranch, including to transfer any of the Oregon Ranch Carbon Credits, provided, however, that the Bankruptcy Court shall retain all core jurisdiction to compel Hoerauf or

any other necessary or appropriate person to execute and to deliver any of the same, or to designate any other person to execute and to deliver the same for the Oregon Debtors.

5.3.5   Release of Liens.  Each of AgWest and Prosperity Bank, and any other Creditor with an alleged lien against any of the Oregon Ranches and/or the Oregon Tax Credits, shall execute and deliver an appropriate release of its lien at the closing of the sale of the Oregon Ranch, provided that such closing and sale otherwise comply with this Plan.  For the avoidance of doubt, Prosperity Bank shall be under no obligation to release its lien unless the Sale Metrics are complied with, although it may do so in its sole and absolute discretion.

5.3.6   Foreclosure.  At the conclusion of the Sale Metrics, if the Oregon Ranch is not by then sold as provided for in this Plan, or if the Reorganized Debtors otherwise commit an uncured default in the treatment of Class 4 under this Plan, Prosperity Bank and AgWest may exercise any and all of their rights against the Reorganized Debtors and the Oregon Ranch, and any other collateral that Prosperity Bank holds under this Plan.

5.3.7   Closing Fees and Costs.  In addition to all other Claims and rights under this Plan, each of AgWest and Prosperity Bank shall be entitled to additional, reasonable attorney's fees, expenses, and other closing charges as are necessary and appropriate for their participation in the closing of the sale of the Oregon Ranch, to be paid at said closing from the proceeds of said sale.

5.4   Sale of the Llano Ranch Parcel 1.  On and after the Effective Date, reorganized O'Ryan Ranch shall continue to reasonable and appropriately market for sale the Llano Ranch Parcel 1 (although, in its reasonable discretion, the Llano Ranch Parcel 1 may be split into one or more parcels for separate sales, provided that the whole of the Llano Ranch Parcel 1 is otherwise marketed for sale).  Less than the whole of the Llano Ranch Parcel 1 may be sold, provided that the net sale proceeds are otherwise sufficient to pay the the Allowed Prosperity Bank Secured Claim then remaining unpaid at the closing of such sale.

5.4.1   Control.  The Plan Agent shall have exclusive and final control over the sale of the Llano Ranch Parcel 1, including with respect to listing price and purchase price, provided, however, that such control shall be subject to the Sale Metrics which shall control.  The Plan Agent shall cause the Llano Ranch Parcel 1 to be sold at any time that the purchase price complies with the Sale Metrics, and provided that such sale otherwise complies with all applicable non-bankruptcy laws.

5.4.2   Payments.  At the closing of any sale of the Llano Ranch Parcel 1, the Plan Agent shall ensure that, from the gross proceeds of such sale, the following are paid and/or funded in the following priority: (i) all customary and ordinary closing, title, insurance, and broker costs, fees, and expenses, with respect to which, for the avoidance of doubt, the Bankruptcy Court shall retain core jurisdiction to determine any dispute; (ii) *ad valorem* and other property taxes assessed against the Llano Ranch and secured by a lien, provided that a portion thereof for current taxes may be credited to the buyer, who shall be liable for the same, as would otherwise be ordinary and appropriate in the State of Texas; (iii) the Allowed Prosperity Bank Secured Claim, to the extent of any and all proceeds remaining, as specified in section 4.4.7 hereof; and (iv) to the extent of any

proceeds remaining after application to (i) through (iv) above, all such remaining proceeds shall be transferred into the Creditor Escrow.

5.4.3   <u>Execution of Transfer Deeds and Other Closing Documents</u>.   For the avoidance of doubt, and to the exclusion of any and all other management of O'Ryan Ranch, the Plan Agent and only the Plan Agent shall be authorized to execute all transfer deeds and other closing documents necessary or appropriate to sell the Llano Ranch Parcel 1, provided, however, that the Bankruptcy Court shall retain all core jurisdiction to compel Hoerauf or any other necessary or appropriate person to execute and to deliver any of the same, or to designate any other person to execute and to deliver the same for Llano Ranch Parcel 1.

5.4.4   <u>Release of Liens</u>.   Prosperity Bank shall execute and deliver an appropriate release of its lien at the closing of the sale of Llano Ranch Parcel 1, provided that such closing and sale otherwise comply with this Plan and provided that such release shall not include any release of its lien against Llano Ranch Parcel 2, unless the whole of the Allowed Prosperity Bank Secured Claim then remaining unpaid is paid in full as said closing.   For the avoidance of doubt, Prosperity Bank shall be under no obligation to release its lien unless the Sale Metrics are complied with, although it may do so in its sole and absolute discretion.

5.4.5   <u>Foreclosure</u>.  At the conclusion of the Sale Metrics, if Llano Ranch Parcel 1 is not by then sold as provided for in this Plan, or if the Reorganized Debtors otherwise commit an uncured default in the treatment of Class 4 under this Plan, Prosperity Bank may exercise any and all of its rights against the Reorganized Debtors and the Llano Ranch, and any other collateral that Prosperity Bank holds under this Plan.

