Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Garrick C. Smith, Esq.
Texas Bar No. 24088435
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard St., Ste. 4000
Dallas, TX 75201
Telephone:   (214) 855-7500
E-mail:      drukavina@munsch.com
             tberghman@munsch.com
             gsmith@munsch.com

COUNSEL TO THE OIL AND GAS DEBTORS
AND THE OREGON DEBTORS

Hudson M. Jobe
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, TX 75206
(214) 807-0563
hjobe@jobelawpllc.com

COUNSEL TO O'RYAN RANCHES, LTD.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCANROCK OIL & GAS, INC., *et al.*, | § | Case No. 25-90001-mxm11 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

**THE DEBTORS' OBJECTION TO**
**THE U.S. TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEES**
[Relates to Docket No. 183, 264, and 266]

TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:

The debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11

cases (the "Cases") file this (i) objection (the "Objection") to the *United States Trustee's Motion*

*for an Order Directing the Appointment of Chapter 11 Trustees Under 11 U.S.C. § 1104(a)*

[Docket No. 183] (the "Motion") and (ii) response to the *Partial Joinder* [Docket No. 264]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Scanrock Oil & Gas, Inc. (0380); EON Production, LLC (0136); O'Ryan Family Limited Partnership (1913); O'Ryan Production & Exploration Ltd. (9950); O'Ryan Ponderosa, LLC (1476); Ryan C. Hoerauf, Inc. (0493); and Smackover Oil Treaters, Ltd. (9529) (collectively, the "Oil and Gas Debtors"); and O'Ryan Ranches, Ltd. (7184). The location of the Debtors' service address is 8180 Lakeview Center, Ste. 300, Odessa, TX 79765. More information about the Debtors, and copies of pleadings in the above-captioned bankruptcy case, may be obtained on the website of the Debtors' proposed noticing agent, Stretto, Inc., at: https://cases.stretto.com/scanrock.

("Prosperity Joinder") filed by Prosperity Bank ("Prosperity") and the *Limited Joinder* [Docket

No. 266] (the "Committee Joinder") filed by the Official Committee of Unsecured Creditors (the

"Committee"), and respectfully state as follows:

## I.      PRELIMINARY STATEMENT[2]

1.      These Cases are not even three months old.  The Committee was appointed

approximately a month ago.  Since the Petition Date, qualified and experienced professionals,

alongside the Debtors' management team, have been working tirelessly to stabilize operations,

market and sell assets, comply with all administrative and reporting obligations (for at least six

different constituencies), communicate on a daily basis with various creditors and parties in

interest, prepare for contested hearings, attend three 341 creditors meetings, and fulfill all fiduciary

obligations in the face of a constant bombardment of objections, discovery requests, interviews,

depositions, and value-destructive disputes on a weekly basis.  As stated last hearing, the breathing

spell never occurred in these Cases.

2.      Nonetheless, in spite of these persistent headwinds, the Debtors have been working

on a dual track to propose global solutions and strategies for an effective reorganization for the

benefit of all stakeholders.  On April 25, the Oregon Debtors filed for chapter 11 and sought

approval to be jointly-administered with the Debtors in these Cases.  Further, the Debtors also filed

a motion seeking an order appointing Brad Walker as Chief Restructuring Officer ("CRO") with

exclusive decision-making authority over the Oregon Debtors (including the sale of the Oregon

Ranch) pursuant to the Corporate Resolutions filed with the Oregon Debtors' chapter 11 petitions.

If entered by the Court, the proposed order ensures that the CRO retains such exclusive decision-

making authority over the Oregon Debtors (including the sale of the Oregon Ranch) unless and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in this Objection.

THE DEBTORS' OBJECTION TO THE U.S. TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEES

until modified by further order of this Court.