5.4.6   <u>Closing Fees and Costs</u>.  In addition to all other Claims and rights under this Plan, each Prosperity Bank shall be entitled to additional, reasonable attorney's fees, expenses, and other closing charges as are necessary and appropriate for its participation in the closing of the sale of the Llano Ranch Parcel 1, to be paid at said closing from the proceeds of said sale.

5.5   <u>Conditional Sale of the Llano Ranch Parcel 2</u>.  Prosperity Bank and any *ad valorem* tax lien creditor shall retain all liens as against the Llano Ranch Parcel 2.  However, O'Ryan Ranch and the Reorganized Debtors shall be under no obligation to market for sale, and to sell, the Llano Ranch Parcel 2 until the expiration of the Sale Metrics, provided, however, that the Reorganized Debtors shall otherwise timely pay *ad valorem* tax liens against the Llano Ranch arising after the Effective Date, meaning attaching on January 1, 2026.  The failure to timely do so shall be a default of the Debtors' obligations to Class 4 under this Plan.  Upon the expiration of the Sale Metrics, the Reorganized Debtors shall have one (1) year after said date to either sell Llano Ranch Parcel 2 for sufficient proceeds to pay the then-remaining Allowed Prosperity Bank Secured Claim in full, or shall pay the same from refinancing the Llano Ranch Parcel 2 or from any other of their property or cash that is not otherwise payable to a different Class under this Plan.  Upon the expiration of such year without such and payment, Prosperity Bank may exercise any and all of its rights against the Llano Ranch Parcel 2, including to foreclose against the same as otherwise provided for under Texas law.  For the avoidance of doubt, however, upon an uncured default by the Reorganized Debtors of their obligations under

this Plan to Prosperity Bank, then Prosperity Bank may immediately foreclose on the whole of its interests against the Llano Ranch.

      5.6    <u>Modification of Prosperity Bank Liens</u>.  All liens and security interests of Prosperity Bank against any and all property of the Debtors, the Estates, and the Consolidated Estate are preserved under this Plan with the same extent and priority as otherwise exists, except as expressly provided as follows:

      (i)    the liens and security interests of Prosperity Bank against the assets of the Oil and Gas Debtors are subordinated as of the Effective Date in favor of the Exit Financing and shall remain in place, so subordinated, to secure all obligations of the Reorganized Debtors to Prosperity Bank under this Plan and as otherwise provided for in the Prosperity Bank Loan Documents;

      (ii)    Prosperity Bank shall be granted valid, first priority liens and security interests against the Oregon Ranch Carbon Credits and the proceeds thereof as of the Effective Date, and Prosperity Bank may immediately prepare and record such instruments as it reasonably believes to be appropriate to perfect the same, which instruments the respective Oregon Debtor(s) shall execute and deliver to Prosperity Bank;

      (iii)    provided that Prosperity Bank otherwise votes to accept this Plan as provided in section 4.4.8 of this Plan, any portion of the Oregon Ranch that Prosperity Bank may not hold a perfected lien against, in the priority specified in said section; and

      (iv)    Prosperity Bank shall retain all of its rights, security interests, liens, and causes of action against the PB Materials Stock, including as against any transfer or proceeds thereof prior to the Petition Date, and Prosperity Bank may exercise any and all of its rights with respect to the same notwithstanding anything contained to the contrary in this Plan, except as against the Hoerauf Releasees.

      5.7    <u>Exit Financing</u>.  As a condition to the Effective Date, and simultaneously therewith, the Oil and Gas Debtors shall obtain a new loan, secured by first-priority liens and security interests against their assets (which, for the avoidance of doubt, excludes any cash that is at that time the "cash collateral" of Prosperity Bank and, for the further avoidance of doubt, excludes the Oregon Ranch and the Llano Ranch), in an amount such as will result in at least $4 million of net proceeds for the Reorganized Debtors (the "<u>Exit Financing</u>").  The Exit Financing shall be used by the Oil and Gas Debtors, to make payments on Allowed Administrative Claims and Allowed Claims under this Plan, and as working capital for their operations.

      5.8    <u>The Hoerauf Contribution</u>.  As a condition to the Effective Date, and simultaneously therewith, Hoerauf shall transfer, by special warranty deed, all right title and interest in and to the Hoerauf House to the Plan Agent, solely in his capacity as agent, subject to all liens that exist against the same, for the purpose of marketing and selling the same and using the proceeds thereof to fund the operations of the Oil and Gas Debtors, but not their obligations to pay Allowed Administrative Claims and Allowed Claims under this Plan (the "<u>Hoerauf Contribution</u>").