3.      On April 28, the Debtors filed a joint consolidated plan of reorganization (the "Plan"), which provides for, among other things, substantive consolidation of all estates (including the Oregon Debtors' estates) for purposes of making distributions and satisfying obligations to pay all creditors in full.  The Plan offers a reasonable and viable proposed solution for repayment of creditors with limited substantive consolidation pursuant to section 1123(a)(5)(c) of the Bankruptcy Code.  Moreover, the Plan provides for a negotiated process with metrics for selling the Oregon Ranch and all of the Llano Ranch (if necessary) pursuant to the terms therein while also providing royalty holders with a junior lien on the Llano Ranch to secure repayment of royalties.  Under the Plan, the Debtors' principal, Ryan Hoerauf, has even proposed contributing his homestead, as necessary, alongside potential exit financing to fund oil and gas operations for repayment of debt.  The Debtors welcome all constituents to engage with them in meaningful, good-faith negotiations on the Plan.

4.      However, if the U.S. Trustee's Motion is successful, the Debtors will be forced to negotiate the Plan as debtors-out-of-possession with three chapter 11 trustees and their three respective sets of professionals at a tremendous expense to the estates at a time when liquidity is severely strained.  The Trustee does not cite to any fraud, dishonesty, incompetence, or gross mismanagement in requesting such draconian relief.  *See* 11 U.S.C. § 1104(a)(1).  No statutorily-enumerated ground for "cause" is alleged.  Essentially, the U.S. Trustee's position can be distilled down into two concerns raised regarding the facts as they existed at the end of March: (i) conflicts of interest exist between the debtors and between the debtors and certain non-debtors based on past and present intercompany transfers, and (ii) the independence of the CRO to navigate these conflicts for an effective reorganization.

5.      As this Court is well aware, historical intercompany debts between debtors and between debtors and non-debtors are not uncommon in large, complex chapter 11 cases.   In the early stages of such cases, many debtors often lack the time or resources to perform a full forensic accounting.  As a solution to a fairly-identified problem or "red flag", the Debtors are proposing the Plan which provides for substantively consolidating the Debtors (including the Oregon Debtors) for purposes of making distributions to all creditors from one "pot" or "pool" of assets. To that end, the Oregon Debtors filed chapter 11 and are seeking to bestow exclusive decision-making authority on the CRO over the Oregon Debtors and the sale process for the Oregon Ranch (*i.e*., the most valuable asset of the estates for recoveries once consolidated).  If the Plan is confirmed and consolidation approved, any alleged potential conflicts of interests are effectively moot and the intercompany transfers effectively immaterial for purposes of creditor recoveries at various debtor entities.  As of today, the facts have changed since the Motion was filed: the CRO will independently control the sale of the Oregon Ranch while continuing to work collaboratively with the Debtors' management team (and creditors) regarding the Llano Ranch sale process and the oil and gas operations in order to fund and facilitate the Plan.

6.      As far as the Prosperity Joinder, Prosperity raises certain unsubstantiated allegations which, at times, veer more into speculation than into facts and evidence.  This is not shocking considering Prosperity only recently acquired this 15+ year old credit facility and conveniently ignores the lengthy track record of the Debtors working cooperatively with the prior lender.  Nonetheless, the Debtors continue to finish the workover on the Henderson (Smackover) Unit #5 well ("HSU #5") and are optimistic regarding its production as a source of revenue to fund the Plan.  The Debtors continue to market the Oregon Ranch and the currently listed portion of the Llano Ranch with full intention to sell for market value.  The Oregon Debtors have filed chapter

11 to join these Cases and the CRO is now in charge of the Oregon Ranch sale process as an independent fiduciary.  The Debtors have continued to negotiate with Prosperity and fully intend to work constructively with Prosperity on the Plan without need for any chapter 11 trustee at this early stage.

7.    As far as the Committee Joinder, the Committee states quite succinctly and directly as follows: "Absent the Debtors' agreement to vest Mr. Walker (or another CRO) with [full] authority, file the entities that own the Oregon ranch, and substantively consolidate the Debtors, the Committee supports appointment of a single chapter 11 trustee."  Committee Joinder, at ¶ 1. As of the time of filing this Objection, the Oregon Debtors have filed chapter 11 seeking joint administration, the CRO has full and exclusive authority over the Oregon Debtors, and the Debtors have proposed substantively consolidating the Debtors (including the Oregon Debtors) through the Plan.  This is procedurally proper and resolves nearly all of the Committee's stated concerns.[3] Much like Prosperity, the Debtors fully intend to continue to work constructively with the Committee on the Plan without need for any chapter 11 trustee at this early stage.