5.8.1   Control.  The Plan Agent shall have exclusive and final control over the sale of the Hoerauf House, including with respect to listing price and purchase price, and may retain such brokers and agents as reasonably appropriate to market and sell the same. The Plan Agent shall transfer all net proceeds of such sale to the Oil and Gas Debtors, who shall have sole control over said proceeds and their use, consistent with this Plan.

5.8.2   Mandatory Redemption.  If, prior to a sale of the Hoerauf House, all Class 6 and Class 7 Allowed Claims have been paid in full, whether from the Exit Financing, operations, discounted payment options, or sales of real property, the Plan Agent shall transfer the Hoerauf House back to Hoerauf by special warranty deed, subject to all liens against the same (for the avoidance of doubt, no such liens are created by this Plan).

5.8.3   Optional Redemption.  At any time prior to the sale of the Hoerauf House, Hoerauf may compel the Plan Agent to sell the same back to him, by special warranty deed and subject to all liens against the same (for the avoidance of doubt, no such liens are created by this Plan), in exchange for net proceeds paid by Hoerauf to the Plan Agent of $2 million, which funds shall be used to pay Class 6 and 7 claims as provided for in this Plan.  None of said funds may come from any of the Reorganized Debtors, whether by way of distribution, loan, dividend, payment, or otherwise.

5.8.4   Releases.  In exchange for the Hoerauf Contributions and the other benefits of this Plan being provided by Hoerauf, on the Effective Date, and without need for further order, document, or instrument, all claims and causes of action that any of the Debtors or the Estates may have against any of the Hoerauf Releasees, whether known or unknown, scheduled or unscheduled, arising in tort or contract, are waived and released forever, including, without limitation, any Avoidance Action, action for breach of fiduciary duty, action for *alter ego*, and any other claim or cause of action that any of the Estates may hold or that any creditor may assert derivatively through any Debtor or Estate, and including any claim or cause of action that is property of the estate under the Bankruptcy Code despite what it may be under applicable non-bankruptcy law.

5.9   Maintenance of the Oregon Ranch.  From and after the Effective Date, the Oil and Gas Debtors, in addition to all other obligations under this Plan, shall pay the operating expenses of the Oregon Ranch in such amounts and for such purposes as are in the reasonable business judgment of the Plan Agent, with the primary purpose thereof to be to ensure reasonable fire suppression and mitigation and road maintenance so as to preserve the value of the Oregon Ranch.

5.10   Junior Lien for Allowed Royalty Claims.   On the Effective Date, and automatically, the Plan Agent, solely as agent and not in his personal capacity, is hereby granted a lien against the Llano Ranch to secure the Reorganized Debtors' obligations under this Plan to Allowed Royalty Claims as provided for in section 4.6.4 of this Plan.  The Plan Agent shall hold said lien solely for the benefit of Allowed Royalty Claims, pro-rata as between the Allowed amounts thereof.  As a condition to the occurrence of the Effective Date, O'Ryan Ranches shall execute and deliver to the Plan Agent a deed of trust, to be filed as a Plan Supplement prior to the Confirmation Date, and which shall contain reasonable and customary provisions, evidencing the foregoing lien, which deed of trust the Plan Agent shall cause to be recorded against the Llano Ranch promptly after the Effective Date.  Upon an uncured default of the Reorganized

Debtors to Class 6 under this Plan, or if Prosperity Bank is otherwise permitted to exercise its rights against the Llano Ranch under this Plan, the Plan Agent shall foreclose on or otherwise monetize this lien, in his reasonable discretion, and shall pay any net proceeds therefrom pro-rata to Allowed Royalty Claims then remaining unpaid, having first accounted from any such gross proceeds for the fees and expenses of said foreclosure or monetization.

5.11   Assumption of Executory Contracts.

5.11.1   General.   No later than with the solicitation of the Disclosure Statement, the Debtors shall file and serve a notice of Executory Contracts then remaining neither assumed nor rejected, which shall be assumed or rejected under this Plan as of the Effective Date as provided for in said notice.   With respect any Executory Contract to be assumed under this Plan pursuant to said notice, the notice shall also include the Cure Claim the Debtors believe payable for such assumption.   Any objection to such proposed Cure Claim must be filed with the Bankruptcy Court by the deadline otherwise set to object to the confirmation of this Plan.   The Bankruptcy Court, either at the Confirmation Hearing or after said hearing, as the Bankruptcy Court may determine, shall determine any dispute regarding said Cure Claim.   The Reorganized Debtors shall pay all such Cure Claims, as Allowed, no later than ten (10) business days after the Effective Date from cash on hand and the Exit Financing.   Any Rejection Claim must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date.

5.11.2   Oil and Gas Leases.   Oil and Gas Leases are not leases or executory contracts subject to section 365 of the Bankruptcy Code and are instead interests in real property, all of which are retained under this Plan and vest in the respective Reorganized Debtor subject to all burdens, claims, liabilities, and obligations thereunder, except as otherwise modified by this Plan for any of the foregoing arising prior to the Effective Date.