8.    Finally, unless the parties simply want a litigation case where tremendous value is destroyed via administrative burn, the parties should give the Debtors a chance to negotiate their Plan in good faith.  As the Court is well aware, the Debtors have severely strained liquidity and it is time for cooperation on global solutions and not continued litigation with new sets of professionals.  The Debtors assert that they have made substantial steps in that direction in the last week.

9.    Accordingly, the U.S. Trustee's Motion should be denied because cause does not

---

[3] The Committee has continued to insist that the Debtors should file a motion for substantive consolidation.  However, the Debtors do not believe that such a motion is procedurally proper and, instead, consolidation should be sought through the Plan pursuant to section 1123(a)(5)(c) of the Bankruptcy Code.

exist to warrant the extraordinary relief (and cost) of appointing even one chapter 11 trustee and

the interests of creditors are best served through an effective reorganization proposed by the Plan.

For the reasons set forth herein, the Debtors respectfully state that the U.S. Trustee has not met its

burden to establish by clear and convincing evidence that the appointment of any trustee is

necessary pursuant section 1104(a) of the Bankruptcy Code and the Debtors request that this Court

deny the U.S. Trustee's Motion at this time.

## II.    BACKGROUND

10.    On February 3, 2025, Scanrock Oil and Gas, Inc. and O'Ryan Ranches, Ltd. filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Northern District of Texas, Fort Worth Division.  On February 9, 2025,

the remaining Debtors filed for relief under chapter 11 in this Court, and for the Debtors to be

jointly administered.  No trustee or examiner has been appointed in these Cases.[4]

11.    On March 18, 2025, the Official Committee of Unsecured Creditors (the

"Committee") was appointed in these Cases.

12.    On March 28, 2025, the U.S. Trustee filed the *Motion for an Order Directing the*

*Appointment of Chapter 11 Trustees Under 11 U.S.C. § 1104(a)* [Docket No. 183] (the "Trustee

Motion") seeking to appoint three chapter 11 trustees in these Cases: one each for debtors (i)

Smackover Oil Treaters, Ltd., (ii) Ryan C. Hoerauf, Inc, and (iii) O'Ryan Family Limited

Partnership.

13.    On April 23, 2025, Prosperity filed the Prosperity Joinder supporting the

appointment of a single chapter 11 trustee for debtors O'Ryan Family Limited Partnership (equity

---

[4]  A detailed background regarding the Debtors' businesses and the circumstances leading to the Bankruptcy Cases is
set forth in the *Declaration of Brad Walker in Support of the Debtors' Chapter 11 Petitions and Requests for First-
Day Relief* [Docket No. 28], incorporated by reference as if fully set forth herein.

owner of the Oregon Debtors) and O'Ryan Ranches, Ltd. (land owner of the Llano Ranch).

14.     On April 24, 2025, the Committee filed the Committee Joinder supporting the appointment of a single chapter 11 trustee for the consolidated estates of the Debtors.

15.     On April 25, 2025, Ryan C. Hoerauf, the principal of the Debtors, sat for an all-day deposition with counsel to the Committee, Prosperity, and certain other parties regarding this Motion and other matters in these Cases.

16.     On the same day, O'Ryan Oregon Ranches, LLC (Case No. 25-90008) and O'Ryan Ranches, LLC (Case No. 25-90009) (collectively, the "Oregon Debtors") filed petitions for relief under chapter 11.  The petitions attached the corporate resolutions (the "Corporate Resolutions") appointing the CRO with sole and exclusive authority to manage the Oregon Debtors (including the sale process for the Oregon Ranch).

17.     On the same day, the Oregon Debtors filed the *Emergency Motion to Appoint Brad Walker as Chief Restructuring Officer for O'Ryan Ranches, LLC and O'Ryan Oregon Ranches, LLC* [Case No. 25-90008, Docket No. 4; Case No. 25-90009, Docket No. 6], which seeks to appoint the CRO as the exclusive authority with exclusive decision-making power over the Oregon Debtors and the sale of the Oregon Ranch, which cannot be modified but for further order of this Court.

18.     On April 26, 2025, the Debtors filed the *Emergency Motion for Joint Administration* [Case No. 25-90001, Docket No. 278; Case No. 25-90008, Docket No. 6; Case No. 25-90009, Docket No. 7] seeking to jointly administer the Debtors and the Oregon Debtors.