5.11.3   Brokerage and Listing Contracts.   All contracts for the listing, brokerage, marketing, and sale of the Oregon Ranch and the Llano Ranch Parcel 1 in existence immediately prior to the Effective Date are assumed automatically on the Effective Date without need for further order or document and shall be retained by or vested in the respective Reorganized Debtor.   No Cure Claim shall be payable for the same, but the counterparties shall retain all of their pre-assumption rights, including to payment, as otherwise provided for in said assumed contracts.

5.12   Vesting of Assets.   On the Effective Date, and without need for further action, document, or instrument, all property of the Debtors and the Estates shall vest in the Reorganized Debtors free and clear of all claims, liens, interests, and encumbrances, except to the extent that any such claim, lien, interest or encumbrance is expressly preserved or created in this Plan, and subject to the Consolidated Estate created under this Plan.

5.13   Assumption of Debt.   The Reorganized Debtors and the Consolidated Estate shall assume only that debt of, and only those Claims against, the Debtors and the Estates as provided for in this Plan, including, without limitation, all obligations to make any payment to any Class provided for in this Plan, and then only as restructured and provided for in this Plan.   Otherwise,

the Reorganized Debtors do not assume, and shall not be liable for, any other debt of, or Claims against, the Debtors or the Estates, including any such debt that is discharged.

5.14  <u>Automatic Stay</u>.    The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

5.15  <u>Rights Under Section 505</u>.  All Claims for taxes by Governmental Units and any claim to a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code and shall vest in the Reorganized Debtors.  The Reorganized Debtors may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.16  <u>Management of the Reorganized Debtors</u>.  On and after the Effective Date, the officers and directors (or managers, if an LLC) of the Reorganized Debtors shall be Ryan C. Hoerauf with an annual salary, to be paid by the Oil and Gas Debtors, of $250,000.00, plus reimbursement and payment of pass through taxes incurred by or payable for the Oil and Gas Debtors (in addition to other customary and ordinary expense reimbursement).  The Reorganized Debtors shall have no other directors, managers, or officers, subject to such future change and variation as is otherwise appropriate under all applicable non-bankruptcy law.  For the avoidance of doubt, nothing in this Plan limits any future compensation to any director, officer, or employee by the Reorganized Debtors, subject to any otherwise applicable rights, rules, laws, or principles.  The Plan Agent shall not manage the Reorganized Debtors or have any role over their operations, but shall instead be limited to selling the real properties and taking the other actions specified in this Plan.

5.17  <u>Prohibition on Dividends</u>.  So long as any Class of Creditor under this Plan remains unpaid in whole or in part, to the extent such payment is otherwise payable under this Plan, then none of the Reorganized Debtors shall make any distribution, dividend, or other transfer on account of any Equity Interest.  For the avoidance of doubt, the foregoing shall not include: (i) the Tax Escrow; (ii) ordinary wages and expense reimbursement; (iii) any payment on account of a Royalty Interest; (iv) indemnification as otherwise provided for under any corporate governance document and Texas law; and (v) payment of pass-through income or other taxes.  A breach by the Reorganized Debtors of these requirements, including any attempt to circumvent these requirements through disguised transactions, shall be a default by the Reorganized Debtors under this Plan.  The Plan Agent shall monitor the Reorganized Debtors to ensure compliance with these requirements.

5.18  <u>Corporate Existence</u>.    The Reorganized Debtors shall retain the Debtors' corporate existence and governing charters, articles, membership agreements, and bylaws, together with all tax and corporate attributes otherwise applicable to the Debtors, unless any change to any of the foregoing is necessitated by this Plan, in which case such parties as appropriate shall take such actions as are appropriate to effectuate the same and to ensure the continued and continuing corporate existence, in good standing, of the Reorganized Debtors.  As soon as practicable after the Effective Date, any Reorganized Debtor that is a corporation shall

amend its corporate charter to include a provision prohibiting it from issuing nonvoting securities.

5.19    Incorporation of Exhibits.  Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.20    Prepayment.  For the avoidance of doubt, the Reorganized Debtors may prepay any Claim that they are responsible to pay under this Plan, which prepayment shall be without future interest, prepayment premium, prepayment penalty, or any yield maintenance.

5.21    Retention and Preservation of Causes of Action.    Unless expressly and specifically released in this Plan or through any order entered in the Bankruptcy Case, all claims and causes of action, including Avoidance Actions, are reserved and preserved under this Plan and transfer to and vest in the Reorganized Debtors and the Consolidated Estate as otherwise provided for in this Plan, subject to all defenses and affirmative defenses thereto.