19.     On April 28, 2025, the Debtors filed their Plan [Docket No. 280] and Disclosure Statement.  The Plan proposes, among other things, substantively consolidating the estates of the

Debtors (including the Oregon Debtors) for the limited purposes of making all payments and

satisfying all obligations under the Plan.

### III.    OBJECTION

20.    The Bankruptcy Code provides two enumerated standards for the appointment of a

chapter 11 trustee.  Pursuant to section 1104(a)(1), the Court "shall order the appointment of a

trustee–(1) for cause."  11 U.S.C. § 1104(a)(1).  Cause includes "fraud, dishonesty, incompetence,

or gross mismanagement of the affairs of the debtor by current management."  *Id*.  Pursuant to

section 1104(a)(2), the Court "shall order the appointment of a trustee–(2) if such appointment is

in the interests of creditors."  11 U.S.C. § 1104(a)(2).

21.    As bankruptcy courts in this district have found, "[a]ppointment of a Chapter 11

trustee is a draconian remedy.  A strong presumption exists that a Chapter 11 debtor should be

permitted to remain in possession."  *In re Patman Drilling Int'l, Inc.*, No. 07-34622-SGJ, 2008

WL 724086, at *6 (Bankr. N.D. Tex. Mar. 14, 2008).  The presumption against this "extraordinary

remedy" cannot be overcome unless the movant satisfies its burden of "providing by clear and

convincing evidence the necessity for the appointment of a trustee."  *In re Evans*, 48 B.R. 46, 47

(Bankr. W.D. Tex. 1985) (citations omitted).[5]  Evidence is only "clear and convincing" if it is "'so

clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction,

without hesitancy, of the truth of precise facts of the case.'"  *Hornbeck Offshore Servs., L.L.C. v.

Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (quoting *Shafer v. Army & Air Force Exch. Serv*., 376

F.3d 386, 396 (5th Cir. 2004)).  Bankruptcy courts are provided wide latitude and discretion to

---

[5] S*ee also Cajun Elec. Power Coop. v. Cent. La. Elec. Co. (In re Cajun Elec. Power Coop.)*, 69 F.3d 746, 749 (5th
Cir. 1995) (citing 5 Lawrence King, Collier on Bankruptcy § 1104.01[7][b] (15th ed. 1995)), *withdrawn in part on
other grounds*, 74 F.3d 599 (5th Cir. 1996)); *In re Patman Drilling Int'l, Inc.*, No. 07-34622-SGJ, 2008 WL 724086,
at *6 (Bankr. N.D. Tex. Mar. 14, 2008); *In re Ford Steel*, 629 B.R. 871, 889 (Bankr. S.D. Tex. 2021).

make such a fact-intensive finding under the facts and circumstances of the case. *In re Cajun Elec. Power Co-op., Inc.*, 191 B.R. 659, 661 (M.D. La.).

22. This heightened standard, with wide latitude for the Court's consideration, is not surprising where the appointment of a trustee strips a debtor of the rights, powers, and duties of a debtor-in-possession in exchange for a third party who lacks institutional knowledge of operations, assets, and creditors. Moreover, such an extraordinary remedy cannot be undone and subjects the case to a tremendous financial burden. As a result, mere allegations of mismanagement, misconduct, and/or related-party transactions should not justify the appointment of a chapter 11 trustee without clear and convincing evidence. *See., e.g.*, *In re Bergeron*, 2013 WL 5874571, at * 9-10 (Bankr. E.D.N.C. 2013).[6] Courts have found that acrimony, accusations, and concerns are not sufficient cause to appoint a chapter 11 trustee where it is not necessarily an impediment to a debtor's ability to reorganize and resolve disputes through the safeguards of the chapter 11 process. *See In re Eletson Holdings, Inc.*, 659 B.R. 426, 459 (Bankr. S.D.N.Y. 2024) ("The Court also acknowledges that these cases are acrimonious, but likewise does not believe such acrimony warrants a trustee at this time."); *In re Salem Consumer Square OH LLC*, 629 B.R. 562, 575-76 (Bankr. W.D. Pa. 2021) ("Overall, the Court does not view the level of acrimony in this case to be indicative of a complete inability of the parties to resolve matters cooperatively in the future.").[7]