5.22    Prohibition Against Creditor Action.  On and after the Effective Date, and unless otherwise released in this Plan, the Avoidance Actions and all actions that the Estates may bring in addition to any Creditor shall be the sole property of the Reorganized Debtors and the Consolidated Estate, and no Creditor may assert, file, or prosecute any such claim, cause or action, or action (including for fraudulent transfer) for itself, for Creditors, or for the Reorganized Debtors or the Consolidated Estate with respect to a debt or Claim arising at any time prior to the Effective Date; *provided, however,* that in the event of a conversion of the Bankruptcy Case after the Effective Date, all such claims, causes of action, or action shall be property of the Chapter 7 estate(s) to be administered as is otherwise appropriate by any Chapter 7 trustee(s).  For the avoidance of doubt, the foregoing does not apply to any claim, cause of action, or action that is personal to any Creditor (*e.g.* neither a different Creditor nor the Debtors or the Estate can bring such action individually, collectively, or derivatively).

5.23    Plan Agent.

5.23.1  Creation of Plan Agent.  On the Effective Date, the Plan Agent (the "Plan Agent") shall be created pursuant to 11 U.S.C. § 1123(b)(3)(B).

5.23.2  Identification of Plan Agent.  The Plan Agent shall be Brad Walker.

5.23.3  Role and Authority.  The purpose, role, and authority of the Plan Agent shall be to market and sell the Oregon Ranch, to market and sell the Lanno Ranch Parcel 1, to take and sell the Hoerauf House, to foreclose on the junior lien granted under the Plan to secure Allowed Royalty Claims, to monitor the payments and performance of the Reorganized Debtors, and to otherwise take such actions as provided for in this Plan. The Plan Agent shall have fiduciary duties to act as the Plan provides, but shall otherwise not be a fiduciary to any given Creditor or to the Reorganized Debtors.

5.23.4 <u>Exclusion of Role</u>.   The Plan Agent shall have no role, authority, or obligation to market and sell the Llano Ranch Parcel 2 or to manage any aspects of the business of the Oil and Gas Debtors.

5.23.5 <u>Exculpation and Indemnification</u>.   In no event shall the Plan Agent have any liability to anyone for negligence, and shall instead only have potential liability for gross negligence, intentional act, or breach of fiduciary duty, all as the same applies to his actions under this Plan after the Effective Date.   The Reorganized Debtors shall indemnify and hold harmless the Plan Agent, including for any reasonable attorney's fees and expenses, with respect to any action that may be commenced against him, unless he is found by Final Order to have aby liability not exculpated under this Plan.

5.23.6 <u>Compensation</u>.   The Oil and Gas Debtors, as Reorganized Debtors, shall pay to the Plan Agent in such amounts and at such times as disclosed in the Disclosure Statement.   The Reorganized Debtors shall be in default under this Plan if they fail to timely pay the same.   The Creditor Escrow may be used to make any such defaulted payment prior to any payment from the Creditor Escrow on Allowed Royalty Claims and Allowed Unsecured Claims.

5.23.7 <u>Retention of Professionals</u>.   The Plan Agent may retain legal counsel as is necessary to enable him to fulfil his roles and duties under this Plan, the reasonable fees and expenses of which will be paid by the Oil and Gas Debtors as Reorganized Debtors in addition to his fees and expenses, no later than thirty (30) days after an invoice from the Plan Agent for the same.   The Reorganized Debtors shall be in default under this Plan if they fail to timely pay the same.   Upon the expiration of the retention of any real estate broker retained pursuant to this Plan, or the termination or resignation of the same, the Plan Agent may retain replacement brokers, upon the approval of Prosperity Bank, and provided that they are paid from the sale proceeds at any closing of their respective real properties.

5.23.8 <u>Duration</u>.   The role of the Plan Agent shall cease when Classes 3, 4, 6, and 7 are paid in full as provided for in this Plan.

5.23.9 <u>Relief from Bankruptcy Court</u>.   The Plan Agent shall have standing to appear and be heard, and to seek relief, from the Bankruptcy Court and any other court of competent jurisdiction as may be necessary or appropriate to enable him to carry out his role and duties, to protect him from alleged liability not otherwise provided for in this Plan, and for all such purposes as may be appropriate under all applicable law.   Any creditor with an Allowed Claim may petition the Bankruptcy Court to remove the Plan Agent as such for cause, which matter shall be heard on expedited motion.

5.23.10 <u>Replacement Plan Agent</u>.   In the event of the removal or resignation of the Plan Agent, Prosperity Bank shall designate the replacement Plan Agent.

5.23.11 <u>Inchoate Lien</u>.   The Plan Agent shall have a lien against any remaining sale proceeds after the payment thereof to AgWest and to Prosperity Bank as otherwise provided for in this Plan, to secure all unpaid indemnification, compensation and

expenses, and legal counsel fees and expenses, as otherwise provided for in this Plan, which lien shall be paid from any next available sale proceeds of all such property prior to the payment of any such proceeds to any creditor junior in priority to AgWest or Prosperity Bank or to any Reorganized Debtor. With respect to his administration and foreclosure of the lien granted to Allowed Royalty Claims under section 4.6.4 of this Plan, all reasonable fees and expenses of the Plan Agent and any legal counsel employed to assist him with respect to the same, and which fees and expenses shall not be subject to the cap provided under section 5.23.6 above, shall be paid from the proceeds of such lien prior to the payment of any such proceeds on Allowed Royalty Claims, together with the administration of such proceeds.