A. **Cause Does Not Exist for the Appointment of Chapter 11 Trustees.**

23. As discussed above, the U.S. Trustee does not cite to any fraud, dishonesty,

---

[6] *See also In re Shotwell Landfill, Inc.*, 2014 WL 4377721, at * 8 (Bankr. E.D.N.C. 2014); *In re Concord Coal Corp.*, 11 B.R. 552, 553 (Bankr. S.D.W.Va. 1981) (holding that the appointment of a trustee is not warranted where "fraud and dishonesty have been alleged but not proven.").

[7] *In re Bergeron*, No. 13-02912-8-SWH, 2013 WL 5874571, at *10 (Bankr. E.D.N.C. Oct. 31, 2013) ("The court's decision [to deny appointment of a chapter 11 trustee] is consistent with the overriding philosophy of Chapter 11, which is to the give the debtor a second chance [;] therefore, current management should be permitted to identify and correct its past mistakes.") (internal quotations omitted) (citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 24-41 (4th Cir. 1987).

incompetence, or gross mismanagement in requesting such a nuclear form of relief at this early stage of these Cases. Indeed, no statutorily-enumerated ground to find "cause" is alleged. Instead, the U.S. Trustee believes that cause exists to appoint chapter 11 trustees because "management is conflicted from effectively maximizing … the recovery of the Debtors' prepetition transfers to insiders." Motion, ¶ 26. "Chapter 11 trustees would be better positioned to investigate, assert and seek recovery of assets resulting from Debtors' pre-petition transfers to insiders." *Id.* at ¶ 30. The U.S. Trustee is hyper-fixated on the presence of intercompany obligations between debtors and non-debtors. As this Court is aware, many multi-debtor, complex chapter 11 cases routinely involve significant intercompany obligations between debtor entities and between debtor and non-debtor entities. Certain intercompany obligations do exist among the Debtors in these Cases, but that does not mean *ipso facto* that management is conflicted from fulfilling fiduciary duties or obtaining an effective reorganization supported by creditors.

24.     Further, the U.S. Trustee appears to favor maximization of chapter 5 recoveries to the exclusion of an opportunity for an effective reorganization in these Cases. The proposed conflicts are merely hypothetical until the Debtors' professionals and management team have an actual conflict of interest preventing the fulfillment of their fiduciary obligations. Further, the Committee is actively working to investigate avoidable transfers and will surely seek to extract maximum value where colorable claims exist and/or resolutions cannot be reached pursuant to the Plan. The U.S. Trustee should allow the Committee time to conduct its investigation and work with the Debtors on solutions and confirmation of the Plan at this stage.

25.     As discussed in detail above, the Oregon Debtors have now filed chapter 11 to be jointly administered with these Cases. The CRO will have exclusive and independent control over the Oregon Debtors. The Plan has been filed proposing to substantively consolidate all Debtors

(including the Oregon Debtors) for the purpose of repayment of creditors from one "pool" of assets. The Debtors deserve the right to negotiate with their creditors and seek to confirm the Plan prior to the appointment of any chapter 11 trustee and prior to these Cases devolving into years of value-destructive litigation. Any allegations of prepetition mismanagement raised by Prosperity or the Committee remain allegations and the Debtors have complied with all of their fiduciary duties to the estates during the pendency of these Cases. Accordingly, the U.S. Trustee's Motion should be denied for lack of cause, by clear and convincing evidence, pursuant to section 1104(a)(1) of the Bankruptcy Code.

**B.**      **Appointment of Chapter 11 Trustees Does Not Serve the Best Interests of Creditors.**

26.      As also discussed above, the substantial and irreparable harm of dispossessing the Debtors management and professionals by appointing a chapter 11 trustee far outweighs any potential benefit to creditors. As an initial matter, the Motion fails to demonstrate how a chapter 11 trustee—let alone, three—would benefit all creditors. The U.S. Trustee bears the burden to demonstrate by clear and convincing evidence that appointment of three chapter 11 trustees is in the best interest of creditors. 11 U.S.C. § 1104(a)(2); *In re Evans*, 48 B.R. 46, 47 (Bankr. W.D. Tex. 1985); *In re Cajun Elec. Power Coop.*, 69 F.3d at 749.