5.24  <u>Postconfirmation Reporting</u>. In addition to any otherwise applicable reporting requirements, and until all Allowed Claims are paid in full as otherwise provided for in this Plan, the Reorganized Debtors shall provide the following documents and information to the Plan Agent: (i) within twenty (20) days after the end of each calendar quarter, a report which lists, with respect to the preceding calendar quarter: (a) each payment made under the Plan or paid into the Disputed Claims Reserve, including the identity of the Creditor, the amount paid to such Creditor, and the date of such payment; and (b) the amount of each outstanding Creditor's claim, including any accrued interest (if applicable); and (ii) within thirty (30) days after the end of each calendar quarter, the following financial statements for the Reorganized Debtors as generated by the Reorganized Debtors' accounting software: (a) balance sheet, and (b) income statement; (iii) within thirty (30) days after the following documents are produced or filed: (a) audited financial statements for any of the Reorganized Debtors; (b) Federal Tax returns for any of the Reorganized Debtors including all attachments; (iv) all information reasonably necessary to ensure the proper calculation and payment from the Tax Escrow; and (v) such other information as may be reasonably requested by the Plan Agent in order for the Plan Agent to fulfil his obligations under this Plan. The sharing of information under (iv) above shall be confidential and privileged and the Plan Agent shall not divulge or transmit the same, except as may be necessary to appear in any proceeding before the Bankruptcy Court, in which case the same shall be filed under seal. Notwithstanding the foregoing, the Reorganized Debtors shall have no obligation to share any otherwise privileged (by the attorney-client or the attorney work product privilege(s)) documents and information with the Plan Agent. The failure by the Reorganized Debtors to timely provide such reporting shall constitute a default of their obligations under this Plan.

5.25  <u>Default and Cure</u>. In the event of any default by the Reorganized Debtors under this Plan, where such default is capable of monetary or cure, and expressly excluding any default that is maturity default, any affected Creditor or the Plan Agent may transmit notice of such default to the Reorganized Debtors as provided for in section 11.9 of this Plan, whereafter the Reorganized Debtors shall have ten (10) business days after the transmission of said notice to cure said default. If they fail to fully cure said default during said period, then they shall be in uncured default of this Plan and any affected Creditor or the Plan Agent may take any and all actions otherwise authorized under this Plan or any lien instrument. The Reorganized Debtors shall be entitled to cure only one such default in any full 365 day period after the Effective Date, whereafter the second such default in said 365 period will not entitled the Reorganized Debtors to any opportunity to cure such default and the Reorganized Debtors shall be in uncured default of this Plan upon the transmission of the notice of said default as provided for in section 11.9 of

this Plan, whereafter any affected Creditor or the Plan Agent may take any and all actions otherwise authorized under this Plan or any lien instrument.

5.26   Creditor Escrow.   Any remaining net proceeds from the sales of the Oregon Ranch and the Llano Ranch Parcel 1 under sections 5.3 and/or 5.4 of this Plan payable to the Reorganized Debtors shall instead be placed into an escrow account (the "Creditor Escrow"). The Creditor Escrow shall be under the exclusive control of the Plan Agent, who shall deposit such funds into an interest bearing account.   The Creditor Escrow shall exist solely to pay Allowed Class 6 and Class 7 Claims, pro-rata, by the Plan Agent, as though the Allowed Claims in said Classes were part of the same Class, if the Reorganized Debtors default under this Plan on their obligations to said Classes, up to the full amount of such Allowed Claims and the Reorganized Debtors' remaining unpaid obligations to said Classes.   Upon the full payment of Allowed Class 6 and Class 7 Claims, any funds in the Creditor Escrow shall be released by the Plan Agent to the Reorganized Debtors.

5.27   Dissolution of Committee.   The Committee shall cease to exist on the Effective Date, provided that this shall be without prejudice to any member thereof asserting an Administrative Claim and to the professionals thereof asserting a Professional Claim

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1.   Impairment Controversies.   If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

6.2.   Classes and Claims Entitled to Vote.   Classes: 2, 3, 4, 5, 6, and 7 are impaired and entitled to vote on this Plan.   Classes: 1, 8, and 9 are not impaired and are deemed to accept this Plan, subject to any objection to confirmation of this Plan.

## ARTICLE VII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

7.1.   Objection Deadline.   Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived.   Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim.   Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate.   Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.   Any Disputed Claim may be litigated to Final Order. The Reorganized Debtors may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.   Nothing in this Plan

extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

7.2.     Creditor Response to Objection.  With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Debtor and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

7.3.     No Waiver of Right to Object.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair any Debtor's or other appropriate party-in-interest's right to object to any Claim.  A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

7.4.     Miscellaneous Provisions for Disputed Claims.  Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise.  The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim.  Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Dallas Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain.  Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.  The Debtor shall retain all rights of removal to federal court as to any proceeding involving a Disputed Claim.