27.      Appointment of three chapter 11 trustees is extraordinarily imprudent and unlikely to provide any benefit to the Debtors' estates. In addition to the costs of three trustees and their respective professionals, the Debtors' estates and their creditors will be saddled with unnecessary delay while the trustees spend months educating themselves on the businesses, assets, and debts of the estates before they can even begin to negotiate the debtor-out-of-possession's proposed Plan. Even if an appointed trustee is able to fully educate itself, the trustee will inevitably be less experienced and less familiar with operations. This creates its own risk in managing the operations

of the Oregon Ranch against fire and environmental hazards (which would result in tremendous loss of estate value) as well as managing the operations of highly complex oil and gas assets situated in a unique field in the Smackover with environmental risks.

28.      "Beside the dislocation caused by appointment of a trustee, the Court must also consider the cost of the trustee and balance of the harm of such an appointment against the benefits of a trustee's appointment."[8]  "In exercising its discretion under this subsection, the Court must determine whether the creditors and equity security holders would be served by the appointment of an examiner and whether the costs of an examiner are not disproportionately high."[9]  At this time, the costs substantially outweigh the benefits, and the estates cannot support the cost of an additional set of professionals (much less three).

29.      "Chapter 11 is designed to give the debtor an opportunity to rehabilitate through reorganization, [and] the process of rehabilitation is generally most effective under current management who are familiar with the operation of the business involved."[10]  Such is the case here.  The Debtors have filed a Plan offering a path forward toward effective reorganization. Appointing chapter 11 trustees at this stage would deny the Debtors of a fighting chance for a fresh start and lead to certain administrative insolvency.  As a result, the interests of economic stakeholders are best served by denying the U.S. Trustee's Motion and permitting the Debtors an opportunity to negotiate their Plan with all creditor constituencies.  Accordingly, the U.S. Trustee has not met its burden, by clear and convincing evidence, and the Motion should be denied

---

[8]    *Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001) (citations omitted).

[9]  *In re Gilman Servs., Inc.,* 46 B.R. 322, 327 (Bankr. D. Mass. 1985) (citing *In re Lenihan,* 4 B.R. 209 (Bankr. D.R.I. 1980) (citing *American Bulk Transport Co.,* 8 B.R. 337 (Bankr. D. Kan. 1980)); *see also In re ProFlo Indus., LLC,* No. 17-33184, 2018 Bankr. LEXIS 229, at *25 (Bankr. N.D. Ohio, Jan. 29, 2018) (same); and *In re Gliatech, Inc.,* 305 B.R. 832, 836 (Bankr. N.D. Ohio 2004) (weighing costs).

[10]    *Id.* (citations omitted).

pursuant section 1104(a)(2) of the Bankruptcy Code.

## IV.    CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that this

Court (i) deny the Motion pursuant section 1104(a) of the Bankruptcy Code and (ii) grant the

Debtors such other and further relief to which they may be entitled at law or in equity.

RESPECTFULLY SUBMITTED on April 28, 2025.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/  Garrick C. Smith*
     Davor Rukavina, Esq.
     Texas Bar No. 24030781
     Thomas D. Berghman, Esq.
     Texas Bar No. 24082683
     Garrick C. Smith, Esq.
     Texas Bar No. 24088435
     500 N. Akard Street, Suite 4000
     Dallas, Texas 75201
     Telephone: (214) 855-7500
     E-mail: drukavina@munsch.com
     E-mail: tberghman@munsch.com
     E-mail: gsmith@munsch.com

**COUNSEL TO THE OIL AND GAS DEBTORS
AND THE OREGON DEBTORS**

- and -

**JOBE LAW PLLC**

By: */s/ Hudson M. Jobe*
     Hudson M. Jobe
     Texas Bar No. 24041189
     6060 North Central Expressway, Suite 500
     Dallas, TX 75206
     (214) 807-0563
     hjobe@jobelawpllc.com

**COUNSEL TO O'RYAN RANCHES, LTD.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 28, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Garrick C. Smith*
Garrick C. Smith