7.5.     Allowance of Disputed Claims.  All Disputed Claims shall be liquidated and determined as follows:

7.5.1.   Application of Adversary Proceeding Rules.  Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules.  However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings.  The Reorganized Debtors may, at their election, make and pursue any objection to a Claim in the form of an adversary proceeding.

7.5.2.  Scheduling Order.  Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof.  The Reorganized Debtors may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

7.5.3.  Mediation.  The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim.  The Reorganized Debtors may include a request for mediation in its objection, and request that the Court require mediation as part of the scheduling order.

7.5.4.  Substantial Consummation.  All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

7.5.5  Offsets.  The Reorganized Debtors shall retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

7.6  Amendments to Claims; Claims Filed After the Confirmation Date.  Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

7.7  Disputed Claims Reserves.  Each time that the Reorganized Debtors are required to make a payment under this Plan to any particular Class pro-rata or *pari passu*, the Reorganized Debtors shall calculate and make such payments as though all Claims in such Class have been Allowed in the amounts asserted (or estimated or as otherwise ordered by the Bankruptcy Court), but they shall withhold any such payments attributable to Disputed Claims (or the amounts of Claims that are disputed) or that have yet to be Allowed (or the amounts of Claims that have yet to be Allowed).  Upon the resolution of the respective Disputed Claim or the allowance thereof, no later than ten (10) Business Days after the entry of a Final Order providing for such resolution or allowance, the Reorganized Debtors shall pay such withheld amounts to the respective Creditors such that, at that time, such Creditors shall have been paid *pari passu* with other Creditors whose Claims have been Allowed.  Upon the disallowance of a Disputed Claim or a Claim not being Allowed, by Final Order, such withheld amounts shall be included in the next payment by the Reorganized Debtors to Allowed Claims within such Class in addition to any regularly scheduled payment.  Should withheld amounts on account of Disputed Claims or Claims not yet Allowed remain at the conclusion of any repayment schedule for any Class, the Reorganized Debtors shall continue to hold the same and shall either pay the same when such Disputed Claims become Allowed or, when all Claims within the respective Class have been finally adjudicated by Final Order, shall pay any such remaining withheld funds to the remaining Allowed Claims within such Class notwithstanding the conclusion of the

repayment period.  If such withheld funds remain and all Allowed Claims within the respective Class have been paid in full as otherwise provided for in this Plan, then such withheld funds may be retained and used by the Reorganized Debtors for such purposes as they wish.  As part of their reporting to the Plan Agent, the Reorganized Debtors shall include all reasonable information regarding the maintenance, calculation, and funding of the Disputed Claims Reserve, and the Plan Agent shall have the authority to require the Reorganized Debtors to properly fund, maintain, and distribute from the same.

## ARTICLE VIII
## EFFECTS OF PLAN CONFIRMATION

8.1     <u>Discharge</u>.  On the Effective Date, and automatically, without need for further document, order, or action, each Debtor is discharged of all Claims arising prior to the Effective Date pursuant to the provisions of section 1141(d) of the Bankruptcy Code.

8.2     <u>Plan Injunction</u>.  Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the Estates or any of their property, or against the Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim or Debt that is discharged under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Estates or their property, or against the Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim or Debt that is discharged under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors or the Estates or their property, or against the Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim, interest, lien, or Debt that is discharged under this Plan, unless specifically and expressly permitted in this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtors or their property, or against the Reorganized Debtors or any of their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided, however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

8.3     <u>No Liability for Solicitation or Participation</u>.  Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

8.4    <u>Exculpation</u>.  Except as specifically provided for herein, on and after the Effective Date, on the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor or the Estate may have or be able to assert against: (i) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders; (ii) Riverbend Special Situations Group, its shareholders, officers, directors, managers, agents, and employees, including Brad Walker; (iii) Lain Faulkner & Co., P.C., its shareholders, officers, directors, managers, agents and employees; and (iv) any person who was a shareholder, director, officer, employee, representative, member, manager, or agent of the Debtors after the Petition Date through the Effective Date, solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case, the Disclosure Statement, or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released; *provided further, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional act.

## ARTICLE IX
## <u>CONDITIONS PRECEDENT</u>

9.1.    <u>Conditions Precedent to Confirmation and Effectiveness of Plan</u>.  The Plan shall not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) the Exit Financing shall have been funded; (iv) the Hoerauf House shall have been transferred to the Plan Agent; (v) a deed of trust evidencing the lien granted under section 3.6.4 of this Plan shall have been executed and recorded; (vi) all other specific condition precedents contained in this Plan shall have been satisfied; and (vi) a notice of the Effective Date shall have been filed by the Debtor in the Bankruptcy Case.

9.2.    <u>Non-Occurrence of the Effective Date</u>.  If the Plan is confirmed but the Effective Date does not occur by October 1, 2025, unless such date is extended by the Debtors: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtors and other parties-in-interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

9.3.    <u>Notice of the Effective Date</u>.   On or before three (3) Business Days after occurrence of the Effective Date, the Debtor shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

9.4.    <u>Modification of this Plan</u>.   The Debtors may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.   After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtors or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan.

9.5.    <u>Revocation or Withdrawal of this Plan</u>.   The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.   If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.   In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

9.6    <u>Inadmissible Settlement Offer</u>.   If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Debtors or the Estate.

## ARTICLE X
## <u>RETENTION OF JURISDICTION AND CLAIMS</u>

10.1.    <u>Jurisdiction of Bankruptcy Court</u>.    Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

10.1.1.     To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

10.1.2.     To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

10.1.3.        To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

10.1.4.        To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

10.1.5.        To construe and to take any action to enforce this Plan and the Confirmation Order;

10.1.6.        To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

10.1.7.        To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

10.1.8.        To hear and determine all applications for Administrative Claims;

10.1.9.        To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

10.1.10.        To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.1.11.        To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

10.1.12        To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Debtors find it necessary or appropriate to seek an order authorizing the same.

10.1.13.        To enter the Final Decree upon proper request;

10.1.14.        To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtors and the Estates free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may due to the same with the same full force and effect;

10.1.15.        To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets;

and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or the Estate, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and

10.1.16      To hear and determine any Avoidance Actions.

10.1.17      To hear and determine all matters affecting the Plan Agent and to provide him appropriate relief.

10.2.  <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

10.3.  <u>No Creation of Jurisdiction</u>.  This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists.  For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

10.4.  <u>Retention and Preservation of General Rights</u>.  Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtors and the Estates retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtors; and (vii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

10.5  <u>Retention and Preservation of Specific Rights</u>.  Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the Debtors and the Estates specifically reserve and retain the following claims and causes of action, which shall in no way be extinguished, released, or prejudices as a result of the confirmation of this Plan, and which are transferred to the Reorganized Debtors and the Consolidated Estate:

(i)      the Avoidance Actions;

      (ii)     objections to all Mechanics Liens Secured Claims, and the determination of the validity, extent, and priority of any liens securing the same;

      (iii)    all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code;

      (iv)    all causes of action of the Estates and the Consolidated Estate.

# ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1.   <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date, shall be timely paid by the Reorganized Debtors, subject to the rights of the Reorganized Debtors to contest the same.

11.2.   <u>Exercise of Liens</u>.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

11.3.   <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

11.4.   <u>Plan Controls</u>. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

11.5.   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

11.6.   <u>Substantial Consummation of Plan</u>.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

11.7.   <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

11.8.   <u>Severability</u>.  Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or

illegal or unenforceable as applied to any Claim or Person, the Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

11.9.    Notices and Distributions.  On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtors. Any holder of a Claim may designate another address for the purposes of this section by providing the Reorganized Debtors written notice of such address, which notice will be effective upon receipt by the Reorganized Debtors as otherwise appropriate.

Any notices required to be sent under this Plan to the Reorganized Debtors may be sent as follows:

To the Reorganized Debtors:                    with a copy to:


11.10.   Unclaimed Property.  If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtors.

11.11.   Binding Effect.  The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

11.12.   Withholding and Reporting.  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements. Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtors shall be authorized, but not required, to deduct from such payments any necessary withholding amount.

11.13   Credit for Non-Debtor Payments.  Notwithstanding the Allowance of a Claim under this Plan or otherwise, the Reorganized Debtors shall be entitled to a credit against their obligations under this Plan for each Claim on account of which the holder thereof obtains any recovery from a non-Debtor or from the property of a non-Debtor. In no event shall a Claim be entitled to more than one, full satisfaction, regardless of source.

## ARTICLE XII
## <u>CONFIRMATION REQUEST</u>

The Debtors hereby request confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

DATED: APRIL 28, 2025.

**FOR THE DEBTORS:**

<u>/s/ Ryan C. Hoerauf</u>
Ryan C. Hoerauf

**MUNSCH HARDT KOPF & HARR, P.C.**

By: <u>/s/ Davor Rukavina</u>
       Davor Rukavina, Esq.
       Texas Bar No. 24030781
       Thomas D. Berghman, Esq.
       Texas Bar No. 24082683
       Garrick C. Smith, Esq.
       Texas Bar No. 24088435
        4000 Ross Tower
       500 N. Akard Street
       Dallas, Texas  75201-6659
       Telephone: (214) 855-7500
       Facsimile: (214) 855-7584

**ATTORNEYS FOR THE OIL AND GAS DEBTORS**

**-- and --**

**JOBE LAW PLLC**

By: <u>/s/ Hudson M. Jobe</u>
Hudson M. Jobe
Texas Bar No. 24041189
6060 North Central Expressway, Suite 500
Dallas, TX 75206
(214) 807-0563
hjobe@jobelawpllc.com

**ATTORNEYS FOR O'RYAN RANCHES, LTD**