

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 3, 2025**

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCANROCK OIL & GAS, INC., *et al.*, | § | Case No. 25-90001-mxm11 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

### ORDER CONFIRMING THE DEBTORS'
### AMENDED JOINT CONSOLIDATED PLAN OF REORGANIZATION

CAME ON FOR HEARING on August 19, 2025 (the "Confirmation Hearing"), the

*Debtors' Amended Joint Consolidated Plan of Reorganization* [Docket No. 451] (as modified by

the Post-Hearing Version Plan [Docket No. 535], attached hereto as **Exhibit A**, the "Plan") filed

by the debtors and debtors-in-possession in the above-captioned, jointly-administered chapter 11

bankruptcy cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the

Northern District of Texas, Fort Worth Division (the "Court").[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Scanrock Oil & Gas, Inc. (0380); EON Production, LLC (0136); O'Ryan Family Limited Partnership (1913); O'Ryan Production & Exploration Ltd. (9950); O'Ryan Ponderosa, LLC (1476); Ryan C. Hoerauf, Inc. (0493); and Smackover Oil Treaters, Ltd. (9529); O'Ryan Ranches, Ltd. (7184); O'Ryan Ranches, LLC (6467); and O'Ryan Oregon Ranches, LLC (collectively, the "Debtors"). The location of the Debtors' service address is 8180 Lakeview Center, Ste. 300, Odessa, TX 79765.

[2]   Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

- 1 -

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A.    Findings and Conclusions**

1.    The findings and conclusions set forth herein and on the record of the Confirmation hearing constitute the Court's findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014.  The findings and conclusions of the Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding**

2.    The Court has jurisdiction over the Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code, and the Court may enter a final order consistent with Article III of the United States Constitution.

**C.    Eligibility for Relief**

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.    Commencement and Joint Administration of the Chapter 11 Cases**

4.    On February 3, 2025,[3] Scanrock Oil & Gas, Inc. ("Scanrock") and O'Ryan Ranches, Ltd. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On

---

[3]    "Petition Date" shall mean, with respect to each Debtor, the date on which it filed its chapter 11 petition for relief.

February 9, 2025, EON Production, LLC; O'Ryan Family Limited Partnership; O'Ryan Production & Exploration, Ltd.; O'Ryan Ponderosa, LLC; Ryan C. Hoerauf, Inc.; and Smackover Oil Treaters Ltd. (together with Scanrock, the "Oil and Gas Debtors") filed for chapter 11 in this Court for all of the Debtors to be jointly administered.  On February 14, 2025, the *Order Directing Joint Administration of the Chapter 11 Cases* [Docket No. 46] was entered, providing for the joint administration of these Cases under the lead case Scanrock Oil & Gas, Inc., Case No. 25-90001-mxm11 (the "Lead Case").  On April 25, 2025, O'Ryan Oregon Ranches, LLC and O'Ryan Ranches, LLC (the "Oregon Debtors") filed for chapter 11 relief in order to be jointly administered with these Cases.  On May 1, 2025, the *Second Order Directing Joint Administration* [Docket No. 299] was entered, providing for the joint administration of the Oregon Debtors in the Lead Case.  On the Petition Dates, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.      Judicial Notice**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, all claims filed, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.      Notice**

6.      Due, timely, proper, and adequate notice of the Plan, the Disclosure Statement, and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan, have been provided substantially in accordance with the *Order*

- 3 -

*Approving Disclosure Statement and Solicitation and Notice Procedures, Setting Confirmation Hearing, and Setting Plan Deadlines* [Docket No. 462] (the "Disclosure Statement Order").

7.      Such notice was appropriate and satisfactory based upon the facts and circumstances of the Chapter 11 Cases and pursuant to sections 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely, and adequate notice of the Confirmation Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the U.S. Bankruptcy Court for the Northern District of Texas ("Local Rules"), the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures"), and applicable non-bankruptcy law.

**G.      Solicitation**

8.      The Plan, the Disclosure Statement, the ballots, the Notice of Confirmation Hearing, and the other materials distributed by the Debtors in connection with solicitation of the Plan (collectively, the "Solicitation Package") were transmitted and served in compliance with the Disclosure Statement Order and Bankruptcy Rules 3017 and 3018.

**H.      Plan Supplement**

9.      On August 5, 2025, the Debtors filed their *Notice of Filing of Plan Supplement* [Docket No. 478]; and on August 27, 2025, the Debtors filed their *Notice of Filing of Amended Plan Supplement* [Docket Nos. 524 and 534] (collectively, the "Plan Supplement").

**I.      Bankruptcy Rule 3016**

10.      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents.  The Debtors appropriately filed the Disclosure Statement with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The release, injunction, and exculpation

provisions of the Plan are set forth in Articles V and VIII of the Plan and comply with Bankruptcy Rule 3016(c).

**J.        Burden of Proof: Confirmation of the Plan**

11.        The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**K.        Compliance with the Bankruptcy Code Requirements: Section 1129(a)(1)**

12.        The Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**L.        Debtors Compliance with the Bankruptcy Code: Section 1129(a)(2)**

13.        The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a)  is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b)  has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c)  has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**M.        Plan Proposed in Good Faith: Section 1129(a)(3)**

14.        The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith

and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Court has considered the facts and record of the Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to confirmation.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of rehabilitation of the Debtors and repayment of the Debtors' creditors.  The Plan (including all documents necessary to effectuate the Plan) and the Plan Supplement were negotiated in good faith and at arm's length among the Debtors and their key stakeholders.

**N.      Payment for Services or Costs and Expenses: Section 1129(a)(4)**

15.      The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment made or to be made by the Debtors for services or for costs and expenses of the Professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.  All such costs and expenses of the Professionals shall be paid in accordance with the Plan.

**O.      Directors, Officers, and Insiders: Section 1129(a)(5)**

16.      In accordance with section 1129(a)(5) of the Bankruptcy Code, the Court finds and concludes that the Debtors adequately disclosed the Reorganized Debtors' management in the Plan.  The Plan also otherwise complies with section 1129(a)(5) of the Bankruptcy Code.

**P.      No Rate Changes: Section 1129(a)(6)**

17.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**Q.   Best Interest of Creditors: Section 1129(a)(7)**

18.   The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement as **Exhibit C** and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each holder of an Impaired Claim or Equity Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if such Debtors were liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

**R.   Acceptance by Certain Classes: Section 1129(a)(8)**

19.   In accordance with section 1129(a)(8) of the Bankruptcy Code, the Court finds and concludes that Classes 2–7 and 10 are impaired and were entitled to vote.  Classes 4, 5, 6, and 7 voted to accept the Plan.[4]  Therefore, section 1129(a)(8) is satisfied with respect to Classes 4, 5, 6, and 7.  Prosperity Bank voted to accept the Plan and, therefore, the release contained in Section 4.4.8 of the Plan is effective.  Class 3 (AgWest Secured Claim) voted to reject the Plan.

**S.   Treatment of Claims Entitled to Priority Under Section 507 of the Bankruptcy Code: Section 1129(a)(9)**

20.   The Court finds and concludes that the Plan's treatment of Claims of a kind specified in sections 507(a)(1) through (8) of the Bankruptcy Code satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

---

[4]  For the avoidance of doubt, as to each Debtor, Class 4 is impaired and voted to accept the Plan.

**T.      Acceptance by at Least One Impaired Class: Section 1129(a)(10)**

21.      The Court finds and concludes that Classes 4, 5, 6, and 7 of the Plan are impaired under the Plan and voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**U.      Feasibility: Section 1129(a)(11)**

22.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors at the Confirmation Hearing: (i) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) utilizes reasonable and appropriate methodologies and assumptions; (iii) has not been controverted by other evidence; (iv) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors, or any successor to the Debtors, under the Plan; and (v) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

**V.      Payment of Fees: Section 1129(a)(12)**

23.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XI, § 11.1 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**W.      Non-Applicability of Certain Sections: 1129(a)(13), (14), (15), and (16)**

24.      Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases. The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

X.     **No Unfair Discrimination; Fair and Equitable: Section 1129(b)**

25.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class 3 has rejected the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to any dissenting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Claim or Equity Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. Third, the Plan does not discriminate unfairly with respect to any dissenting Class.  Accordingly, the Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan may therefore be confirmed despite the fact that not all impaired classes have voted to accept the Plan.

Y.     **Only One Plan: Section 1129(c)**

26.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed with respect to each Debtor in each of the Chapter 11 Cases.

Z.     **Principal Purpose of the Plan: Section 1129(d)**

27.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and there has been no objection filed by any governmental unit asserting such avoidance.

**AA.  Not Small Business Cases: Section 1129(e)**

28.  The Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**BB.  Good Faith Solicitation: Section 1125(e)**

29.  Based on the record before the Court in these Chapter 11 Cases, including evidence proffered, admitted, or adduced at or prior to the Confirmation Hearing, the Debtors and other exculpated parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the solicitation procedures, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article VIII § 8.4 of the Plan.

**CC.  Satisfaction of Confirmation Requirements**

30.  Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, admitted, or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**DD.  Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

31.  Without limiting or modifying the rights of any party set forth in Article IX  of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX § 9.1 of the Plan.

**EE. Implementation**

32. The terms of the Plan, including the Plan Supplement, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "Plan Documents") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order. Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and holders of Claims and Equity Interests, and such Plan Documents are hereby approved. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**FF. Substantive Consolidation**

33. Based on the evidence and arguments made, proffered, admitted, or adduced at the Confirmation Hearing, and considering the factors set forth in *In re ADPT DFW Holdings, LLC*, 574 B.R. 87 (Bankr. N.D. Tex. 2017), good and sufficient cause exists for substantive consolidation of the Debtors' Estates as set forth in Article V, § 5.1 of the Plan for purposes of distribution, only.

    a) Solely for purposes of distributions under the Plan, and for no other purposes: (i) a "Consolidated Estate" is created comprised of all legal and equitable property, rights, and interests of each of the Debtors and the Estates at any time prior to the Effective Date, with all of such property, rights, and interests substantively consolidated into and with the Consolidated Estate, (ii) the Debtors each guarantee the obligations of each of the other Debtors and combine and merge their property and the property of the Estates, subject to any and all liens, claims, interests, and

- 11 -

encumbrances against the Debtors and the Estates as otherwise exist and as may be preserved, created, modified, released, or discharged in the Plan, (iii) *provided, however*, for the avoidance of doubt, for property of the Consolidated Estate that is subject to a lien, encumbrance, or interest, the consolidation of the Debtors, the Estates, and their property into the Consolidated Estate does not modify, affect, limit, release, discharge, or waive such lien, encumbrance, or interest, unless a different provision of the Plan or this Confirmation Order effectuates such result.

b) Except as otherwise provided in the Plan, a claim against any of the Debtors or the Estates and any property of any of the Debtors or the Estates arising prior to the Effective Date shall attach to the Reorganized Debtors and their property, jointly and severally, with the same validity, extent, and priority as otherwise exists and as provided for in the Plan, but only for purposes of making all payments and satisfying all obligations under the Plan; *provided, however*, for the avoidance of doubt, any claim arising after the Effective Date against the Reorganized Debtors shall exist against the respective Reorganized Debtor and its property, as otherwise appropriate, and not against the Consolidated Estate.

c) All claims against any of the Debtors or the Estates and any property of any of the Debtors or the Estates arising prior to the Effective Date shall be paid from the Consolidated Estate and its property notwithstanding the original obligor on such claim such that any Reorganized Debtor may pay an Allowed Claim against any other Reorganized Debtor.

d) For the avoidance of doubt, the Reorganized Debtors shall have *in personam* liability for Allowed Claims against the Consolidated Estate as otherwise provided for and modified, and discharged, under the Plan.

e) For the further avoidance of doubt, (i) nothing in the Plan merges the Debtors or the Estates for corporate, tax, governmental, or insurance purposes and (ii) the Reorganized Debtors shall maintain separate bank accounts, reporting, finances, and books and records.

f) Additionally, such consolidation shall not (i) constitute a waiver of the mutuality requirement or setoff under section 553 of the Bankruptcy Code; or (ii) otherwise provide a basis for the assertion of any setoff or rights of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Debtor, its Estate or its assets, or any direct or indirect successor-in-interest to a Debtor, or any assets or property of such successor.

g) Such substantive consolidation, as provided herein, is binding on any chapter 7 trustee appointed after the Effective Date.

**GG. Settlements Embodied in Plan Satisfy Bankruptcy Rule 9019**

34. All of the settlements and compromises pursuant to and in connection with the Plan and incorporated by reference into the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration for the benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Estates, and all holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

**HH. Good Faith**

35. The Debtors acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.

**II. Retention of Jurisdiction**

36. The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to the Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1. **Findings of Fact and Conclusions of Law**. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

2.      **Confirmation of the Plan**.  The Plan, and with the modifications and clarifications embodied in this Confirmation Order, is hereby CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Documents, are hereby authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

3.      **Objections**.  All objections to confirmation of the Plan and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits.

4.      **Plan Classification Controlling**.  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.  The classification set forth on the ballots tendered to or returned by the holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relief upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

5. **Confirmation Hearing Notice**. The Notice of Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law.

6. **Solicitation**. The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Disclosure Statement Order, and applicable non-bankruptcy law.

7. **Plan Modifications**. The modifications, amendments, and supplements made to the Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the proposed treatment of any Claims or Equity Interests. After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code. The filing of the proposed form of this Confirmation Order and the disclosure of such modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof. Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that the holders of Claims in the voting Classes be afforded an opportunity to change their previously cast votes on the Plan. The holders of Claims in the Classes who voted to accept the solicitation version of the Plan are deemed to accept the Plan as modified. The Plan, as modified, is, therefore, properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

- 15 -

8.      **Binding Effect**.  On the date of and after entry of this Confirmation Order, in accordance with section 1141(a) of the Bankruptcy Code and subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors and any and all holders of Claims or Equity Interests and such holder's respective successors and assigns (regardless of whether or not (a) the holders of such Claims or Equity Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the holders of such Claims or Equity Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Article V and Article VIII of the Plan), waivers, discharges, exculpations, and injunctions provided for in the Plan, and any and all non-Debtor parties to Executory Contracts. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

9.      **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors.

10.    **Plan Implementation**.

a)    Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on, or, unless specifically provided otherwise herein or the Plan, prior to the Effective Date, or as soon thereafter as is reasonably practicable, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan including (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (c) all other actions that Reorganized Debtors determine are necessary or appropriate and that are not inconsistent with the Plan.  The Plan Agent is authorized and directed to execute or deliver or join in the execution or delivery of any instrument required to effect Section 5.6 of the Plan, and to perform any other act, including the perfection of any lien or security interest, that is necessary for the implementation or consummation of Section 5.6 of the Plan.

b)    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of this Court, or further action by the Debtors.

c)    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the Debtors, this Confirmation Order shall, pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of Debtors.

- 17 -

d)      All transactions approved by the Court and effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date and previously authorized by the Court or the Bankruptcy Code (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

11.      **Directors and Officers of the Debtors**.  On and after the Effective Date, the officers and directors (or managers, if an LLC) of the Reorganized Debtors shall be Ryan C. Hoerauf with an annual salary, to be paid by the Oil and Gas Debtors, of $250,000.00, plus reimbursement and payment of pass-through taxes incurred by or payable for the Oil and Gas Debtors (in addition to reimbursement of reasonable expenses customary and ordinary to the applicable industry; *provided*, *however*, records of all such expenses must be maintained by the Reorganized Debtors and subject to review by the Plan Agent).  The Reorganized Debtors shall have no other directors, managers, or officers, subject to such future change and variation as is otherwise appropriate under applicable non-bankruptcy law.  For the avoidance of doubt, except with respect to Ryan C. Hoerauf, nothing herein limits any future compensation to any director, officer, or employee of the Reorganized Debtors, subject to any otherwise applicable rights, rules, laws, or principles.  The Plan Agent shall not manage the Reorganized Debtors or have any role over their operations, but shall instead be limited to selling the real properties and taking the other actions specified in the Plan.

12.      **Professional Compensation**.   The provisions governing compensation of Professionals set forth in Article III of the Plan are approved in their entirety.  All future payments from the Professional Fees Escrow after the Effective Date shall be made in accordance with Section 3.3.2 of the Plan.  All final requests for Professional Claims through and including the

Effective Date shall be filed no later than 30 days after the Effective Date.  Any objections to Professional Fee Claims shall be served and filed no later than 24 days after the filing of such final applications for payment of Professional Claims.

13.    **Establishment of Appropriate Reserves**.  In accordance with the terms of the Confirmation Order and the Plan, the Debtors shall establish the Disputed Claims Reserve in accordance with Article VII, § 7.7 of the Plan.

14.    **Distributions**.  All distributions pursuant to the Plan shall be made in accordance with Article XI § 11.9 of the Plan, and such methods of distribution are approved.

15.    **Compromise and Settlement of Claims, Interests, and Controversies**.  Pursuant to section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, issues, disputes and controversies that were, or could have been asserted in connection with the Chapter 11 Cases, except for those expressly preserved by the Plan.  The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article XI of the Plan, all distributions made to holders of Allowed Claims and Allowed Equity Interests (as applicable) in any Class are final.

16.    **Release, Exculpation, and Injunction Provisions**.  All injunction, release, and exculpation provisions set forth in the Plan are approved and shall be effective and binding on all persons and entities to the extent provided therein, unless provided otherwise in this Confirmation Order.

17.    **Gill Parties**.  Amber Gill, individually and as co-trustee of the ARG Trust, Shad Gill, as co-trustee of the ARG Trust, and Electrum Energy, LLC (collectively, the "Gill Parties") shall not be included as "Hoerauf Releasees" under the Plan and this Confirmation Order and any claims and causes of action allegedly held by the Debtors against the Gill Parties shall not be tolled. For the avoidance of doubt, prosecution of any claims or causes of action alleged by the Plan Agent, Prosperity Bank, or otherwise against the Gill Parties do not first require the occurrence of the Effective Date, a Plan default, or other triggering event under this Confirmation Order or the Plan.  For the further avoidance of doubt, the Gill Parties reserve and do not waive any and all defenses to such claims, causes of action, and associated remedies, whether at law or in equity, including but not limited to, objections to sufficiency of the retention and reservation of claims and causes of action against them (whether pursuant to 11 U.S.C. § 1123(b)(3) or otherwise), standing or authority of the Plan Agent, timeliness of claims, all rights of offset, setoff, or recoupment, and any other counterclaims or defenses that may be presented against such claims and causes of action.

18.    **SCRAB, LLC and Bite My Pipe, LLC**.  Notwithstanding anything to the contrary in the Plan and this Confirmation Order, the following terms shall apply with respect to Bite My Pipe, LLC ("BMP") and SCRAB, LLC ("SCRAB", and collectively with BMP, the "Specific Working Interest Holders").

   a) Section 4.6.b of the Plan shall apply to the Specific Working Interest Holders, except as modified by this paragraph.

   b) The Debtors and BMP stipulate that BMP holds an Allowed Working Interest Claim for prepetition arrearages in the amount of $130,288.40.

   c) The Debtors and SCRAB stipulate that the total SCRAB prepaid amount as of June 30, 2025, was $288,020.43. The Debtors shall provide SCRAB with an accounting each month reflecting adjustments to SCRAB's prepaid position.

d) The Specific Working Interest Holders shall retain their working interests, lease interests, and other interests pursuant to all applicable leases, contracts, participation agreements, granting instruments, operating agreements and all other applicable documents, and all such interests shall be preserved and shall remain in effect after the Effective Date. Nothing herein or in the Plan shall impair the Specific Working Interest Holders' lien interests, if any, as provided by contract or applicable law. For the avoidance of doubt, Section 4.6.10 of the Plan shall not apply to the Specific Working Interest Holders.

e) <u>Direct Payments for Future Production</u>.

    i. The Debtors and Specific Working Interest Holders agree, as soon as practicable after the Effective Date, to enter into a Division Order or other appropriate agreement with Plains Marketing, LP ("<u>Plains</u>") to provide for the direct payment by Plains to BMP and SCRAB of their share of production payments after the Effective Date.

    ii. The direct payments by Plains shall only apply to post-Effective Date production payments and not to any prepetition claim or obligation. The additional 20% monthly production payable to BMP on account of its Allowed Working Interest Claim shall be paid by the Debtors as provided for in Section 4.6.14 of the Plan.

    iii. The direct post-Effective Date production payments for SCRAB will begin once SCRAB is no longer in a prepaid position. The parties agree to amend the Division Order or other agreement with Plains if and as needed to provide for direct payments to SCRAB at the appropriate time.

    iv. The Debtors may bill the Specific Working Interest Owners for their share of JIBs and other expenses as provided for in the applicable Joint Operating Agreement(s), Participation Agreement(s), or other applicable agreements. As to BMP, the Debtor may net such expenses from the 20% monthly arrearage payment due BMP and will bill BMP for any remaining expenses. As to SCRAB, the payment/expense arrangements in place prior to the Effective Date shall remain in place until SCRAB is no longer in a "prepay" position. Once SCRAB becomes entitled to receive production payments, the Debtor will bill SCRAB for its share of JIBs and other expenses as provided in the applicable Joint Operating Agreement(s), Participation Agreement(s), or other applicable agreements.

f) All applicable Joint Operating Agreement(s), Participation Agreement(s), and all other related executory contracts and leases between one or more Debtors and one or more of the Specific Working Interest Holders shall be assumed pursuant to subsequent order of this Court, and each party preserves their rights with respect thereto and agrees that the cure amount shall be treated and paid pursuant to Section 4.6.14 of the Plan.

- 21 -

19. **ProPak Systems, Ltd.** The following provisions related to Propak Systems Ltd. ("Propak") are hereby approved with respect to the following equipment leases (the "Equipment Leases") and any amendments thereto, between Debtor Ryan Hoerauf, Inc. (the "Debtor") and Propak and the equipment described therein (collectively, the "Equipment"):

| Equipment Lease Description | Unit Serial Number | Equipment Description: |
|---|---|---|
| Equipment Lease, Dated February 26, 2010; Equipment Lease Amending Agreement, Dated October 20, 2010; Equipment Lease Amending Agreement (W10-8143), Dated November 1, 2015 | #10-8143 | All Equipment leased by Propak pursuant to relevant Equipment Lease, including, but not limited to, the following equipment more particularly described below:<br>• Compressor: Ariel JGR/4- 3 stage reciprocating gas compressor<br>• Motor: TECO Westinghouse 1200 rpm induction motor<br>• Cooler: Air-X 96AEF #107500 |
| Equipment Lease, Dated April 5, 2010; Equipment Lease Amending Agreement, Dated October 26, 2010; Equipment Lease Amending Agreement (W10-8489) | #10-8489 | All Equipment leased by Propak pursuant to relevant Equipment Lease, including, but not limited to, the following equipment more particularly described below:<br>• Compressor: Ariel JGR/4 single stage reciprocating gas compressor<br>• Engine: Caterpillar G3516 TALE (Serial No. WPW02862)<br>• Cooler: Air-X 132 EF-96-20 AEF#107526 |
| Equipment Lease, Dated June 3, 2010; Equipment Lease Amending Agreement, Dated October 26, 2010; Equipment Lease Amending Agreement (W10-8892), Dated November 1, 2015 | #10-8892 | All Equipment leased by Propak pursuant to relevant Equipment Lease, including, but not limited to, the following equipment more particularly described below:<br>• Compressor: Sullair PCC40LA single stage oil lubricated rotary screw gas compressor (Serial No. 201008300025)<br>• Engine: Caterpillar G3512 TALE (Serial No. WPPP00139)<br>• Cooler: Air-x 144 EF-102-22 AEF #107591 |
| Equipment Lease, Dated January 12, 2011; Equipment Lease Amending Agreement (W11-7715), Dated November 1, 2015 | #11-7715 | All Equipment leased by Propak pursuant to relevant Equipment Lease, including, but not limited to, the following equipment more particularly described below:<br>• Compressor: Ariel JGA/2- 2 stage reciprocating gas compressor (Serial No. F-20494)<br>• Motor: TECO Westinghouse 1800 rpm motor, 200hp, S/N 67794, Model #AEHH8N<br>• Cooler: Air-X Hemphill, model #60BEF (Serial No. 48529) |

| | | |
|---|---|---|
| Equipment Lease Dated, December 1, 2013 | #04-3605 | All Equipment leased by Propak pursuant to relevant Equipment Lease, including, but not limited to, the following equipment more particularly described below:<br>• <u>Compressor</u>: Ariel JGA/2- 2 stage reciprocating gas compressor (Serial No. F-27481)<br>• <u>Motor</u>: TECO Westinghouse 1800 rpm motor, 200hp, S/N NAYC1310923, model #AEHH8N;<br>• <u>Cooler</u>: Air-X Hemphill, model #60BEF (Serial No. 48540) |

a) **Assumption of the Propak Equipment Leases.** The Equipment Leases (and related Propak Settlement, as applicable), as modified by the provisions of this paragraph 19 of the Confirmation Order, will be deemed and treated as leases and are hereby assumed by the Debtor or Reorganized Debtor, as applicable, pursuant to section 365 of the Bankruptcy Code in accordance with the terms of this Confirmation Order with respect to Propak effective on the Effective Date.

b) **Agreed Propak Cure Amount and Repayment Schedule.** The agreed upon cure amount under section 365(b) for the Debtor to assume the Equipment Leases is $91,360.22 (the "Propak Cure Amount"), of which $41,360.22 constitutes unpaid tax obligations paid by Propak to Navarro County, Texas,[5] $25,000 constitutes unpaid rental payments under the Equipment Leases, as modified by that certain Settlement Agreement and Mutual Release by and between Propak and the Debtor dated as of September 2023 (the "Propak Settlement"), and $25,000 constitutes attorneys' fees. The Debtor shall make payments to Propak to satisfy the total Propak Cure Amount as set forth in the schedule below (each, a "Monthly Cure Payment").

---

[5]   Propak paid Navarro County, Texas a total of $41,360.22 for the Debtor's tax obligations for the following: (1) on Account No. 110276, CAD No. 99000100007351, for 2019, 2023, and 2024; (2) on Account No. 110277, CAD No. 99000200007351, for 2019, 2023, and 2024, and (3) on Account No. 110278, CAD No. 99000300007351, for 2023 and 2024.

| Monthly Cure Payment Number | Monthly Payment Due Date | Monthly Payment Amount |
|---|---|---|
| 1 | Saturday, November 25, 2025 | $12,500.00 |
| 2 | Monday, December 25, 2025 | $12,500.00 |
| 3 | Thursday, January 25, 2026 | $5,530.02 |
| 4 | Sunday, February 25, 2026 | $5,530.02 |
| 5 | Sunday, March 25, 2026 | $5,530.02 |
| 6 | Wednesday, April 25, 2026 | $5,530.02 |
| 7 | Friday, May 25, 2026 | $5,530.02 |
| 8 | Monday, June 25, 2026 | $5,530.02 |
| 9 | Wednesday, July 25, 2026 | $5,530.02 |
| 10 | Saturday, August 25, 2026 | $5,530.02 |
| 11 | Tuesday, September 25, 2026 | $5,530.02 |
| 12 | Thursday, October 25, 2026 | $5,530.02 |
| 13 | Sunday, November 25, 2026 | $5,530.02 |
| 14 | Tuesday, December 25, 2026 | $5,530.00 |
| **Total Monthly Cure Payments** | | **$91,360.22** |

c) **Security.** Notwithstanding anything to the contrary in the Plan or the Confirmation Order, Propak shall retain its liens and security interests in the Equipment securing the Propak Cure Amount, and any other Propak claims and interests. To the extent necessary, Propak may take appropriate action to renew or otherwise maintain its security interest and perfection thereof.

d) **Tax Obligations**. The Debtor, or Reorganized Debtor, as applicable, shall have the sole responsibility to pay directly to any relevant taxing authority, promptly when due, any license and other fees, assessments, duties, imposts, levies, and government charges, and all sales, use, property, franchise, excise, and other taxes or charges (including any interest and penalties), imposed, levied, or assessed by any governmental body or agency on any of the Equipment or its possession, leasing, operation, or use, whether such obligations relate to the period prior or after the Petition Date (collectively, the "Propak Equipment Tax Obligations"), including, but not limited to, any taxes due on the Equipment to Henderson County, Texas for 2012, 2015, 2018, and 2019, 2020, 2023, and 2024. In the event Propak is required to pay any of these Propak Equipment Tax Obligations on behalf of the Debtor or Reorganized Debtor, as applicable, the Debtor or Reorganized Debtor, as applicable, shall immediately upon demand reimburse Propak for such payment, including, for the avoidance of doubt, any attorneys' fees incurred in connection with the foregoing. In addition to the unpaid tax obligations paid by Propak to Navarro County, Texas as set forth in paragraph 19(b) and any 2025 tax obligations related to the Equipment, to the best of Propak's knowledge, Propak represents that the only Propak Equipment Tax Obligations which are presently due with regard to

- 24 -

the Equipment are such outstanding obligations to Henderson County, Texas for 2012, 2015, 2018, and 2019, 2020, 2023, and 2024.

e) **Defaults.** Notwithstanding anything to the contrary herein or in the Plan, if the Debtor or Reorganized Debtor, as applicable, fails to timely pay any Monthly Cure Payment or the Propak Equipment Tax Obligations, and fails to cure such arrearage within ten (10) Business Days, the Debtor, or Reorganized Debtor, as applicable, agrees to that it will promptly surrender to Propak the Equipment and any other equipment in which Propak has a security interest. Propak may additionally exercise any and all of its rights in accordance with the terms of the Equipment Leases, including but not limited to, the right to foreclose on the Equipment, without further approval of, or relief from, the Court.

f) **Transfer of Ownership.** Upon full repayment of the Propak Cure Amount, and suitable proof of payment of all Propak Equipment Tax Obligations, Propak and the Reorganized Debtor shall execute the necessary documents to transfer ownership of the Equipment to the Debtor or Reorganized Debtor, as applicable, and Propak shall release all liens and security interests on the Equipment. The Debtor, or Reorganized Debtor shall pay to Propak any sales, use or other taxes imposed by reason of the sale/transfer of ownership.  For the avoidance of doubt, upon the occurrence of all obligations set forth herein, the transfer of ownership by Propak to the Reorganized Debtor shall be on an "as is, where is" basis, without recourse or warranty, express or implied, other than Propak's special warranty of title as provided herein.

g) **Modification and Incorporation of the Equipment Leases.** Upon the Effective Date of assumption of the Equipment Leases pursuant to this Confirmation Order, the Equipment Leases, and Propak Settlement (to the extent necessary), are each hereby modified solely to incorporate the provisions of paragraph 19(a)-(h) of this Confirmation Order. All such terms, conditions, and provisions of paragraphs 19(a)-(h) of this Confirmation Order are hereby incorporated into each of the Equipment Leases (and Propak Settlement, as applicable) as if fully set forth therein and shall be deemed to be part of each of the Equipment Leases for all purposes, with the same force and effect as if expressly set forth in the Equipment Leases (or Propak Settlement, as applicable).

h) **Binding Effect.** On the Effective Date of the Plan, the modifications of each of the Equipment Leases as set forth in paragraph 19(a)-(h) of this Confirmation Order shall be binding upon the Debtor, the Reorganized Debtor, and any counterparty to the Equipment Leases, and their respective successors and assigns. The Equipment Leases (and Propak Settlement, as applicable), as modified by this Confirmation Order, shall vest in and be fully enforceable by the Reorganized Debtor and Propak in accordance with its terms.

20. **Additional Treatment for Class 6 Royalty Claims**.

a) <u>Class 6 Creditors with Non-Producing Royalty Interests</u>.  If any Class 6 Royalty Claim's royalty interest is, as of the Effective Date, a non-producing source of treatment and repayment, such Class 6 Claim shall be treated as a Class 7 Unsecured Claim and shall be treated and repaid pursuant to the terms of Section 4.7.6 of the Plan to the extent such Claim is Allowed.

b) <u>Operational Cessation</u>.  If the Oil and Gas Debtors (or one of them as may be applicable in any lease or leases) fail to produce hydrocarbons in paying quantities for 180 continuous days or more, any holder of an Allowed Class 6 Claim or the Plan Agent may declare that a default has occurred pursuant to Section 5.25 of the Plan and seek relief pursuant to the terms of the Plan and, as necessary, from the Court.

c) <u>Annual True-Up for Class 6</u>.  Within thirty (30) days of the conclusion of each calendar year after the Effective Date, beginning with calendar year 2026, there shall be a retrospective analysis and reconciliation between Class 6 and Class 7 such that Allowed Class 6 Claims shall be paid at least the same total amount as Allowed Class 7 Claims have been paid by such date, and a supplemental payment shall be made to Class 6 to the extent required to at least equalize recovery amounts as of such date, and the failure to do so shall be a Plan default pursuant to Section 5.25 of the Plan; *provided*, *however*, that the same shall not work in reverse for Class 7 and no additional payments shall be required for Class 7.

d) <u>Lien/Lease Rights after the Effective Date</u>.  Any royalty or mineral interest holder shall retain their royalty interests, lease interests, and other interests pursuant to all applicable leases, contracts, participation agreements, granting instruments, operating agreements and all other applicable documents, and all such interests shall be preserved and shall remain in effect after the Effective Date.  All post-confirmation oil and gas lien rights or statutory interests, if any, held by any royalty or mineral interest owner shall not be affected or discharged and shall be preserved post-confirmation by this Confirmation Order and shall be retained to the extent provided for under Chapter 67 of the Texas Property Code or applicable law notwithstanding anything to the contrary in the Plan and the Debtors and all other parties reserve all rights, arguments, objections, and claims related to same.  Any termination rights held by any royalty or mineral interest owner shall be preserved to the extent provided in applicable Oil and Gas Leases with regard to any event of default under applicable Oil and Gas Leases occurring after the Effective Date.

21.   **Roosth and Ad Hoc Royalty Owners**.  The following provisions related to the

Allowed Class 6 Claims of the Roosth Royalty Owners[6] and the Ad Hoc Royalty Interest Owners[7]

(collectively, with the Roosth Royalty Owners, the "Roosth/Ad Hoc Royalty Owners") are

approved as follows:

a)  Direct Payments for Future Production.

i.   The Debtors and the Roosth/Ad Hoc Royalty Owners agree, as soon as practicable after the Effective Date, to enter into a Division Order or other appropriate agreement with Plains Marketing, LP ("Plains") to provide for the direct payment by Plains to the Roosth/Ad Hoc Royalty Owners of their share of royalties attributable to production payments on all production after the Effective Date; *provided*, *however*, that if the Roosth/Ad Hoc Royalty Owners determine that such an agreement is too burdensome then they may elect to waive this obligation.

ii.   The direct payments by Plains shall only apply to post-Effective Date production payments and not to any prepetition royalties, claims, or obligations.   The additional 20% monthly production payable to the Roosth/Ad Hoc Royalty Owners will be paid by the Debtors as provided for in Section 4.6.6 of the Plan.

iii.   The Debtors may bill and charge the Roosth/Ad Hoc Royalty Owners regarding any necessary oil treatments and/or other expenses as provided for in any applicable Oil and Gas Lease or other applicable agreement between the parties. The Debtors may net such expenses from the 20% monthly arrearage payment due the Roosth/Ad Hoc Royalty Owners and will bill the Roosth/Ad Hoc Royalty Owners for any remaining expenses.

b)  Sale of Oil and Gas Assets.  Until the time of payment in full to the Allowed Class 6 Claims held by any of the Roosth/Ad Hoc Royalty Owners, any sale, transfer, or alienation of any Oil and Gas Leases which the Roosth or Ad Hoc Royalty Owners are party and/or operating rights and obligations by the Debtors to a non-Debtor third party, the Roosth/Ad Hoc Royalty Owners must provide consent, not to be unreasonably withheld, in writing as a condition to closing such transaction; *provided*, *however*, any such transaction which pays the affected Roosth/Ad Hoc Royalty Owners in full shall not require approval or consent of any kind.  For the avoidance of doubt, the Roosth/Ad Hoc Royalty Owners shall not have any approval or consent rights with regard to any transaction which does not involve

---

[6]   The "Roosth Royalty Owners" are Wiley Roosth Family Partnership Ltd., S2DST OGM, LTD., Steven C. Roosth, the Steven C. Roosth 1999 Trust, the Michael B. Roosth 1999 Trust, the Eileen Roosth Jalnos 1999 Trust, and the Robert S. Roosth 1999 Trust, and their successors, heirs, transferees, or assigns.

[7]   The "Ad Hoc Royalty Interest Owners" are Mary Gayle Ramsey, Robert K. Ramsey, and Marcia R. Pool.

Oil and Gas Leases, properties, or interests in which the Roosth/Ad Hoc Royalty
Owners are entitled royalty payments.

22.     **Taxing Authorities**.  The Debtors shall pay in full all Claims in Class 2 no later
than five years after the Petition Date pursuant to section 1129(a)(9)(C)–(D) of the Bankruptcy
Code.  In the event of a default under the Plan, the holder of a Secured Tax Claim shall send notice
of default to counsel for the Debtors/Reorganized Debtors via electronic mail, and the Debtors
shall have 30 days from the date of transmission of such notice to cure said default.  After the
Effective Date, in the event of failure to cure the default timely, the holder of a Secured Tax Claim
shall be entitled to pursue collection of all amounts owed pursuant to applicable nonbankruptcy
law from the Debtors/Reorganized Debtors without further recourse to the Court.  The failure to
pay post-petition taxes timely under applicable non-bankruptcy law shall be a default under the
Plan and the applicable tax authority may pursue all applicable post-petition remedies under non-
bankruptcy law without further order of the Court.

23.     **Personal Versus Estate Causes of Action under the Plan**.  Nothing in this
Confirmation Order determines whether any specific claim or cause of action is a direct-creditor
claim, personal to a specific creditor, versus an estate claim or cause of action under the Plan and
section 541(a)(1) of the Bankruptcy Code.  Such determination is expressly reserved for the Court
and shall be determined, if necessary, at a future date.  For the avoidance of doubt, except as
otherwise provided by the Plan and this Confirmation Order with respect to Prosperity Bank, after
determining the Allowed amount of any Claim, Section 8.2 of the Plan and any other Plan
provision, to the extent applicable, shall apply to enjoin any claim or cause of action to the extent
provided under the Plan.  All parties, including the Debtors, expressly reserve all rights, defenses,
counterclaims, and arguments with regard to determining the Allowed amount of respective claims
and whether any specific claim or cause of action is a direct-creditor claim, personal to a specific

- 28 -

creditor, versus an estate claim or cause of action under the Plan and section 541(a)(1) of the Bankruptcy Code.

24.     **Well Castle Limited and Arnold Oil Company Fuels, LLC. Well Castle Limited and Arnold Oil Company Fuels, LLC.** The following provisions relate to and incorporate the agreement as announced on the record at the Plan confirmation hearing to resolve the objections to the Plan of Well Castle Limited ("Well Castle") and Arnold Oil Company Fuels, LLC ("Arnold Oil") as they relate to Adversary Case No. 25-04073 (the "Removed Adversary Proceeding"); Well Castle Limited and Arnold Oil Company Fuels, LLC's consolidated case pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court"):

a) Well Castle and Arnold Oil may seek at any time derivative standing over Estate causes of action subject to the Court's approval;

b) Well Castle and Arnold Oil may seek relief from the injunction in Section 8.2 of the Plan, and any other Plan provision to the extent applicable, at any time subject to the Court's approval.  For the avoidance of doubt, the injunction in Section 8.2 does not in any way enjoin or prohibit Well Castle and Arnold Oil from continuing the litigation in the Removed Adversary Proceeding to establish any and all of their Allowed Class 7 Claims through Final Order, nor does the injunction in Section 8.2 and any other Plan provision to the extent applicable, enjoin actions taken by Well Castle and Arnold Oil with respect to any direct or personal claims or judgments of the Court as to non-debtor defendants;

c) The provisions of the Plan to the extent applicable, including, but not limited to, Section 5.8.1, and this Confirmation Order are without prejudice as to whether any specific claim or cause of action asserted by Well Castle and Arnold Oil in the Removed Adversary Proceeding are direct-creditor claims, personal to a specific creditor claims or causes of action, versus Estate claims or causes of action.  Such determination is expressly reserved for the Court and shall be determined, if necessary, at a future date.  For the avoidance of doubt, after determining the Allowed amount of any claim of Well Castle and Arnold Oil, Section 8.2 of the Plan and any other Plan provision to the extent applicable, shall only apply to enjoin any claim or cause of action of Well Castle and/or Arnold Oil to the extent it is determined by the Court in a Final Order to be an Estate claim or cause of action;

d) Well Castle, Arnold Oil, and Defendants in the Removed Adversary Proceedings reserve all rights, positions, claims, and defenses  in the Removed Adversary

Proceeding. Notwithstanding any provision therein to the contrary, neither the Plan, the Confirmation Order, nor Plan Supplement shall release any direct claim(s) of Well Castle or Arnold Oil against any party, including the Hoerauf Releasees as such term is used and defined in the Plan; and

e) To the extent relief is requested by Well Castle or Arnold Oil as to Section 24(a) or (b) of this Confirmation Order, such relief shall be requested in the Debtors' Lead Case and not the Removed Adversary Proceeding and all parties reserve the right to object to or contest any relief requested by Well Castle and Arnold Oil.

25. **Excluded Proceeding; Plan Agent Non-Participation**.

a) **Non-Participation and Lack of Authority of Plan Agent.** Notwithstanding any other provision of the Plan, the Confirmation Order, or any Plan Supplement:

   i. The Plan Agent (including anyone associated with Harney Partners) shall have no authority or responsibility for, and shall not be involved in any way with, Adversary Case No. 25-04073; Well Castle Limited and Arnold Oil Company Fuels, LLC consolidated case pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Excluded Proceeding"), including without limitation: directing, managing, supervising, controlling, influencing, consulting on, funding decisions for, communicating about merits or strategy regarding, or exercising any input, approval, or rights over counsel selection, litigation strategy, discovery, dispositive motions, trial, settlement, appeal, or enforcement.

   ii. The Plan Agent (including anyone associated with Harney Partners) shall not (i) receive, disclose, or review privileged, confidential, or work-product materials relating to the Excluded Proceeding; (ii) select, retain, supervise, or discharge counsel for the Excluded Proceeding; or (iii) negotiate, approve, or oppose any settlement of the Excluded Proceeding.

b) **Ethical Screen and Non-Disclosure.**

   i. The Plan Agent (including anyone associated with Harney Partners) and all professionals and staff engaged by or reporting to the Plan Agent shall be ethically screened from all personnel working on the Excluded Proceeding.

   ii. No privileged or work-product information relating to the Excluded Proceeding shall be shared with the Plan Agent (including anyone associated with Harney Partners) or his professionals. Any inadvertent disclosure shall be promptly reported and clawed back; the Plan Agent shall sequester and not use any such material.

c) **Cooperation; Turnover of Materials.** To the extent the Plan Agent (including anyone associated with Harney Partners) or estate professionals hold books, records, or data reasonably necessary for the Excluded Proceeding, they shall

- 30 -

reasonably cooperate and turn over copies upon request by Arnold Oil or Well Castle. Turnover shall not include privileged communications to or from the Plan Agent unrelated to the Excluded Proceeding's merits or strategy.

d) **Reservation of Rights; Court Jurisdiction.**   Nothing in this Section of the Confirmation Order waives or releases any claims, defenses, rights, or remedies of any party in the Excluded Proceeding. The Court shall retain exclusive jurisdiction to interpret and enforce this Section, including the ethical screen, and privilege provisions.

26.   **Texas Comptroller – Tax Liabilities**.  Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists.  Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist.  A failure by the Reorganized Debtors to make a payment to the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtors fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Reorganized Debtors at:  8180 Lakeview Center, Suite 300, Odessa, TX  79769, Attn:  Chief Executive Officer, and upon Debtors' attorney at Munsch Hardt Kopf & Harr PC, 500 N. Akard St., Suite 4000, Dallas, TX  75201, Attn: Garrick C. Smith, Esq.; gsmith@munsch.com with a copy provided to the Plan Agent, Eric Taube, via electronic mail at ericjaytaube@gmail.com and Prosperity Bank via electronic mail at plamberson@winstead.com and achiarello@winstead.com.  The Reorganized Debtors shall be allowed to cure up to two (2)

- 31 -

defaults.  Upon a third default, the Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

27.     **Provisions Regarding United States**.  Nothing in this Confirmation Order or the Plan discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor.  Nothing in the Plan, any Plan Supplement, or this Confirmation Order authorizes the transfer or assignment of any governmental (i) lease, (ii) license, (iii) permit, (iv) registration, (v) authorization, (vi) certification, or (vii) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise). Nothing in the Plan, any Plan Supplement or this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan, any Plan Supplement, or this Confirmation Order or to adjudicate any defense asserted thereunder.

28.     **Provisions Regarding the State of Texas.**  The Parties agree that the Texas Commission of Environmental Quality's (the "Commission") claims are nondischargeable under section 523(a)(7) of the Bankruptcy Code.  The Parties agree that the Commission's claims will ride through the Plan.  The Reorganized Debtor agrees to pay the Commission's claim in full through the Confirmed Plan.  The Commission reserves all rights and defenses to enforce its claims, including the right to collect payment on its claims.  In the event the Commission's claims

are not paid in full through the Confirmed Plan, or in the event of a default, the Commission may exercise its rights and remedies to collect the remaining balance due in state court or other tribunal.

29.      Nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Confirmation Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

30.      Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Confirmation Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Confirmation Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or to adjudicate any defense asserted under this Confirmation Order. For the avoidance of doubt, the State of Texas and its agencies,

including but not limited to the Texas Commission on Environmental Quality, opts out of any and all releases provided in the Plan.

31.      **Secured Tax Claim Default**.  In the event of a default under the Plan, the holder of a Secured Tax Claim shall send notice of default to counsel for the Debtors/Reorganized Debtors via electronic mail, with a copy provided to the Plan Agent, Eric Taube via electronic mail at ericjaytaube@gmail.com and Prosperity Bank via electronic mail at plamberson@winstead.com and achiarello@winstead.com and the Debtors shall have 30 days from the date of transmission of such notice to cure said default.  After the Effective Date, in the event of failure to cure the default timely, the holder of a Secured Tax Claim shall be entitled to pursue collection of all amounts owed pursuant to applicable nonbankruptcy law from the Debtors/Reorganized Debtors without further recourse to the Court.  The failure to pay post-petition taxes timely under applicable non-bankruptcy law shall be a default under the Plan and the applicable tax authority may pursue all applicable post-petition remedies under non-bankruptcy law without further order of the Court.

32.      **Foreclosure**.  At the conclusion of the Sale Metrics, if Llano Ranch Parcel 1 is not by then sold as provided for in the Plan, or if the Reorganized Debtors otherwise commit an uncured default in the treatment of Class 4 under the Plan, Prosperity Bank may exercise any and all of its rights against the Reorganized Debtors and the Llano Ranch, and any other collateral that Prosperity Bank holds under the Plan.  Prosperity Bank shall provide the notice of foreclosure sale to Halliburton, concurrent with the notice provided to any borrowers or collateral pledgors, in the event that Prosperity Bank seeks foreclosure of any collateral in Crockett County, Texas.  Nothing in this paragraph contradicts the respective rights of Halliburton and/or Prosperity Bank under Class 5 of the Plan.  The Debtors and the Plan Agent hereby waive for themselves and all affiliated successors: (i) any automatic stay in any future bankruptcy filing that may be imposed against the

Llano Ranch related to Prosperity Bank's exercise of rights and remedies allowed under this section; and (ii) the right to obtain a temporary restraining order or other injunctive relief related to Prosperity Bank's exercise of rights and remedies allowed under this section; this waiver may be enforced by the Court as part of its Confirmation Order.  Further, this waiver of any automatic stay pursuant to section 362 of the Bankruptcy Code or injunctive relief related to the Llano Ranch is *in rem* with respect to the Llano Ranch.

33.    **Conditional Sale of the Llano Ranch Parcel 2**.  Prosperity Bank and any *ad valorem* tax lien creditor shall retain all liens as against the Llano Ranch Parcel 2.  However, O'Ryan Ranches and the Reorganized Debtors shall be under no obligation to market for sale, and to sell, the Llano Ranch Parcel 2 until the expiration of the Sale Metrics; *provided*, *however*, that the Plan Agent shall hold a junior lien on the Llano Ranch Parcel 2 as set forth in the Plan and shall have the right to enforce that lien on the Llano Ranch Parcel 2 as provided for under the Plan; *provided, further* that the Reorganized Debtors shall otherwise timely pay *ad valorem* tax liens against the Llano Ranch arising after the Effective Date, meaning attaching on January 1, 2026.  The failure to timely do so shall be a default of the Debtors' obligations to Class 4 under the Plan.  Upon the expiration of the Sale Metrics, the Reorganized Debtors shall have one (1) year after said date to either sell Llano Ranch Parcel 2 for sufficient proceeds to pay the then-remaining Allowed Prosperity Bank Secured Claim in full, or shall pay the same from refinancing the Llano Ranch Parcel 2 or from any other of their property or cash that is not otherwise payable to a different Class under the Plan.  Any net proceeds after paying the then-remaining Allowed Prosperity Bank Secured Claim in full shall be paid pursuant to the terms of the Plan.  Upon the expiration of such year without such payment, Prosperity Bank may exercise any and all of its rights against the Llano Ranch Parcel 2, including to foreclose against the same as otherwise

provided for under Texas law and the Plan Agent shall release its liens on Parcel 2 if requested by

Prosperity Bank upon payment of any proceeds from the sale of Llano Ranch Parcel 2 after

payment of then-remaining Allowed Prosperity Bank Secured Claim in full.  For the avoidance of

doubt, however, upon an uncured default by the Reorganized Debtors of their obligations under

the Plan to Prosperity Bank, then Prosperity Bank may immediately foreclose on the whole of its

interests against the Llano Ranch. The Debtors and the Plan Agent hereby waive for themselves

and all affiliated successors: (i) any automatic stay in any future bankruptcy filing that may be

imposed against the Llano Ranch related to Prosperity Bank's exercise of rights and remedies

allowed under this section; and (ii) the right to obtain a temporary restraining order or other

injunctive relief related to Prosperity Bank's exercise of rights and remedies allowed under this

section; this waiver may be enforced by the Court as part of its Confirmation Order. Further, this

waiver of any automatic stay pursuant to section 362 of the Bankruptcy Code or injunctive relief

related to the Llano Ranch is *in rem* with respect to the Llano Ranch.

34.     **Liens Granted to Allowed Class 6 and 7 Claims**. All liens granted to Allowed

Class 6 and 7 Claims shall be held and exercised by the Plan Agent and such liens are automatically

perfected and valid, and this Confirmation Order may be filed in all relevant real property records

and otherwise used as notice of perfection including, but not limited to, with respect to the Extex

Annual Payment.  The Plan Agent can (i) enforce such liens pursuant to the Plan and (ii)

supplement, amend, modify, or correct any deed of trust or other document for such liens with

regard to the proper filing and recording of such documents for enforcement and notice purposes

pursuant to the Plan.

35.     **Plan Agent Responsibilities**. The purpose, role, and authority of the Plan Agent

shall be to market and sell the Oregon Ranch, to market and sell the Llano Ranch Parcel 1, to hold,

prosecute, and monetize the claims and causes of action the subject of Section 5.8 of the Plan, to hold and foreclose on the lien(s) granted under Section 5.10 of the Plan, to monitor the payments and performance of the Reorganized Debtors, to, at the Plan Agent's discretion (but not obligation), object to and resolve Claims, and to otherwise take such actions as provided for in the Plan; *provided*, *however*, that the Reorganized Debtors have the primary responsibility to object to and resolve Claims. To the extent the Plan Agent intends to object to or resolve any Claim, he must provide reasonable notice to the Reorganized Debtors (and vice versa) in an effort to avoid duplication of effort and expense on the part of the objector and Claim holder.  The Plan Agent shall have fiduciary duties to act as the Plan provides, but shall otherwise not be a fiduciary to any given Creditor or to the Reorganized Debtors.  Notwithstanding any corporate organization or governance documents to the contrary, the Plan Agent has full power and authority and is authorized and directed to perform all of his obligations in connection with the Plan in accordance with the terms thereof and the Confirmation Order and to execute all such documents and take such other actions necessary or required to effectuate the sale of the Oregon Ranch and the Llano Ranch Parcel 1.  The Plan Agent shall provide (a) a final claims register of all Allowed Class 6 and 7 Claims no later than 30 days following the expiration of the Claims Objection Deadline and again following the resolution of any outstanding objections to Claims and (b) periodic reporting not less than yearly (and on reasonable, written request) to Allowed Class 6 and 7 Claims regarding the status of implementation of the Plan, including, but not limited to, with respect to the collateral against which the Plan grants Allowed Class 6 and 7 Claims junior liens and any events of default per Section 5.25 of the Plan.

      36.   **Discharge**. Except solely for any such debt or claim excepted from discharge by the Plan or Confirmation Order, on the Effective Date, and automatically, without need for further

document, order, or action, each Debtor is discharged of all Claims arising prior to the Effective

Date pursuant to the provisions of section 1141(d) of the Bankruptcy Code.

37.    **Plan Injunction**.  Unless specifically and expressly permitted in the Plan, effective

immediately on the Effective Date, and without need for further order, document, action, or

instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons

from taking any of the following actions on account of any Claim: (i) commencing, conducting or

continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind

against the Debtors or the Estates or any of their property, or against the Reorganized Debtors and

the Consolidated Estate or any of their property, on account of a Claim or debt that is discharged

under the Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner

or by any means, whether directly or indirectly, any judgment, award, decree, or order against the

Debtors or the Estates or their property, or against the Reorganized Debtors and the Consolidated

Estate or any of their property, on account of a Claim or debt that is discharged under the Plan;

(iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or

encumbrance of any kind against the Debtors or the Estates or their property, or against the

Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim,

interest, lien, or debt that is discharged under the Plan; and (iv) proceeding in any manner in any

place whatsoever against the Debtors or their property, or against the Reorganized Debtors or any

of their property, with respect to any property to be distributed or transferred under the Plan or

Claim that is subject to the Plan, including funds or reserves held or maintained by any of them

pursuant to the Plan, in any way that does not conform to, or comply, or is inconsistent with, the

provisions of the Plan; *provided*, *however*, that such injunction shall not preclude any party in

interest from seeking to enforce or interpret the terms of the Plan through an action commenced in

the Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date; *provided further*, *however*, nothing in the Plan or this Confirmation Order affects or enjoins direct claims against any non-Debtors, if any.

38. **Payment of Statutory Fees**.  On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in Cash equal to the amount of such Administrative Claims or as otherwise provided in the Plan.  After the Effective Date, the Reorganized Debtors shall each file individual quarterly reports, in a form reasonably acceptable to the U.S. Trustee, and pay all quarterly fees when they become due until the Bankruptcy Case is closed.

39. **Filing and Recording**.  This Confirmation Order is binding upon and shall govern the acts of all persons or entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

40. **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Chapter

11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

41.     **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

42.     **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article IX of the Plan, of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

43.     **Conditions Precedent to the Effective Date**.  The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived.

44.     **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

45.     **Post-Confirmation Modifications**.  Subject to the terms of the Plan and without need for further order or authorization of the Court, the Debtors are authorized and empowered to make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and that are consistent with the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy

Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors reserve their respective rights prior to the Effective Date to withdraw, alter, amend, or modify materially the Plan with respect to such Debtor and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article IX, § 9.4 of the Plan.

46.     **Reversal/Stay/Modification/Vacatur of Confirmation Order**.     Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

47.     **Applicable Non-Bankruptcy Law**.  The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

48.     **Governmental Approvals Not Required**.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

49.     **Waiver of Filings**.    Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the United States Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

50.     **Notice of Entry of Confirmation Order and Effective Date**.    In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall serve notice of the entry of this Confirmation Order, notice of the Effective Date, and notice of any deadlines related thereto, to all parties who hold a Claim or Equity Interest in these Chapter 11 Cases, the U.S. Trustee, and other parties in interest. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

51.     **Substantial Consummation**.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

52.     **References to Particular Plan Provisions**.    References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.

53. **Headings**.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

54. **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order except the Cash Collateral Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

55. **Final Order**.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

56. **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Court may properly, and, upon the Effective Date, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

### END OF ORDER ###

# EXHIBIT A

## PLAN

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCANROCK OIL & GAS, INC., *et al.*, | § | Case No. 25-90001-mxm-11 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

---

### DEBTORS' AMENDED JOINT CONSOLIDATED PLAN OF REORGANIZATION

---

Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Garrick C. Smith, Esq.
Texas Bar No. 24088435
Jonathan S. Petree, Esq.
Texas Bar No. 24116897
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500

**ATTORNEYS FOR THE
OIL AND GAS DEBTORS
AND THE OREGON DEBTORS**

Hudson M. Jobe, Esq.
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com

**ATTORNEYS FOR
O'RYAN RANCHES, LTD.**

DATED: July 18, 2025.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Scanrock Oil & Gas, Inc. (0380); EON Production, LLC (0136); O'Ryan Family Limited Partnership (1913); O'Ryan Production & Exploration Ltd. (9950); O'Ryan Ponderosa, LLC (1476); Ryan C. Hoerauf, Inc. (0493); and Smackover Oil Treaters, Ltd. (9529); O'Ryan Ranches, Ltd. (7184); O'Ryan Ranches, LLC (6467); and O'Ryan Oregon Ranches, LLC. The location of the Debtors' service address is 8180 Lakeview Center, Ste. 300, Odessa, TX 79765.  More information about the Debtors, and copies of pleadings in the above-captioned bankruptcy case, may be obtained on the website of the Debtors' proposed noticing agent, Stretto, Inc., at: https://cases.stretto.com/scanrock.

# TABLE OF CONTENTS

I. DEFINITIONS AND INTERPRETATION..............................................................................1

    1.1. Rules of Interpretation .................................................................................1
    1.2. Definitions......................................................................................................1

II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.........................................12

    2.1. Classification Generally..............................................................................12
    2.2. Unclassified Claims ....................................................................................12
    2.3. Classified Claims and Interests .................................................................12

III. PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS........................12

    3.1. Administrative Claim Applications and Deadline ....................................12
    3.2. Treatment of Allowed Administrative Claims ..........................................13
    3.3. Treatment of Professional Claims.............................................................13
    3.4. Administrative Tax Claims..........................................................................14
    3.5. Section 505 ....................................................................................................14

IV. PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS .............................14

    4.1. Class 1:      Priority Claims .................................................................14
    4.2. Class 2:      Secured Tax Claims..........................................................15
    4.3. Class 3:      AgWest Secured Claim ....................................................15
    4.4. Class 4:      Prosperity Bank Secured Claims....................................16
    4.5. Class 5:      Halliburton Secured Claim .............................................18
    4.6.a. Class 6(a):  Royalty Claims .................................................................19
    4.6.b. Class 6(b):  Working Interest Claims .................................................20
    4.7. Class 7:      Unsecured Claims............................................................22
    4.8. Class 8:      Convenience Claims.........................................................23
    4.9.a. Class 9(a):  AmeriCredit Financial Services Secured Claim..............24
    4.9.b. Class 9(b):  Ford Motor Credit Secured Claim..................................24
    4.10. Class 10:    SBA Secured Claim..........................................................25
    4.11. Class 11:    Equity Interests................................................................26

V. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................26

    5.1. Substantive Consolidation .........................................................................26
    5.2. Plan Funding ................................................................................................27
    5.3. Sale of the Oregon Ranch ...........................................................................27
    5.4 Sale of the Llano Ranch Parcel 1 ...............................................................29
    5.5. Conditional Sale of Llano Ranch Parcel 2.................................................30
    5.6. Modification of Prosperity Bank Liens......................................................31
    5.7. Oregon Ranch Proceeds Carveout .............................................................32
    5.8. Hoerauf Causes of Action and Releases ....................................................32
    5.9. Maintenance of the Oregon Ranch .............................................................33
    5.10. Junior Lien for Allowed Class 6 and Class 7 Claims ..............................33

5.11. Assumption of Executory Contracts .................................................................34
5.12. Vesting of Assets ......................................................................................34
5.13. Assumption of Debt ...................................................................................34
5.14. Automatic Stay..........................................................................................34
5.15. Rights Under Section 505 ...........................................................................35
5.16. Management of the Reorganized Debtors.........................................................35
5.17. Prohibition of Dividends.............................................................................35
5.18. Corporate Existence ..................................................................................35
5.19. Incorporation of Exhibits ...........................................................................35
5.20. Prepayment .............................................................................................36
5.21. Retention of Preservation of Causes of Action.................................................36
5.22. Prohibition on Creditor Action ....................................................................36
5.23. Plan Agent ..............................................................................................36
5.24. Postconfirmation Reporting .........................................................................38
5.25. Default and Cure ......................................................................................38
5.26. Creditor Escrow .......................................................................................39
5.27. Dissolution of Committee ...........................................................................39

VI.  ACCEPTANCE OR REJECTION OF PLAN...................................................................39

6.1. Impairment Controversies............................................................................39
6.2. Classes and Claims Entitled to Vote ..............................................................39

VII. TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS ..................39

7.1. Objection Deadline ...................................................................................39
7.2. Creditor Response to Objection ....................................................................40
7.3. No Waiver of Right to Object .......................................................................40
7.4. Miscellaneous Provisions for Disputed Claims .................................................40
7.5. Allowance of Disputed Claims .....................................................................40
7.6. Amendments to Claims; Claims Filed After the Confirmation Date .......................41
7.7. Disputed Claims Reserves ...........................................................................41

VIII. EFFECTS OF PLAN CONFIRMATION...................................................................42

8.1. Discharge ..............................................................................................42
8.2. Plan Injunction ........................................................................................42
8.3. No Liability for Solicitation or Participation ...................................................42
8.4. Exculpation ............................................................................................43

IX.  CONDITIONS PRECEDENT.................................................................................43

9.1. Conditions Precedent to Confirmation and Effectiveness of Plan...........................43
9.2. Non-Occurrence of the Effective Date ............................................................43
9.3. Notice of the Effective Date ........................................................................43
9.4. Modification of this Plan.............................................................................44
9.5. Revocation or Withdrawal of this Plan............................................................44
9.6. Inadmissible Settlement Offer ......................................................................44

X.   RETENTION OF JURISDICTION AND CLAIMS ...............................................................44

    10.1.  Jurisdiction of Bankruptcy Court.........................................................................44
    10.2.  Failure of Bankruptcy Court to Exercise Jurisdiction............................................46
    10.3.  No Creation of Jurisdiction ...................................................................................46
    10.4.  Retention and Preservation of General Rights.......................................................46
    10.5.  Retention and Preservation of Specific Rights ......................................................46

XI.   MISCELLANEOUS PROVISIONS ...................................................................................47

    11.1.  Payment of Statutory Fees ....................................................................................47
    11.2.  Exercise of Liens..................................................................................................47
    11.3.  No Admissions ......................................................................................................47
    11.4.  Plan Controls........................................................................................................47
    11.5.  Governing Law .....................................................................................................47
    11.6.  Substantial Consummation of Plan .......................................................................47
    11.7.  Successors and Assigns.........................................................................................48
    11.8.  Severability ..........................................................................................................48
    11.9.  Notices and Distributions......................................................................................48
    11.10.  Interest..................................................................................................................48
    11.11.  Unclaimed Property ..............................................................................................48
    11.12.  Binding Effect.......................................................................................................48
    11.13.  Withholding and Reporting....................................................................................49
    11.14.  Credit for Non-Debtor Payments...........................................................................49

XII.   CONFIRMATION REQUEST ..........................................................................................49

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCANROCK OIL & GAS, INC., *et al.*, | § | Case No. 25-90001-mxm-11 |
| | § | |
| Debtors. | § | Jointly Administered |

## DEBTORS' AMENDED JOINT CONSOLIDATED PLAN OF REORGANIZATION

The Debtors (defined below), being the debtors-in-possession in the above styled and numbered jointly administered Bankruptcy Case (defined below), hereby propose the following *Amended Joint Consolidated Plan of Reorganization* pursuant to section 1121 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1    Rules of Interpretation.

(i)    Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time.  Words denoting the singular number shall include the plural number and *vice versa*.  In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

(ii)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii)    Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor (although the Plan is otherwise already binding on all parties-in-interest and creditors).

1.2    Definitions.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

"**Administrative Claim**" means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim and a claim arising under the Cash Collateral

Order. For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

"**Administrative Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

"**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Debtors or the Estates or their property for or on account of a period after the Petition Date, specifically excluding Secured Tax Claims.

"**AgWest**" means AgWest Farm Credit, FLCA.

"**AgWest Loan Documents**" means all promissory notes, deeds of trust, fixture filings, grants of security interests, and other agreements between the Oregon Debtors and AgWest, including that certain Deed of Trust Financing Statement and Fixture Filing dated February 8, 2023 and recorded as Instrument No. 2023-321165 in the records of Crook County, Oregon, and the promissory notes dated February 8, 2023 and March 22, 2019 from the Oregon Debtors.

"**AgWest Secured Claim**" means all Claims, rights, and interests of AgWest against the Oregon Ranch and the Oregon Debtors as of the Petition Date under the AgWest Loan Documents and all applicable law, including all principal, interest, default interest, and other fees and charges permitted under the applicable AgWest Loan Documents and applicable law.

"**Allowed**" as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

(i)     which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which:
    a. no Proof of Claim has been timely filed; and
    b. no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

(ii)    as to which a Proof of Claim has been timely filed and either:
    a. no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or
    b. such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)   which has been expressly allowed under the provisions of this Plan; or

(iv)    which has been expressly allowed by Final Order of the Bankruptcy Court, including the Cash Collateral Order.

"**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (ii) an Administrative Claim which: (a) is incurred

by the Debtors after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtors; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Secured Claim**" means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**AmeriCredit Financial Services**" means AmeriCredit Financial Services, Inc. d/b/a GM Financial.

"**AmeriCredit Financial Services Secured Claim**" means all claims, rights, and interests of AmeriCredit Financial Services against the Debtors and Estates, and all property of the Debtors and Estates, including as against that certain 2023 Chevrolet Silverado 3500HD and that certain 2023 Chevrolet Silverado 1500.

"**Avoidance Actions**" means any and all rights, claims or actions which the Debtors may assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

"**Bankruptcy Case**" means jointly administered Bankruptcy Case No. 25-90001-mxm-11 in the Bankruptcy Court.

"**Bankruptcy Code**" means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time-to-time hereafter be amended.

"**Bar Date**" means, with respect to each Debtor, the date established by an order of the Bankruptcy Court or by a provision of the Bankruptcy Code or Bankruptcy Rules by which any given creditor must file a Proof of Claim against that Debtor's Estate.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Cash Collateral Budget**" means any budget under the Cash Collateral Order (and/or any interim cash collateral orders preceding the Cash Collateral Order) approved by the Bankruptcy Court at Docket Nos. 57, 101, 201, 300, 330, 363.

"**Cash Collateral Carveout Claim**" means, to the extent specifically authorized by and stated in the Cash Collateral Budget and included in the Carve Out (as defined by the Cash Collateral Order), a Claim for (a) all unpaid fees and expenses actually incurred by persons or firms (excluding Stretto, Inc.) retained by the Debtors on or after the Petition Date pursuant to sections 327, 328, or 363 (solely with respect to a chief restructuring officer) of the Bankruptcy Code (the "**Debtor Professionals**"); (b) all unpaid fees and expenses actually incurred by persons or firms retained by the Committee on or after the Petition Date pursuant to sections 327, 328, or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and collectively with the Debtor Professionals, the "**Estate Professionals**"), but only to the extent such fees and expenses (i) have been incurred and remain unpaid, (ii) have been previously or subsequently approved by the Bankruptcy Court by Final Order, and (iii) exceed any retainer held by any such Estate Professional. For the avoidance of doubt, any amount of an Allowed Professional Claim held by an Estate Professional which exceeds its respective line-item in the Cash Collateral Budget and Carve Out (as defined in the Cash Collateral Order) shall not be an Allowed Cash Collateral Carveout Claim.

"**Cash Collateral Order**" means the *Final Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Modifying the Automatic Stay; (iv) Scheduling a Final Hearing; and (v) Granting Related Relief*, entered at Docket No. 363.

"**Claim**" means a claim against one or more of the Debtors, the Estates, and/or property of the Debtors or the Estates, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said section 101(5) of the Bankruptcy Code, whether a timely or untimely Proof of Claim is filed or not.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be 120 days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

"**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

"**Class 6**" means, collectively, the Claims in Class 6(a) and Class 6(b).

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case by the United States Trustee.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Consolidated Estate**" has the meaning assigned to it in Section 5.1.1 of this Plan.

"**Convenience Class Claim**" has the meaning assigned to it in Section 4.8.1 of this Plan.

"**Creditor**" means the holder of any Claim, whether the Creditor has filed a Proof of Claim or not and whether the Creditor has appeared in the Bankruptcy Case or not.

"**Creditor Escrow**" has the meaning assigned to it in Section 5.26 of this Plan.

"**Cure Claim**" means a Claim required to be paid under section 365 of the Bankruptcy Code in order to assume any Executory Contract, including, as may be applicable, any nonmonetary portion thereof.

"**Debtor**" means any of the Debtors.

"**Debtors**" means, collectively, Scanrock Oil & Gas, Inc.; EON Production, LLC; O'Ryan Family Limited Partnership; O'Ryan Production & Exploration Ltd.; O'Ryan Ponderosa, LLC; Ryan C. Hoerauf, Inc.; and Smackover Oil Treaters, Ltd.; and O'Ryan Ranches, Ltd.; O'Ryan Ranches, LLC; and O'Ryan Oregon Ranches, LLC.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i)     has been disallowed by a Final Order of the Bankruptcy Court;

(ii)    is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a Proof of Claim was not filed by the Bar Date; or

(iii)   is not identified in the Schedules and as to which no Proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such Proof of Claim is otherwise required.

"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

"**Disputed Claim**" means, with respect to any Claim, that such Claim (a) is not yet Allowed, (b) is not a Disallowed Claim by the Plan, the Bankruptcy Code, or a Final Order, as applicable, (c) as to which a dispute is being adjudicated by the Bankruptcy Court,

including a dispute about the priority or the extent of the secured amount of such Claim under section 506(a) of the Bankruptcy Code or otherwise, or another court of competent jurisdiction in accordance with non-bankruptcy law, or (d) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely filed in accordance with the Bar Date or the Plan.

"**Disputed Claims Reserve**" has the meaning ascribed to such term in Section 7.7 of this Plan.

"**Effective Date**" means the first Business Day after which the conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived by agreement of the Debtors, the Committee, and Prosperity Bank.

"**Equity Interests**" means any ownership of any equity in the Debtors, including, as may be applicable, any membership unit, partnership interest, share, stock, or stock certificate.

"**Estate**" means the estate created for each Debtor pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Estates**" means, collectively, each Estate.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtors as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code, expressly excluding Oil and Gas Leases.

"**Extex**" means Extex Production, Inc.

"**Extex Annual Payment**" means the yearly installment payment to be paid by Extex to O'Ryan Family Limited Partnership on March 1st of each year through March 1, 2028 pursuant to that certain *Promissory Note* dated June 27, 2024 by and between Extex and O'Ryan Family Limited Partnership; *provided*, *however*, that any amount of payment in excess of $200,000.00 on an annual basis shall not be included herein.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i)     the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or

(ii)    any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"**Ford Motor Credit**" means Ford Motor Credit Company, LLC.

"**Ford Motor Credit Secured Claim**" means all claims, rights, and interests of Ford Motor Credit against the Debtors and Estates, and all property of the Debtors and Estates, including as against that certain 2024 Ford F-250.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**Halliburton**" means Halliburton Energy Services, Inc.

"**Halliburton Secured Claim**" means all claims, rights, and interests of Halliburton against the property of the Oil and Gas Debtors, to the extent of value of such property under section 506(a) of the Bankruptcy Code and without giving effect to any marshalling doctrine as against any other secured claims and liens against the same. For the avoidance of doubt, Halliburton Secured Claim does not include any deficiency or unsecured claim of Halliburton against the Oil and Gas Debtors.

"**Hoerauf**" means Ryan C. Hoerauf.

"**Hoerauf Releasees**" means each of Hoerauf, Mathew Hoerauf, Condor Ranches, LLC, Amber Hoerauf Trust, Amber Hoerauf Children's Trust, Mathew Hoerauf Trust, MRH Trust, Ryan C. Hoerauf 2008 Delaware Trust, Ryan C. Hoerauf Grantor Retained Annuity Trust, and further includes the spouse, child, stepchild, trustee, employee, member, manager, representative, agent, or attorney of any of the foregoing (but excluding any Debtor).

"**Llano Ranch**" means all real property, improvements, timber, minerals, fixtures, and other property described in the Llano DOT (as defined by the Cash Collateral Order) owned by O'Ryan Ranches, consisting of approximately 1,739.514 contiguous acres of real property located in the southwest portion of Llano County, Texas.

"**Llano Ranch Parcel 1**" means a portion of the Llano Ranch, identified as 817 +/- acres out of - W RABB ABST #624 3.012 AC, H W Karnes ABST #444 655.324 AC, M MOSS ABST #501, 381.927 AC, H W Karnes ABST #444 0.500 AC, J B Mattingly ABST #497 233.501 AC, M MOSS ABST #501 340.136 AC, J B Mattingly ABST #497 125.114 AC, as more specifically identified on Exhibit E to the Disclosure Statement.

"**Llano Ranch Parcel 2**" means all of the Llano Ranch other than the Llano Ranch Parcel 1.

"**Oil and Gas Debtors**" means Scanrock Oil & Gas, Inc., EON Production, LLC, O'Ryan Production & Exploration Ltd., O'Ryan Family Limited Partnership, O'Ryan Ponderosa, LLC, Ryan C. Hoerauf, Inc., and Smackover Oil Treaters, Ltd.

"**Oil and Gas Leases**" means any and all unexpired leases or instruments in which any of the Debtors or Reorganized Debtors, as the case may be, hold an existing leasehold, working interest, royalty interest, or similar interest in oil and gas and/or other liquid or gaseous hydrocarbons, including methane, and all other minerals including, but not limited to, brine, minerals, non-hydrocarbons, and all substances that may be later extracted from

any such brine, including, but not limited to, bromine, lithium chloride, magnesium or zinc, as of the Effective Date.

"**Oregon Debtors**" means, together, O'Ryan Ranches, LLC and O'Ryan Oregon Ranches, LLC.

"**Oregon Ranch**" means all real property, improvements, timber, minerals, fixtures, and other property described in the Oregon DOT (as defined by the Cash Collateral Order) owned by either or both of the Oregon Debtors in the State of Oregon, and otherwise known as the "Ochoco Ranch," consisting of approximately 44,328 acres of timber land located in Crook County, Oregon. For purposes of this Plan only, the Oregon Ranch Carbon Credits shall not be considered part of the Oregon Ranch but shall instead be a separable class of property.

"**Oregon Ranch Carbon Credits**" means any past, present, or future rights to payment, including as the same may be presently under negotiation, that either or both of the Oregon Debtors may claim or obtain from any source, related to carbon credits from their ownership and/or operation of the Oregon Ranch.

"**Oregon Ranch Proceeds Carveout**" has the meaning assigned to it in Section 5.7 of this Plan.

"**O'Ryan Ranches**" means O'Ryan Ranches, Ltd., one of the Debtors.

"**PB Materials Stock**" means any stock, shares, or equity interests of any of the Debtors in PB Materials Holdings, Inc., owned prior to or as of the Petition Date.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**Petition Date**" means, with respect to each Debtor, the date on which it filed its Chapter 11 petition for relief as jointly administered in the Bankruptcy Case.

"**Plan**" means this *Debtors' Amended Joint Consolidated Plan of Reorganization*, either in its present form or as it may be altered, amended or modified from time to time.

"**Plan Agent**" is the independent person to be named in the Plan Supplement.

"**Plan Rate**" means the federal postjudgment interest rate in effect on the Effective Date.

"**Plan Supplement**" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be filed by the Debtors no later than fourteen (14) days before the commencement of the Confirmation Hearing, including the following, (a) the Sale Metrics (under seal), (b) the Llano Ranch deeds of trust and any related documents, and (c) the identity and compensation of the Plan Agent.

**"Priority Claim"** means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

**"Professional"** means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**"Professional Claim"** means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

**"Professional Fees Escrow"** means the "Fee Escrow" as defined in the Cash Collateral Order.

**"Proof of Claim"** means a proof of Claim filed against any of the Debtors in the Bankruptcy Case.

**"Prosperity Bank"** means Prosperity Bank, including as successor-in-interest to Lone Star State Bank of West Texas and Amarillo National Bank.

**"Prosperity Bank Loan Documents"** means the documents and instruments identified on Exhibit B to the Cash Collateral Order in the Bankruptcy Case and the "Prepetition Loan Documents" as defined by the Cash Collateral Order, but only insofar as any of the foregoing apply to a Debtor or an Estate, and its property. For the avoidance of doubt, the rights of Prosperity Bank as against any non-debtor and its property are not modified by this Plan, subject only to the temporary injunction against collection provided in Section 4.4.10 of this Plan.

**"Prosperity Bank Releasees"** means each of Prosperity Bank, Lone Star State Bank of West Texas, and Amarillo National Bank, and further includes the employees, directors, members, managers, representatives, agents, or attorneys of any of the foregoing (but expressly excluding Hoerauf) and the "Released Parties" as defined by the Cash Collateral Order.

**"Prosperity Bank Secured Claim"** means all Claims, rights, and interests of Prosperity Bank against the Debtors and their property, including against the Oregon Ranch, the Llano Ranch, and the property of the Oil and Gas Debtors, as further described by the Cash Collateral Order, and including all rights under the Prosperity Bank Loan Documents and all applicable law, including all principal, interest, default interest, and other fees and charges permitted under the applicable Prosperity Bank Loan Documents and applicable law.

**"Rejection Damages Claim"** means the Claim in favor of a counterparty to an Executory Contract that is rejected by the Debtors, but that is not an Administrative Claim.

**"Rejection Damages Claim Bar Date"** means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

**"Reorganized Debtor"** means a Debtor on and after the Effective Date.

**"Reorganized Debtors"** means the Debtors on and after the Effective Date.

**"Royalty Claim"** means any Claim for unpaid oil and gas royalties from any of the Debtors as of the Petition Date, but expressly excludes any suspense royalties and resulting suspense funds.

**"Sale Metrics"** means, with respect to the sale of the Oregon Ranch and the Llano Ranch Parcel 1, the dates, listing prices, and release prices filed under seal in the Plan Supplement on which the Plan Agent and Reorganized Debtors must accept and close any bid for such properties falling within said dates and prices. Prosperity Bank and the Plan Agent may extend or otherwise modify the Sale Metrics by written agreement that is filed under seal with the Bankruptcy Court.

**"SBA"** means the U.S. Small Business Administration.

**"SBA Loan Documents"** means the *Note*, SBA Loan #9110, dated March 26, 2022; the *Security Agreement*, SBA Loan #9110, dated March 26, 2022; and the UCC Financing Statement dated April 11, 2022.

**"SBA Secured Claim"** means all Claims, rights, and interests of the SBA against Ryan C. Hoerauf, Inc. and its property, and including all rights under the SBA Loan Documents, and all applicable law, including all principal, non-default interest, and other fees and charges permitted under the applicable SBA Loan Documents and applicable law.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

**"Secured Claim"** means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtors or the Estates; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

**"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Debtors or the Estates arising prior to the Petition Date even if first payable after the Petition Date.

**"Substantial Consummation"** means the date on which any of the following first happens: (i) the Effective Date or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

**"Tract V"** means that certain portion of the Oregon Ranch Located in Crook County, Oregon, In Township 15 South, Range 19 East of the Willamette Meriden, Section 15: All, Section 21: E1/2, Section 23: All and Section 27: All.

"**<u>Unsecured Claim</u>**" means any alleged Claim against the Debtors that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtors or the Estates, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

"**<u>Working Interest Claim</u>**" means any Claim for any unpaid share of oil and gas revenues on account of any working interest ownership from any of the Debtors as of the Petition Date, but expressly excludes any suspense royalties or revenues and resulting suspense funds.

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

2.1     Classification Generally.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2     Unclassified Claims.  The following types of Claims are not classified under the Plan:

Administrative Claims

Administrative Tax Claims

2.3     Classified Claims and Interests.  Claims and Equity Interests are classified under this Plan as follows:

| | |
|---|---|
| Class 1: | Priority Claims |
| Class 2: | Secured Tax Claims |
| Class 3: | AgWest Secured Claim |
| Class 4: | Prosperity Bank Secured Claims |
| Class 5: | Halliburton Secured Claim |
| Class 6(a): | Royalty Claims |
| Class 6(b): | Working Interest Claims |
| Class 7: | General Unsecured Claims |
| Class 8: | Convenience Claims |
| Class 9(a): | AmeriCredit Financial Services Secured Claim |
| Class 9(b): | Ford Motor Credit Secured Claim |
| Class 10: | SBA Secured Claim |
| Class 11: | Equity Interests |

**ARTICLE III.**
**PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS**

3.1     Administrative Claim Applications and Deadline.  Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' businesses which may be paid in the ordinary course of the Debtors' businesses without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estates under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtors, the United States Trustee, the Committee, and all other parties otherwise entitled to notice thereof.  Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever

barred and discharged as against the Debtors and the Estates, and the Reorganized Debtors and the Consolidated Estate, and the property of any of the foregoing including property transferred pursuant to the Plan.  Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2    Treatment of Allowed Administrative Claims.    Except with respect to Administrative Tax Claims (see Section 3.4 below) and Professional Claims (see Section 3.3 below), and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall be paid in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by the Reorganized Debtors and the Consolidated Estate, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than ten (10) Business Days after the Effective Date from cash on hand.

3.3    Treatment of Professional Claims.

3.3.1    Allowance and Payment of Professional Claims.    Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1), and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim shall be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis, prior to the payment of any amount remaining owing and unpaid; and (vi) any portion of the Professional Fees Escrow attributable to the Professional Claim shall be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis, prior to the payment of any amount remaining owing and unpaid.  For the avoidance of doubt, nothing in this Plan changes or alters any Professional's rights with respect to any retainer or any portion of the Professional Fees Escrow or combines or merges any of the foregoing so that one Professional may be paid from a retainer or portion of the Professional Fees Escrow attributable to any other Professional.  Any portion of the Professional Fees Escrow remaining after application to all applicable Allowed Professional Claims shall be transferred to Prosperity Bank for application to the Allowed Prosperity Bank Secured Claim.

3.3.2    Treatment of Unpaid Cash Collateral Carveout Claims.    To the extent any Estate Professional has not been paid the full amount of its Allowed Cash Collateral Carveout Claim as of such time after: (i) the Administrative Claims Bar Date; and (ii) that

the Bankruptcy Court determines the Allowed amount of all Professional Claims filed on or before the Administrative Claims Bar Date pursuant to a Final Order (the "Fee Allowance Date"), such Estate Professional shall receive all funds available for distribution to Estate Professionals prior to any other Estate Professionals until such time as all Estate Professionals have been paid the same percentage of their respective Allowed Cash Collateral Carveout Claims (*i.e.*, if, as of the Fee Allowance Date, Estate Professional "A" has been paid sixty (60) percent of its Allowed Cash Collateral Carveout Claim and Estate Professional "B" has been paid thirty (30) percent of its Allowed Cash Collateral Carveout Claim, then Estate Professional "B" shall continue to be paid all funds available for Estate Professionals until it has been paid sixty (60) percent of its Allowed Cash Collateral Carveout Claim). However, because the Committee's Carve Out (as defined in the Cash Collateral Order) applies to all Committee Professionals as a single line-item under the Cash Collateral Budget, the Committee Professionals shall be considered a single Estate Professional for purposes of this Section 3.3.2. Once all Estate Professionals have been paid the same percentage of their respective Allowed Cash Collateral Carveout Claims, all Estate Professionals shall share in any funds available for distribution to Estate Professionals on a *pro rata* basis until all Allowed Cash Collateral Carveout Claims are paid in full pursuant to the terms of this Plan. In addition to the payments described in this Section 3.3.2, to the extent the Committee Professionals have any unpaid Allowed Professional Claim, such claim shall be paid from any amounts for Unsecured Claims under Section 4.7.6 of this Plan, including the quarterly distributions. For the avoidance of doubt, this Section 3.3.2 shall not apply to any amount of an Allowed Professional Claim held by an Estate Professional in excess of its Allowed Cash Collateral Carveout Claim.

3.4    Administrative Tax Claims. Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by this Plan, and shall survive this Plan without need for any action on the part of the holder thereof. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when the same otherwise become due and payable. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtors or the Estates free and clear of any lien securing an Administrative Tax Claim. Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under section 505 of the Bankruptcy Code, are preserved and vest in the Reorganized Debtors as of the Effective Date.

3.5    Section 505. For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtors and the Estates reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, and transfer the same hereunder to the Reorganized Debtors and the Consolidated Estate.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

4.1    Class 1: Priority Claims. Class 1 consists of all Allowed Priority Claims. Nothing in this Plan allows any Priority Claim, and the Debtors and the Estates reserve all rights to object to any Priority Claim, which rights are vested in the Reorganized Debtors and the Consolidated Estate. In full and final satisfaction, release and discharge of, and in exchange for, each Priority

Claim, the Reorganized Debtors shall pay each Priority Claim, to the extent Allowed, and without any interest, attorney's fees, or other charges or penalties arising after the Petition Date or Effective Date, in cash from cash on hand of the Oil and Gas Debtors, no later than ten (10) Business Days after becoming Allowed.  Class 1 is not impaired under this Plan.

4.2     Class 2:  Secured Tax Claims.  Notwithstanding anything contained in this Plan to the contrary, each holder of a Secured Tax Claim shall retain all liens securing the same, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists.  Each Secured Tax Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Secured Tax Claim and any lien securing the same, including all interest, default interest, fees, and costs as provided under otherwise applicable nonbankruptcy law, but without any post-petition penalties, by the Reorganized Debtors and the Consolidated Estate: (i) from the sale of the Oregon Ranch at the closing thereof, with respect to Allowed Secured Tax Claims against the Oregon Ranch; (ii) from the sale of the Llano Ranch Parcel 1 at the closing thereof, with respect to Allowed Secured Tax Claims against the Llano Ranch; and (iii) with respect to Allowed Secured Tax Claims against the Oil and Gas Debtors, in cash through twenty (20) equal quarterly calendar payments, with the first such payment due by the end of the first full calendar quarter to occur after January 1, 2026, and with each subsequent payment due by the end of the succeeding calendar quarter, and the final payment including such additional otherwise applicable statutory interest, or if not applicable, Plan Rate interest, as is necessary to pay such Allowed Secured Tax Claim in full no later than five (5) years after the Petition Date.  Class 2 is impaired under this Plan.

4.3     Class 3: AgWest Secured Claim.

4.3.1     Identification of Class.  Class 3 consists of the AgWest Secured Claim and, additionally, includes all claims, rights, interests, and remedies of AgWest arising at any time between the Petition Date and the Effective Date against the Oregon Debtors and the Oregon Ranch.

4.3.2     Allowance of Claim.  Class 3 is Allowed as a fully Secured Claim in the following amounts (the "Allowed AgWest Secured Claim"):  (i) the amount of $11,235,815.52 as of August 19, 2025; (ii) plus the amount of interest accrued at the fixed rate of 8.75% per annum from August 20, 2025, until paid; and (iii) such other fees and charges, including attorney's fees, as are reasonable and allowable under section 506(b) of the Bankruptcy Code.  If the Debtor or Prosperity Bank disputes AgWest's attorney fees as unreasonable, then the Bankruptcy Court shall retain core jurisdiction to determine if the attorney fees claimed are reasonable.

4.3.3     Liens.  Notwithstanding anything contained in this Plan to the contrary, AgWest shall retain all liens securing AgWest Secured Claims, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists, and which liens shall, additionally, secure all obligations of the Reorganized Debtors to AgWest arising on and after the Effective Date.

4.3.4     Postconfirmation Interest.  The Allowed AgWest Secured Claim shall accrue interest at the rate provided in Section 4.3.2 of this Plan.

4.3.5    Postconfirmation Rights.  Other than any obligation modified by this Plan or rendered not feasible by the fact of the Bankruptcy Case or this Plan, the Oregon Debtors shall comply with reasonable non-monetary obligations contained in the AgWest Loan Documents, including any reporting and insurance requirements.

4.3.6    Subordination Agreement.  Nothing in this Plan modifies or prejudices any right or obligation of AgWest under any subordination agreement with any other creditor, including that certain *Subordination Agreement* between AgWest and Lone Star State Bank of West Texas, as predecessor-in-interest to Prosperity.

4.3.7    Treatment.  In full and final satisfaction, release, and discharge of the Allowed AgWest Secured Claim and all liens securing the same, the Reorganized Debtors, through the Plan Agent, shall pay the same in cash at the closing of the sale of the Oregon Ranch as provided for in Sections 5.3.2 and 5.3.7 of this Plan.

4.3.8    Exercise of Foreclosure Rights.  AgWest shall have such foreclosure rights provided for in Section 5.3.6 of this Plan.  If Prosperity Bank is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against the Oregon Ranch, including to foreclose its liens against the same, AgWest shall, at the same time, be granted all relief from this Plan to exercise its rights against the Oregon Ranch, including to foreclose against the same.

4.3.9    Temporary Protection of Guarantors.  So long as the Reorganized Debtors are not in uncured default of their obligations under this Plan to AgWest, AgWest shall be temporarily restrained from exercising any rights or remedies against any guarantor of the Allowed AgWest Secured Claim (provided that such guarantor is not also a Debtor), and any statute of limitations otherwise applicable to same shall be automatically tolled.

4.3.10    Impairment.  Class 3 is impaired under this Plan.

4.4    Class 4: Prosperity Bank Secured Claims.

4.4.1    Identification of Class.  Class 4 consists of the Prosperity Bank Secured Claim and, additionally, includes all claims, rights, interests, and remedies of Prosperity Bank arising at any time between the Petition Date and the Effective Date against the Debtors and their property.

4.4.2    Allowance of Claim.  Class 4 is Allowed as a fully Secured Claim in the following amount as of the Effective Date (the "Allowed Prosperity Bank Secured Claim"): (i) $51,101,493.84 as of April 25, 2025; plus (ii) interest after April 25, 2025 at the non-default rate of interest provided for under the Prosperity Bank Loan Documents through the Effective Date; plus (iii) such other fees and charges, including attorney's fees, as are reasonable and allowable under section 506(b) of the Bankruptcy Code, *provided, however*, pursuant to Section 10 of the Cash Collateral Order, none of the fees, costs, expenses or other amounts payable pursuant to Section 10 of the Cash Collateral Order shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; with respect to which the Bankruptcy Court shall retain core jurisdiction to determine the

allowance thereof; less (iv) all such attorney's fees and expenses paid by any of the Debtors during the Bankruptcy Case.

4.4.3   <u>Liens</u>.  Except as provided for in Section 5.6 of this Plan, Prosperity Bank shall retain all liens securing the Allowed Prosperity Bank Secured Claims, including but not limited to the Prepetition Loan Liens (as defined by the Cash Collateral Order), which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists, and which liens shall, additionally, secure all obligations of the Reorganized Debtors to Prosperity Bank arising on and after the Effective Date, and Prosperity Bank shall have such additional liens as may be provided for in Section 5.6 of this Plan.

4.4.4   <u>Postconfirmation Interest</u>.  The Allowed Prosperity Bank Secured Claim shall accrue interest at the non-default contract rate provided for in the Prosperity Bank Loan Documents on and after the Effective Date until paid in full.

4.4.5   <u>Postconfirmation Rights</u>.  Other than any obligation modified by this Plan or rendered not feasible by the fact of the Bankruptcy Case or this Plan, the Debtors shall comply with non-monetary obligations contained in the Prosperity Bank Loan Documents, including any reporting and insurance requirements.

4.4.6   <u>Subordination Agreement</u>.  Nothing in this Plan modifies or prejudices any right or obligation of Prosperity Bank under any subordination agreement with any other creditor, including that certain *Subordination Agreement* between AgWest and Lone Star State Bank of West Texas, as predecessor-in-interest to Prosperity Bank.

4.4.7   <u>Treatment</u>.  In full and final satisfaction, release, and discharge of the Allowed Prosperity Bank Secured Claim and all liens securing the same, the Reorganized Debtors, through the Plan Agent, shall pay the same in cash at the closing of the sale(s) of the Oregon Ranch is provided for in Section 5.3 of this Plan and at the closing of the sale(s) of the Llano Ranch Parcel 1 ((excluding the personal property (including vehicles, furnishings, and furniture) owned by O'Ryan Ranches) as provided for in Section 5.4 of this Plan.  If the foregoing are insufficient to pay the Allowed Prosperity Bank Secured Claim in full, then the Reorganized Debtors, through the Plan Agent, shall pay any such unpaid and remaining amount from the sale(s) of the Llano Ranch Parcel 2 ((excluding the personal property (including vehicles, furnishings, and furniture) owned by O'Ryan Ranches) as provided for in Section 5.5 of the Plan.  If all of the foregoing are insufficient to pay the Allowed Prosperity Bank Secured Claim in full, then the Reorganized Debtors shall remain liable to Prosperity Bank, jointly and severally, for any such deficiency, and Prosperity Bank may exercise any and all of its rights against the Reorganized Debtors and their properties regarding such deficiency claim.

4.4.8   <u>Potential Prosperity Bank Release</u>.  If Prosperity Bank affirmatively votes to accept this Plan and in exchange for the other accommodations in this Plan being provided by Prosperity Bank, on the Effective Date, and without need for further order, document, or instrument, all claims and causes of action that any of the Debtors or the Estates may have against any of the Prosperity Bank Releasees, whether known or unknown, scheduled or unscheduled, arising in tort or contract, are waived and released

forever, including, without limitation, any Avoidance Action, action for breach of fiduciary duty, action for alter ego, and any other claim or cause of action that any of the Estates may hold or that any creditor may assert derivatively through any Debtor or Estate, and including any claim or cause of action that is property of the estate under the Bankruptcy Code despite what it may be under applicable non-bankruptcy law. The Debtors and the Estates reaffirm the Debtors' Stipulations (as defined by the Cash Collateral Order) and all other aspects of the Cash Collateral Order, as of the Effective Date.  Upon entry of the Confirmation Order, the Challenge Period (as defined by the Cash Collateral Order) shall lapse for all parties-in-interest, including, but not limited to the Committee.

4.4.9   Exercise of Foreclosure Rights.  If AgWest is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against all or any portion of the Oregon Ranch, including to foreclose its liens against the same, Prosperity Bank shall, at the same time, be granted all relief from this Plan to exercise its rights against the Oregon Ranch, including to foreclose against the same.  If the Plan Agent is permitted under this Plan or an order of the Bankruptcy Court to exercise his rights with respect to the lien granted under Section 5.10 of this Plan, including to foreclose against the same, or there is any uncured default under this Plan, then, at the same time, Prosperity Bank shall be granted all relief from this Plan to exercise its rights against the Llano Ranch, including to foreclose its interests against the same.

4.4.10   Temporary Protection of Guarantors.  So long as the Reorganized Debtors are not in uncured default of their obligations under this Plan to Prosperity Bank, Prosperity Bank shall be temporarily enjoined from exercising any rights or remedies against any guarantor of the Allowed Prosperity Bank Secured Claim (provided that such guarantor is not also a Debtor).  At the conclusion of the Sale Metrics, if the Allowed Prosperity Bank Secured Claim is not fully paid, this temporary injunction shall immediately lift without need for further order.  Any statute of limitations, statute of repose or similar requirement applicable to the bringing of a claim that is enjoined by this section shall be automatically tolled for the duration of any injunction in this section plus 90 days thereafter.

4.4.11   New Loan Documents.  If promptly requested by Prosperity Bank after the Effective Date, the Reorganized Debtors shall execute and deliver to Prosperity Bank such new loan and lien documents and instruments as may be reasonably appropriate to evidence the treatment of the Allowed Prosperity Bank Secured Claim under this Plan, and which shall contain such ordinary and customary reasonable secured lender provisions as are consistent with, and do not frustrate, the provisions of this Plan as applied to Prosperity Bank and its collateral.  In no event shall the same relieve any guarantor of the Allowed Prosperity Bank Secured Claim of any and all obligations to Prosperity Bank.  The Bankruptcy Court shall determine the reasonableness of any such new loan documents by motion practice initiated by either Prosperity Bank or the Debtors and Reorganized Debtors.

4.4.12   Impairment.  Class 4 is impaired under this Plan.

4.5   Class 5: Halliburton Secured Claim.

4.5.1   Identification of Class.  Class 5 consists of the Halliburton Secured Claim.

The treatment of the Halliburton Secured Claim in Class 5 of the Plan shall be in full and final satisfaction, payment, and discharge of the Halliburton Secured Claim and all rights, liens, and interests of Halliburton to property of the Debtors, Estates, the Reorganized Debtors, and the Consolidated Estate.  However, the foregoing shall be wholly without prejudice to the treatment under this Plan of any deficiency or unsecured claim of Halliburton against the Debtors, Estates, Reorganized Debtors, and Consolidated Estate.

4.5.2   Settlement Offer.  If Halliburton votes to accept its Class 5 treatment under this Plan, and regardless of how it votes on any Class 7 Unsecured Claim it has, then: (i) the Halliburton Secured Claim shall be Allowed as a Secured Claim in the amount of $500,000.00; (ii) Halliburton shall retain all liens and security interests securing the Halliburton Secured Claim notwithstanding anything contained to the contrary in this Plan, of undetermined priority, with respect to which priority Prosperity Bank, Halliburton, and the Debtors and Reorganized Debtors reserve all rights, arguments, objections, and claims; (iii) the Halliburton Secured Claim shall bear simple interest at the Plan Rate after the Effective Date; and (iv) the Reorganized Debtors shall pay the Allowed Halliburton Secured Claim, with such postconfirmation interest, through ten (10) equal quarterly calendar payments, made no later than twenty (20) calendar days after the end of each calendar quarter, with the first such payment due by the end of the first full calendar quarter to occur after January 1, 2026.

4.5.3   Default Treatment.  If Halliburton does not affirmatively accept its Class 5 treatment under this Plan, then the Halliburton Secured Claim shall be treated as a Disputed Claim under this Plan and the Bankruptcy Court will determine the extent of the Halliburton Secured Claim, if any, either at the Confirmation Hearing or through claim objection or motion practice thereafter, with respect to which all rights, claims, interests, arguments, objections, and Avoidance Actions of Prosperity Bank and the Debtors are preserved.  No later than twenty (20) calendar days after a Final Order on said determination is entered, the Reorganized Debtors shall, in their sole discretion, either: (i) surrender to Halliburton its collateral securing the Halliburton Secured Claim; or (ii) pay the Allowed amount thereof with interest after the Petition Date (if allowed under section 506(b) of the Bankruptcy Code) and after the Effective Date, both at the Plan Rate, through quarterly payments as provided for in Section 4.5.2(iv) above.

4.5.4   Impairment.  Class 5 is impaired under this Plan.

4.6.a.   Class 6(a): Royalty Claims.

4.6.1   Identification of Class.  Class 6(a) consists of all Royalty Claims.

4.6.2   Allowance of Claims.  For the avoidance of doubt, nothing in this Plan Allows any Royalty Claim, and such Allowance shall remain subject to all applicable laws and rules and any objection thereto, which objections are vested in the Consolidated Estate and the Reorganized Debtors under this Plan.

4.6.3   Postpetition Interest and Fees.  No Royalty Claim shall accrue any interest or be entitled to any attorney's fees or other charges for the period between the Petition Date and the Effective Date.

4.6.4    Lien to Secure Repayment.  Allowed Royalty Claims are hereby granted a junior lien against the Llano Ranch, junior to all other liens existing against the same as of the Effective Date, which lien shall be held and exercised by the Plan Agent for their pro-rata benefit as provided for in Section 5.10 of this Plan, and which lien shall be foreclosed upon any uncured default by the Reorganized Debtors to Class 6(a) under this Plan or at the maturity of the treatment of Class 6(a) as provided below.  Unless otherwise expressly provided in this Plan, the Reorganized Debtors and Hoerauf agree that they will not agree or consent to a lien on the Llano Ranch with equal or greater priority to the lien granted to Royalty Claims in this Plan, other than the Prosperity Bank Secured Claim, prior to the payment in full of all Allowed Royalty Claims.  Hoerauf also agrees not to claim the Llano Ranch as his homestead.

4.6.5    Postconfirmation Interest.  On and after the Effective Date, each Allowed Royalty Claim shall accrue interest at the Plan Rate until paid in full.

4.6.6    Treatment.  In full and final satisfaction, release, and discharge of each Royalty Claim, the Oil and Gas Debtors, as Reorganized Debtors, shall pay each such Royalty Claim, to the extent Allowed, in full and in cash through periodic payments, secured by the lien granted under Section 4.6.4 above, and additionally pursuant to Section 5.4.2 of this Plan.  Such periodic payments shall be as follows: each month after the Effective Date, commencing on January 1, 2026, that the Oil and Gas Debtors make a payment to a royalty interest holder who also holds an Allowed Royalty Claim, the Oil and Gas Debtors shall pay 120% of such monthly amount to such holder, with the excess 20% being applied to such holder's Allowed Royalty Claim until the same, with postconfirmation interest, is paid in full.  Said payments shall continue for 59 months after the Effective Date until each such Allowed Royalty Claim with postconfirmation interest is paid in full, unless paid sooner.  At the end of such 59 months, to the extent that any such Allowed Royalty Claim remains unpaid, the balance thereof shall be paid in full in the 60th month.  If, after the 60th month, any such amount(s) remain unpaid, the Plan Agent may foreclose on the lien granted under Section 4.6.4 above and pay the proceeds thereof pro-rata on all remaining Allowed Royalty Claims then unpaid, with any surplus paid as provided for in the underlying deed of trust.

4.6.7    Exercise of Foreclosure Rights.  If Prosperity Bank is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against the Llano Ranch, including to foreclose its liens against the same, the Plan Agent shall, at the same time, be granted all relief from this Plan to exercise the lien granted in Section 4.6.4 of this Plan, including to foreclose against the same.

4.6.8    Impairment.  Class 6(a) is impaired under this Plan.

4.6.b.    Class 6(b): Working Interest Claims.

4.6.9    Identification of Class.  Class 6(b) consists of all Working Interest Claims.

4.6.10    Allowance of Claims.  For the avoidance of doubt, nothing in this Plan Allows any Working Interest Claim, and such Allowance shall remain subject to all applicable laws and rules and any objection thereto, which objections are vested in the

Consolidated Estate and the Reorganized Debtors under this Plan.

4.6.11 <u>Postpetition Interest and Fees</u>.  No Working Interest Claim shall accrue any interest or be entitled to any attorney's fees or other charges for the period between the Petition Date and the Effective Date.

4.6.12 <u>Lien to Secure Repayment</u>.  Allowed Working Interest Claims are hereby granted a junior lien against the Llano Ranch, junior to all other liens existing against the same as of the Effective Date, which lien shall be held and exercised by the Plan Agent for their pro-rata benefit as provided for in section 5.10 of this Plan, and which lien shall be foreclosed upon any uncured default by the Reorganized Debtors to Class 6(b) under this Plan or at the maturity of the treatment of Class 6(b) as provided below.  Unless otherwise expressly provided in this Plan, the Reorganized Debtors and Hoerauf agree that they will not agree or consent to a lien on the Llano Ranch with equal or greater priority to the lien granted to Working Interest Claims in this Plan, other than the Prosperity Bank Secured Claim, prior to the payment in full of all Allowed Working Interest Claims. Hoerauf also agrees not to claim the Llano Ranch as his homestead.

4.6.13 <u>Postconfirmation Interest</u>.  On and after the Effective Date, each Allowed Working Interest Claim shall accrue interest at the Plan Rate until paid in full.

4.6.14 <u>Treatment</u>.  In full and final satisfaction, release, and discharge of each Working Interest Claim, the Oil and Gas Debtors, as Reorganized Debtors, shall pay each such Working Interest Claim, to the extent Allowed, in full and in cash through periodic payments, secured by the lien granted under Section 4.6.12 above, and additionally pursuant to Section 5.4.2 of this Plan.  Such periodic payments shall be as follows: each month after the Effective Date, commencing on January 1, 2026, that the Oil and Gas Debtors make a payment to a working interest holder who also holds an Allowed Working Interest Claim, the Oil and Gas Debtors shall pay 120% of such monthly amount to such holder, with the excess 20% being applied to such holder's Allowed Working Interest Claim until the same, with postconfirmation interest, is paid in full.  Said payments shall continue for 59 months after the Effective Date until each such Allowed Working Interest Claim with postconfirmation interest is paid in full, unless paid sooner.  At the end of such 59 months, to the extent that any such Allowed Working Interest Claim remains unpaid, the balance thereof shall be paid in full in the 60th month.  If, after the 60th month, any such amount(s) remain unpaid, the Plan Agent may foreclose on the lien granted under Section 4.6.12 above and pay the proceeds thereof pro-rata on all remaining Allowed Working Interest Claims then unpaid, with any surplus paid as provided for in the underlying deed of trust.

4.6.15 <u>Exercise of Foreclosure Rights</u>.  If Prosperity Bank is permitted under this Plan or an order of the Bankruptcy Court to exercise its rights against the Llano Ranch, including to foreclose its liens against the same, the Plan Agent shall, at the same time, be granted all relief from this Plan to exercise the lien granted in Section 4.6.12 of this Plan, including to foreclose against the same.

4.6.16 <u>Impairment</u>.  Class 6(b) is impaired under this Plan.

4.7     Class 7: Unsecured Claims.

4.7.1     Identification of Class.  Class 7 consists of all Unsecured Claims.  For the avoidance of doubt, Class 7 does not include any deficiency claim of AgWest or Prosperity Bank, the same otherwise treated as fully Secured under this Plan.

4.7.2     Allowance of Claims.  For the avoidance of doubt, nothing in this Plan Allows any Unsecured Claim, and such Allowance shall remain subject to all applicable laws and rules and any objection thereto, which objections are vested in the Consolidated Estate and the Reorganized Debtors under this Plan.

4.7.3     Lien to Secure Repayment.  Allowed Unsecured Claims are hereby granted a junior lien against the Llano Ranch Parcel 2, junior to all other liens existing against the same as of the Effective Date and co-equal in priority to the junior lien granted to Allowed Royalty Claims in Section 4.6.4 of this Plan and to Allowed Working Interest Claims in Section 4.6.12 of this Plan, which lien shall be held and exercised by the Plan Agent for their pro-rata benefit as provided for in Section 5.10 of this Plan, and which lien shall be foreclosed upon any uncured default by the Reorganized Debtors to Class 7 under this Plan or at the maturity of the treatment of Class 7 as provided below.  Unless otherwise expressly provided in this Plan, the Reorganized Debtors and Hoerauf agree that they will not agree or consent to a lien on the Llano Ranch Parcel 2 with equal or greater priority to the lien granted to Unsecured Creditors in this Plan, other than the Prosperity Bank Secured Claim, prior to the payment in full of all Allowed Unsecured Claims.  Hoerauf also agrees not to claim Llano Ranch Parcel 2 as his homestead.

4.7.4     Postpetition Interest and Fees.  No Unsecured Claim shall accrue any interest or be entitled to any attorney's fees or other charges for the period between the Petition Date and the Effective Date and for the period after the Effective Date other than as provided for in Section 4.7.5 of this Plan.

4.7.5     Postconfirmation Interest.  On and after the Effective Date, each Allowed Unsecured Claim shall accrue interest at the Plan Rate.

4.7.6     Treatment.  In full and final satisfaction, release, and discharge of each Unsecured Claim, the Reorganized Debtors shall pay the full Allowed amount thereof, including accrued postconfirmation interest, no later than sixty (60) months after the Effective Date as follows: (i) upon the sale of the Oregon Ranch and/or the Llano Ranch Parcel 1, $1,000,000.00 from the total combined net excess sale proceeds after payment of all Allowed Secured Claims and closing costs and broker fees (or such smaller amount if there are insufficient net excess sale proceeds to pay $1,000,000.00 after both the Oregon Ranch and Llano Ranch Parcel 1 are sold) shall be paid pro-rata to Allowed Unsecured Claims; (ii) the Oregon Ranch Proceeds Carveout pursuant to Section 5.7 herein; (iii) quarterly calendar payments to Allowed Unsecured Claims in the amount of $50,000.00 per quarter with the first such payment due by the end of the first full calendar quarter to occur after January 1, 2026, to be secured by the Extex Annual Payments with all rights thereto transferring automatically to the Plan Agent for the sole benefit of Allowed Class 7 Claims; (iv) upon the earlier to occur of (a) the payment in full of the Class 5 Halliburton Secured Claim or (b) the Class 5 Halliburton Secured Claim becomes a Disallowed Claim,

the Reorganized Debtors shall commence making additional quarterly calendar payments to Allowed Unsecured Claims in the amount of $50,000.00 per quarter, to be applied pro-rata to Allowed Unsecured Claims, with the first such payment due by the end of the first full calendar quarter to occur after the calendar quarter in which such payment or disallowance occurs; (v) upon the sale of the whole of the Oregon Ranch (whether in one or more transactions), the Reorganized Debtors shall commence making quarterly calendar payments to Allowed Unsecured Claims in the amount of $100,000.00 per quarter, to be applied pro-rata to Allowed Unsecured Claims, with the first such payment due by the end of the first full calendar quarter to occur after the calendar quarter in which such sale occurs; and (vi) the balance of all Allowed Unsecured Claims, with all accrued and unpaid interest, shall be paid in full by the end of the sixtieth (60th) month after the Effective Date; *provided, however,* that: (x) the failure to generate any net excess sale proceeds as provided for in subsection (i) above shall not be a default under this Plan to Class 7; and (y) the Reorganized Debtors may elect not to make the payments required by subsection (iii) above for two (2) required quarters if their liquidity, in their reasonable judgment, does not enable them to make the same and there are insufficient funds in the Creditor Escrow to make the payments from; *provided further that* upon the failure to make a quarterly payment required by subsection (iii) above, the Plan Agent shall enforce the lien secured by the Extex Annual Payments. Allowed Unsecured Claims shall additionally be paid as provided for in Section 5.4.2 of this Plan. For the avoidance of doubt and as provided in Section 3.3.2 of this Plan, the payments in this Section 4.7.6 shall be subject to Section 3.3.2, including that to the extent the Committee Professionals have any unpaid Allowed Professional Claim, such claim shall be paid first from any amounts for Unsecured Claims under this Section 4.7.6 of this Plan, including the quarterly distributions.

4.7.7   <u>Impairment</u>.  Class 7 is impaired under this Plan.

4.8   <u>Class 8: Convenience Claims</u>.

4.8.1   <u>Identification of Class</u>.  Class 8 consists of all Unsecured Claims, Royalty Claims, and Working Interest Claims asserted in an amount of $500.00 or less.

4.8.2   <u>Allowance of Claims</u>.  Unless a Convenience Class Claim is filed after the Bar Date, each Convenience Class Claim shall be automatically Allowed in the asserted amount.

4.8.3   <u>Treatment</u>.  Each Convenience Class Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Convenience Class Claim, by the Reorganized Debtors, the amount of such Allowed Convenience Class Claim, in cash, and without interest, attorneys' fees, or costs, no later than ten (10) Business Days after becoming Allowed, from cash on hand.

4.8.4   <u>Impairment</u>.  Class 8 is not impaired under this Plan.

4.9.a.   Class 9(a): AmeriCredit Financial Services Secured Claim.

    4.9.1   Identification of Class.  Class 9(a) consists of the AmeriCredit Financial Services Secured Claim.

    4.9.2   Allowance of Claim.  The AmeriCredit Financial Services Secured Claim is Allowed as a fully secured claim.

    4.9.3   Retention of Liens.  Notwithstanding anything contained to the contrary in this Plan, AmeriCredit Financial Services shall retain all liens and security interests securing the AmeriCredit Financial Services Secured Claim.

    4.9.4   Treatment.  Effective on the Effective Date, the Debtors and Reorganized Debtors shall cure and reinstate the AmeriCredit Financial Services Secured Claim according to all documents and instruments evidencing or memorializing the same, and shall, thereafter, pay the AmeriCredit Financial Services Secured Claim in full according to the terms thereof without any change under this Plan, all under section 1124(2) of the Bankruptcy Code.  Unless the Bankruptcy Court determines differently at the Confirmation Hearing or subsequent hearing, any cure or other claim payable to AmeriCredit Financial Services under said section of the Bankruptcy Code shall conclusively be determined, agreed, and paid on the Effective Date.  If the Bankruptcy Court determines that a different cure amount is payable and the Debtors determine, in their sole discretion, not to pay the same, then, in lieu of the cure and reinstatement of said section of the Bankruptcy Code, the Debtors shall promptly surrender to AmeriCredit Financial Services all collateral securing the AmeriCredit Financial Services Secured Claim and AmeriCredit Financial Services may file, no later than thirty (30) days after said surrender, an Unsecured Claim for any alleged deficiency or other claim, with respect to which the Debtors and Reorganized Debtors retain all rights and objections as otherwise provided for in this Plan.

    4.9.5   Postconfirmation Rights.  Provided that the AmeriCredit Financial Services Secured Claim is cured and reinstated under section 1124(2) of the Bankruptcy Code, AmeriCredit Financial Services may exercise any and all of its rights and remedies after the Effective Date, including to foreclose on any of its collateral, in the event of any post-Effective Date default by the Reorganized Debtors to AmeriCredit Financial Services, notwithstanding anything contained to the contrary in this Plan.

    4.9.6   Impairment.  Class 9(a) is not impaired under this Plan.

4.9.b.   Class 9(b): Ford Motor Credit Secured Claim.

    4.9.7   Identification of Class.  Class 9(b) consists of the Ford Motor Credit Secured Claim.

    4.9.8   Allowance of Claim.  The Ford Motor Credit Secured Claim is Allowed as a fully secured claim.

    4.9.9   Retention of Liens.  Notwithstanding anything contained to the contrary in this Plan, Ford Motor Credit Company, LLC shall retain all liens and security interests securing the Ford Motor Credit Secured Claim.

4.9.10  _Treatment_.  Effective on the Effective Date, the Debtors and Reorganized Debtors shall cure and reinstate the Ford Motor Credit Secured Claim according to all documents and instruments evidencing or memorializing the same, and shall, thereafter, pay the Ford Motor Credit Secured Claim in full according to the terms thereof without any change under this Plan, all under section 1124(2) of the Bankruptcy Code.  Unless the Bankruptcy Court determines differently at the Confirmation hearing, any cure or other claim payable to Ford Motor Credit under said section of the Bankruptcy Code shall conclusively be determined to be zero ($0.00).  If the Bankruptcy Court determines that a different cure amount is payable and the Debtors determine, in their sole discretion, not to pay the same, then, in lieu of the cure and reinstatement of said section of the Bankruptcy Code, the Debtors shall promptly surrender to Ford Motor Credit all collateral securing the Ford Motor Credit Secured Claim and Ford Motor Credit may file, no later than thirty (30) days after said surrender, an Unsecured Claim for any alleged deficiency or other claim, with respect to which the Debtors and Reorganized Debtors retain all rights and objections as otherwise provided for in this Plan.

4.9.11  _Postconfirmation Rights_.  Provided that the Ford Motor Credit Secured Claim is cured and reinstated under section 1124(2) of the Bankruptcy Code, Ford Motor Credit may exercise any and all of its rights and remedies after the Effective Date, including to foreclose on any of its collateral, in the event of any post-Effective Date default by the Reorganized Debtors to Ford Motor Credit, notwithstanding anything contained to the contrary in this Plan.

4.9.12  _Impairment_.  Class 9(b) is not impaired under this Plan.

4.10   _Class 10: SBA Secured Claim_.

4.10.1  _Identification of Class_.  Class 10 consists of the SBA Secured Claim.

4.10.2  _Retention of Liens_.  Notwithstanding anything contained to the contrary in this Plan, the SBA shall retain all liens and security interests securing the SBA Secured Claim to the same extent, validity, and priority as such liens existed on the Petition Date.

4.10.3  _Treatment_.  Effective on the Effective Date, the SBA Loan Documents shall be reinstated, with payments to be made in the non-default contractual monthly amount of $10,298.00, beginning on January 26, 2026 and continuing on the 26th day of each month thereafter until paid in full.  In addition to the foregoing non-default contractual monthly payments in the amount of $10,298.00, the default amount of $144,172.00 as of December 31, 2025 will be paid over five years in in the monthly amount of $2,402.87, beginning on January 26, 2026 and continuing on the 26th day of each month thereafter for five years or until paid in full.  For the avoidance of doubt, the SBA will hold an Allowed SBA Secured Claim in the total amount outstanding under the original SBA Loan Documents, with payments beginning on January 26, 2026 in the total monthly amount of $12,700.87, and continuing on the 26th day of each month thereafter, for five years, and then continuing in the amount of $10,298.00 thereafter until paid in full.  Any unpaid amounts will be due in the final payment upon the SBA Loan Documents' maturity date.

4.10.4  _Impairment_.  Class 10 is impaired under this Plan.

4.11   Class 11: Equity Interests.  All Equity Interests in any of the Debtors shall be retained by the respective holder(s) thereof.  Class 11 is not impaired under this Plan.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

5.1   Substantive Consolidation. Automatically on the Effective Date, and without need for further order, document, or action, the Estates shall be substantively consolidated as set forth herein.

5.1.1   Consolidated Estate.  This section of the Plan creates an estate, defined as the "Consolidated Estate," which is comprised of all legal and equitable property, rights, and interests of each of the Debtors and the Estates at any time prior to the Effective Date, with all of such property, rights, and interests substantively consolidated into and with the Consolidated Estate, the effect of which is that the Debtors each guarantee the obligations of each of the other Debtors and combine and merge their property and the property of the Estates, subject to any and all liens, claims, interests, and encumbrances against the Debtors and the Estates as otherwise exist and as may be preserved, created, modified, released, or discharged in this Plan.  Except as otherwise provided in the Plan, a claim against any of the Debtors or the Estates and any property of any of the Debtors or the Estates arising prior to the Effective Date shall attach to the Reorganized Debtors and their property, jointly and severally, with the same validity, extent, and priority as otherwise exists and as provided for in this Plan, but only for purposes of making all payments and satisfying all obligations under this Plan.  All such claims shall be paid from the Consolidated Estate and its property notwithstanding the original obligor on such claim such that any Reorganized Debtor may pay an Allowed Claim against any other Reorganized Debtor.  For the avoidance of doubt, the Reorganized Debtors shall have *in personam* liability for Allowed Claims against the Consolidated Estate as otherwise provided for and modified, and discharged, under this Plan.

5.1.2   No Merger.  Notwithstanding this Section of this Plan, and for the avoidance of doubt: (i) nothing in this Plan merges the Debtors or the Estates for corporate, tax, or governmental purposes; (ii) any claim arising after the Effective Date against the Reorganized Debtors shall exist against the respective Reorganized Debtor and its property, as otherwise appropriate, and not against the Consolidated Estate; (iii) the Reorganized Debtors shall maintain separate bank accounts, reporting, finances, and books and records as they have historically maintained; and (iv) in the event of property of the Consolidated Estate that is subject to a lien, encumbrances, or interest, the consolidation of the Debtors, the Estates, and their property into the Consolidated Estate does not modify, affect, limit, release, discharge, or waive such lien, encumbrance, or interest, unless a different provision of this Plan effectuates such result.  For the further avoidance of doubt, it is the specific intention and operation of this Plan that it: (i) not prejudice any rights, liens, encumbrances, or interests against property of the Estates that survive this Plan, or the ability of the holder of any such rights, liens, encumbrances, or interests to exercise and foreclose on the same, if otherwise consistent with this Plan; and (ii) not apply to any new claims or issues arising after the Effective Date, such that, to the world after the Effective Date the Reorganized Debtors shall remain separate entities for all purposes, but that to all

creditors and persons affected by this Plan, the Debtors and the Estates be consolidated in order to satisfy their obligations under this Plan to such creditors and affected persons.

5.1.3    No Separate Existence.    The Consolidated Estate refers merely to the property of the Reorganized Debtors for the purpose of paying Allowed Claims under this Plan as provided for in this Plan.  The Consolidated Estate is not, and shall not be deemed to be, a separate legal entity or to have any legal existence, other than as provided for under this Plan as a mechanism to pay Allowed Claims.

5.1.4    Release of Claims and Causes of Action.    Any claim or cause of action (including remedies) that any of the Debtors or Estates has against any other Debtor or Estate prior to the Effective Date, for funds lent, intercompany receivable, Avoidance Action, *alter ego*, single business enterprise, or any other veil piercing cause of action or remedy, or related to joint and several liability, contribution, or rights of reimbursement on account of the payment by one of a debt jointly owned with another, including any such debt in the capacity of co-maker or co-obligor, is hereby released and discharged as between the Debtors, the Estates, and Reorganized Debtors.  For the avoidance of doubt, such releases include any claim that any Creditor may be able to assert derivatively for any Debtor, or for fraudulent transfer, for *alter ego*, for single business enterprise, or any other veil piercing cause of action or any other cause of action that, under the Bankruptcy Code, becomes property of an Estate, including any such claim, cause of action, or remedy that may have been asserted by a Creditor (whether or not such Creditor filed a Proof of Claim) prior to the Petition Date.  The Confirmation Order shall contain a final injunction prohibiting all Creditors and parties, whether they filed a Proof of Claim or appeared in the Bankruptcy Case or not, from filing, pursuing, or continuing with any action, claim, cause of action, or remedy released and waived pursuant to this subsection of the Plan.

5.2    Plan Funding.    The Plan shall be funded through the following, as otherwise specified and with differing rights between Creditors provided for in this Plan:

(i)    sale of the Oregon Ranch;

(ii)    sale of the Llano Ranch Parcel 1;

(iii)    potential sale of the Llano Ranch Parcel 2;

(iv)    retainers, carveouts under any order entered in the Bankruptcy Case, and Professional Fees Escrow;

(v)    the Oregon Ranch Proceeds Carveout and the Creditor Escrow; and

(vi)    revenues from operations and cash flow from and after the Petition Date and the Effective Date.

5.3    Sale of the Oregon Ranch.    On and after the Effective Date, the Oregon Debtors shall continue to reasonably and appropriately market for sale the whole of the Oregon Ranch (although, in their reasonable discretion, the Oregon Ranch may be split into one or more parcels for separate sales, provided that the whole of the Oregon Ranch is otherwise marketed for sale and sold), including the Oregon Ranch Carbon Credits, consistent with the Sale Metrics.

5.3.1   Control.  The Plan Agent shall have exclusive and final control over the sale of the Oregon Ranch, including the Oregon Ranch Carbon Credits, and including with respect to listing price and sale price; *provided, however*, that such control shall be subject to the Sale Metrics, which shall control.  The Plan Agent shall cause the Oregon Ranch to be sold at any time that the sale price complies with the Sale Metrics, and provided that such sale otherwise complies with all applicable non-bankruptcy laws.

5.3.2   Payments.  At the closing of any sale of the Oregon Ranch, including the Oregon Ranch Carbon Credits, the Plan Agent shall ensure that, from the gross proceeds of such sale, the following are paid and/or funded in the following priority: (i) all customary and ordinary closing, title, insurance, and broker costs, fees, and expenses, with respect to which, for the avoidance of doubt, the Bankruptcy Court shall retain core jurisdiction to determine any dispute; (ii) *ad valorem* and other property taxes assessed against the Oregon Ranch and secured by a lien, provided that a portion thereof for current taxes may be credited to the buyer, who shall be liable for the same, as would otherwise be ordinary and appropriate in the State of Oregon; (iii) the Allowed AgWest Secured Claim as specified in Section 4.3.7 hereof; (iv) the Oregon Ranch Proceeds Carveout as set forth in Section 5.7 of this Plan; (v) the Allowed Prosperity Bank Secured Claim, to the extent of any and all proceeds remaining, as specified in Section 4.4.7 hereof; (vi) any unpaid Allowed Professional Claims; (vii) the Allowed Unsecured Claims as set forth in Section 4.7.6(i) of this Plan and (viii) to the extent of any proceeds remaining after application to (i) through (vii) above, all such remaining proceeds shall be transferred into the Creditor Escrow.

5.3.4   Execution of Transfer Deeds and Other Closing Documents.  For the avoidance of doubt, and to the exclusion of any and all other management of the Oregon Debtors, the Plan Agent and only the Plan Agent shall be authorized to execute all transfer deeds and other closing documents necessary or appropriate to sell the Oregon Ranch, including to transfer any of the Oregon Ranch Carbon Credits; *provided, however*, that the Bankruptcy Court shall retain all core jurisdiction to compel Hoerauf or any other necessary or appropriate person to execute and to deliver any of the same, or to designate any other person to execute and to deliver the same for the Oregon Debtors.

5.3.5   Release of Liens.  Each of AgWest and Prosperity Bank, and any other Creditor with an alleged lien against any of the Oregon Ranches and/or the Oregon Ranch Carbon Credits, shall execute and deliver an appropriate release of its lien at the closing of the sale of the Oregon Ranch, provided that such closing and sale otherwise comply with this Plan.  For the avoidance of doubt, Prosperity Bank shall be under no obligation to release its lien unless the Sale Metrics are complied with, although it may do so in its sole and absolute discretion.

5.3.6   Foreclosure.  At the conclusion of the Sale Metrics, if the Oregon Ranch is not by then sold as provided for in this Plan, or if the Reorganized Debtors otherwise commit an uncured default in the treatment of Class 3 or Class 4 under this Plan, AgWest or Prosperity Bank may exercise any and all of their respective rights against the Reorganized Debtors and the Oregon Ranch, the Oregon Ranch Carbon Credits, and any other respective collateral that AgWest or Prosperity Bank holds under this Plan.  The Debtors and the Plan Agent hereby waive for themselves and all affiliated successors, and the Confirmation Order shall provide that the Oregon Debtors have waived for themselves

and all affiliated successors: (i) any automatic stay in any future bankruptcy filing that may be imposed against the Oregon Ranch and/or the Oregon Ranch Carbon Credits, related to AgWest's or Prosperity Bank's exercise of rights and remedies allowed under this section; and (ii) the right to obtain a temporary restraining order or other injunctive relief related to AgWest's or Prosperity Bank's exercise of rights and remedies allowed under this section; this waiver may be enforced by the Bankruptcy Court as part of its Confirmation Order. Further, this waiver of any automatic stay pursuant to section 362 of the Bankruptcy Code related to the Oregon Ranch and/or the Oregon Ranch Carbon Credits, is *in rem* with respect to the Oregon Ranch and/or the Oregon Ranch Carbon Credits.

5.3.7   <u>Closing Fees and Costs</u>.  In addition to all other Claims and rights under this Plan, each of AgWest and Prosperity Bank shall be entitled to additional, reasonable attorney's fees, expenses, and other closing charges as are necessary and appropriate for their participation in the closing of the sale of the Oregon Ranch and/or the Oregon Ranch Carbon Credits, to be paid at said closing from the proceeds of said sale.

5.4   <u>Sale of the Llano Ranch Parcel 1</u>.  On and after the Effective Date, reorganized O'Ryan Ranches shall continue to reasonably and appropriately market for sale the Llano Ranch Parcel 1 (although, in its reasonable discretion, the Llano Ranch Parcel 1 may be split into one or more parcels for separate sales, provided that the whole of the Llano Ranch Parcel 1 is otherwise marketed for sale) consistent with the Sale Metrics.

5.4.1   <u>Control</u>.  The Plan Agent shall have exclusive and final control over the sale of the Llano Ranch Parcel 1, including with respect to listing price and sale price; *provided, however*, that such control shall be subject to the Sale Metrics, which shall control.  The Plan Agent shall cause the Llano Ranch Parcel 1 to be sold at any time that the sale price complies with the Sale Metrics, and provided that such sale otherwise complies with all applicable non-bankruptcy laws.

5.4.2   <u>Payments</u>.  At the closing of any sale of the Llano Ranch Parcel 1, the Plan Agent shall ensure that, from the gross proceeds of such sale, the following are paid and/or funded in the following priority: (i) all customary and ordinary closing, title, insurance, and broker costs, fees, and expenses, with respect to which, for the avoidance of doubt, the Bankruptcy Court shall retain core jurisdiction to determine any dispute; (ii) *ad valorem* and other property taxes assessed against the Llano Ranch and secured by a lien, provided that a portion thereof for current taxes may be credited to the buyer, who shall be liable for the same, as would otherwise be ordinary and appropriate in the State of Texas; (iii) the Allowed Prosperity Bank Secured Claim, to the extent of any and all proceeds remaining, as specified in Section 4.4.7 hereof; (iv) any unpaid Allowed Professional Claims; (v) any unpaid Allowed Royalty Claims and unpaid Allowed Working Interest Claims, which shall be transferred into the Creditor Escrow subject to Section 5.26 of this Plan; (vi) the Allowed Unsecured Claims as set forth in Section 4.7.6(i) of this Plan; and (vii) to the extent of any proceeds remaining after application to (i) through (vi) above, all such remaining proceeds shall be transferred into the Creditor Escrow.

5.4.3   <u>Execution of Transfer Deeds and Other Closing Documents</u>.  For the avoidance of doubt, and to the exclusion of any and all other management of O'Ryan Ranches, the Plan Agent shall be exclusively authorized to execute all transfer deeds and

other closing documents necessary or appropriate to sell the Llano Ranch Parcel 1; *provided*, *however*, that the Bankruptcy Court shall retain all core jurisdiction to compel Hoerauf or any other necessary or appropriate person to execute and to deliver any of the same, or to designate any other person to execute and to deliver the same for Llano Ranch Parcel 1.

5.4.4   <u>Release of Liens</u>.  Prosperity Bank shall execute and deliver an appropriate release of its lien at the closing of the sale of Llano Ranch Parcel 1, provided that such closing and sale otherwise comply with this Plan and provided that such release shall not include any release of its lien against Llano Ranch Parcel 2, unless the whole of the Allowed Prosperity Bank Secured Claim then remaining unpaid is paid in full as said closing.  For the avoidance of doubt, Prosperity Bank shall be under no obligation to release its lien unless the Sale Metrics are complied with, although it may do so in its sole and absolute discretion.

5.4.5   <u>Foreclosure</u>.  At the conclusion of the Sale Metrics, if Llano Ranch Parcel 1 is not by then sold as provided for in this Plan, or if the Reorganized Debtors otherwise commit an uncured default in the treatment of Class 4 under this Plan, Prosperity Bank may exercise any and all of its rights against the Reorganized Debtors and the Llano Ranch, and any other collateral that Prosperity Bank holds under this Plan.  The Debtors and the Plan Agent hereby waive for themselves and all affiliated successors, and the Confirmation Order shall provide that the Debtors and the Plan agent have waived for themselves and all affiliated successors: (i) any automatic stay in any future bankruptcy filing that may be imposed against the Llano Ranch related to Prosperity Bank's exercise of rights and remedies allowed under this section; and (ii) the right to obtain a temporary restraining order or other injunctive relief related to Prosperity Bank's exercise of rights and remedies allowed under this section; this waiver may be enforced by the Bankruptcy Court as part of its Confirmation Order. Further, this waiver of any automatic stay pursuant to section 362 of the Bankruptcy Code or injunctive relief related to the Llano Ranch is *in rem* with respect to the Llano Ranch.

5.4.6   <u>Closing Fees and Costs</u>.  In addition to all other Claims and rights under this Plan, each Prosperity Bank shall be entitled to additional, reasonable attorney's fees, expenses, and other closing charges as are necessary and appropriate for its participation in the closing of the sale of the Llano Ranch Parcel 1, to be paid at said closing from the proceeds of said sale.

5.5   <u>Conditional Sale of the Llano Ranch Parcel 2</u>.  Prosperity Bank and any *ad valorem* tax lien creditor shall retain all liens as against the Llano Ranch Parcel 2.  However, O'Ryan Ranches and the Reorganized Debtors shall be under no obligation to market for sale, and to sell, the Llano Ranch Parcel 2 until the expiration of the Sale Metrics; *provided*, *however*, that the Reorganized Debtors shall otherwise timely pay *ad valorem* tax liens against the Llano Ranch arising after the Effective Date, meaning attaching on January 1, 2026.  The failure to timely do so shall be a default of the Debtors' obligations to Class 4 under this Plan.  Upon the expiration of the Sale Metrics, the Reorganized Debtors shall have one (1) year after said date to either sell Llano Ranch Parcel 2 for sufficient proceeds to pay the then-remaining Allowed Prosperity Bank Secured Claim in full, or shall pay the same from refinancing the Llano Ranch Parcel 2 or from any other of their property or cash that is not otherwise payable to a different Class under this Plan.

Upon the expiration of such year without such payment, Prosperity Bank may exercise any and all of its rights against the Llano Ranch Parcel 2, including to foreclose against the same as otherwise provided for under Texas law and the Plan Agent shall release its liens on Parcel 2 if requested by Prosperity Bank upon payment of the proceeds of the sale of Llano Ranch Parcel 2 after payment of then-remaining Allowed Prosperity Bank Secured Claim in full.  For the avoidance of doubt, however, upon an uncured default by the Reorganized Debtors of their obligations under this Plan to Prosperity Bank, then Prosperity Bank may immediately foreclose on the whole of its interests against the Llano Ranch. The Debtors and the Plan Agent hereby waive for themselves and all affiliated successors, and the Confirmation Order shall provide that the Debtors and the Plan Agent have waived for themselves and all affiliated successors: (i) any automatic stay in any future bankruptcy filing that may be imposed against the Llano Ranch related to Prosperity Bank's exercise of rights and remedies allowed under this section; and (ii) the right to obtain a temporary restraining order or other injunctive relief related to Prosperity Bank's exercise of rights and remedies allowed under this section; this waiver may be enforced by the Bankruptcy Court as part of its Confirmation Order. Further, this waiver of any automatic stay pursuant to section 362 of the Bankruptcy Code or injunctive relief related to the Llano Ranch is *in rem* with respect to the Llano Ranch.

    5.6   <u>Modification of Prosperity Bank Liens</u>.  All liens and security interests of Prosperity Bank against any and all property of the Debtors, the Estates, and the Consolidated Estate are preserved under this Plan with the same extent and priority as otherwise exists, except as expressly provided as follows:

(i)    the liens and security interests of Prosperity Bank against the Oregon Ranch with respect to the Oregon Ranch Proceeds Carveout;

(ii)    Prosperity Bank shall be granted valid, first priority liens and security interests against the Oregon Ranch Carbon Credits and the proceeds thereof as of the Effective Date, and Prosperity Bank may immediately prepare and record such instruments as it reasonably believes to be appropriate to perfect the same, which instruments the respective Oregon Debtor(s) shall execute and deliver to Prosperity Bank;

(iii)    Prosperity Bank's liens and security interests shall extend to the whole of the Oregon Ranch (including any property not currently covered by the Prosperity Bank Loan Documents) notwithstanding any argument, claim, or defense to the contrary, with the same priority as its lien otherwise exists except as provided in the next sentence.  If AgWest does not affirmatively vote to accept this Plan, then, to the extent that AgWest does not have a perfected lien to any of the Oregon Ranch, the lien of Prosperity Bank granted or conferred by this section to any such portion of the Oregon Ranch shall be superior to in priority to any asserted lien of AgWest to such portion; and

(iv)    Prosperity Bank shall retain all of its rights, security interests, liens, and causes of action against or related to the PB Materials Stock, including as against any transfer or proceeds thereof prior to the Petition Date, and Prosperity Bank may exercise any and all of its rights with respect to the same notwithstanding anything contained to the contrary in this Plan, except as against the Hoerauf Releasees.

5.7    Oregon Ranch Proceeds Carveout.    The Plan Agent shall retain the first $500,000.00 of proceeds from the sale of Tract V of the Oregon Ranch (the "Oregon Ranch Proceeds Carveout").    The Oregon Ranch Proceeds Carveout shall not reduce the amount of the Prosperity Bank Secured Claim.  The Plan Agent shall hold and promptly disburse the Oregon Ranch Proceeds Carveout first to any Allowed Professional Fee Claims of the Committee's Professionals then remaining unpaid and, to the extent any of the Oregon Ranch Proceeds Carveout remains thereafter, pro-rata to Allowed Unsecured Claims, subject to the Disputed Claims Reserve.

5.8    Hoerauf Causes of Action and Releases.

5.8.1    Retention of Claims.  All claims and causes of action of any and all of the Estates against any of the Hoerauf Releasees are retained and preserved under this Plan and vest in the Plan Agent, including all such claims, causes of action, and remedies whether known or unknown, scheduled or unscheduled, arising in tort or contract, including any Avoidance Action, action for breach of fiduciary duty, action for *alter ego*, action for single business enterprise or any other veil piercing cause of action, and any other claim or cause of action that any of the Estates may hold or that any Creditor may assert derivatively through any Debtor or Estate, and including any claim or cause of action that is property of the estate under the Bankruptcy Code.  On and after the Effective Date, all Class 7 Creditors are enjoined and prohibited from prosecuting any such claim or cause of action for their sole benefit, but one or more of them may seek an order from the Bankruptcy Court providing for their derivative standing to assert such claims and causes of action for the benefit of all Allowed Unsecured Claims if the Bankruptcy Court determines that the Plan Agent has not proceeded appropriately with respect to the same, or if there is no Plan Agent, or for any other appropriate reason in law or equity as the Bankruptcy Court may decide.

5.8.2    Tolling of Limitations.  All statutes of limitation and statutes of repose applicable to any of the claims and causes of action the subject of subsection 5.8.1 above are tolled for a period of one hundred and eighty (180) days following any uncured default by the Reorganized Debtors to Class 7 under this Plan.

5.8.3    Prosecution.  Upon any uncured default by the Reorganized Debtors to Class 7 under this Plan, the Plan Agent shall, in his reasonable discretion, assert, file, prosecute, and monetize all claims and causes of action the subject of subsection 5.8.1 above, with respect to which he may hire counsel (including on a contingency basis) and may compromise any such claim and cause of action in his reasonable discretion.  Upon any uncured default by the Reorganized Debtors to Class 7 under this Plan, Halliburton, in consultation with Amber Gill, individually and as co-trustee of the ARG Trust, Shad Gill, as co-trustee of the ARG Trust, and Electrum Energy, LLC (collectively, the "Gill Parties")  (but only to the extent any of the Gill Parties has an Allowed Claim), may replace the Plan Agent with such person of their choice, providing for the reasonable control of the Plan Agent's discretion with respect to asserting, filing, prosecuting, monetizing, and compromising all claims the subject of subsection 5.8.1 above, and all such other things with respect to the foregoing that they and the current or replacement Plan Agent may agree to in writing; *provided, however,* that in no event shall Halliburton or the Gill Parties owe any fiduciary duties or other duties to any Creditor or party-in-interest under this Plan, and

that in no event shall Halliburton or the Gill Parties have any potential liability to anyone under this Plan with respect to actions taken pursuant to this Section or Section 5.23.10.

5.8.4    Net Proceeds.  Any net proceeds received or obtained by the Plan Agent pursuant to any prosecution, settlement, or other monetization pursuant to subsection 5.8.3 above shall be paid pro-rata to Allowed Unsecured Claims in Class 7, to be applied dollar-for-dollar to their Allowed Unsecured Claims.

5.8.5    Conditional Release.  At such time as each Allowed Unsecured Claim in Class 7 has been paid, including all accrued and unpaid interest, and without need for further order, document, or instrument, all claims and causes of action (including remedies) that any of the Debtors or the Estates may have against any of the Hoerauf Releasees, whether known or unknown, scheduled or unscheduled, arising in tort or contract, are waived and released forever, including, without limitation, any Avoidance Action, action for breach of fiduciary duty, action for *alter ego*, action for single business enterprise or any other veil piercing cause of action, and any other claim or cause of action that any of the Estates may hold or that any Creditor may assert derivatively through any Debtor or Estate, and including any claim or cause of action that is property of the Estate under the Bankruptcy Code despite what it may be under applicable non-bankruptcy law, including any such claim, cause of action, or remedy that may have been asserted by a Creditor (whether the Creditor filed a Proof of Claim or not) prior to the Petition Date.

5.9    Maintenance of the Oregon Ranch.  From and after the Effective Date, the Oil and Gas Debtors, in addition to all other obligations under this Plan, shall pay the operating expenses of the Oregon Ranch in such amounts and for such purposes as are in the reasonable business judgment of the Plan Agent, with the primary purpose thereof to be to ensure reasonable fire suppression and mitigation and road maintenance so as to preserve the value of the Oregon Ranch.

5.10    Junior Lien for Allowed Class 6 and Class 7 Claims.  On the Effective Date, and automatically, the Plan Agent, solely as agent and not in his personal capacity, is hereby granted a lien against the Llano Ranch, junior in priority to all other liens against the Llano Ranch as of the Effective Date, to secure the Reorganized Debtors' obligations under this Plan to Allowed Royalty Claims and Allowed Working Interest Claims as provided for in Sections 4.6.4 and 4.6.12 of this Plan and to Allowed Unsecured Claims as provided for in Section 4.7.3 of this Plan.  Said lien shall extend to the Llano Ranch Parcel 1 solely for Class 6 Allowed Claims pro-rata as between them, and shall extend to the Llano Ranch Parcel 2 for both Class 6 Allowed Claims to the extent not paid from the Llano Ranch Parcel 1, and to Class 7 Allowed Claims, with respect to which such Class 6 and Class 7 claims shall be treated pro-rata.  The Plan Agent shall hold said lien solely for the benefit of Allowed Class 6 and Allowed Class 7 Claims.  As a condition to the occurrence of the Effective Date, O'Ryan Ranches shall execute and deliver to the Plan Agent a deed of trust, to be filed with the Plan Supplement prior to the Confirmation Date, and which shall contain reasonable and customary provisions, evidencing the foregoing lien, which deed of trust the Plan Agent shall cause to be recorded against the Llano Ranch promptly after the Effective Date.  Upon an uncured default of the Reorganized Debtors to Class 6 under this Plan, or if Prosperity Bank is otherwise permitted to exercise its rights against the Llano Ranch under this Plan, the Plan Agent shall foreclose on or otherwise monetize this lien, in his reasonable discretion, and shall pay any net proceeds therefrom pro-rata to Allowed Royalty Claims and Allowed Working Interest Claims then remaining unpaid, having first accounted from any such gross proceeds for the fees and

expenses of said foreclosure or monetization.  Upon an uncured default of the Reorganized Debtors to Class 7 under this Plan, or if Prosperity Bank is otherwise permitted to exercise its rights against the Llano Ranch under this Plan, the Plan Agent shall foreclose on or otherwise monetize this lien, in his reasonable discretion, and shall pay any net proceeds therefrom pro-rata to Allowed Royalty Claims and Allowed Working Interest Claims then remaining unpaid and to Allowed Unsecured Claims, having first accounted from any such gross proceeds for the fees and expenses of said foreclosure or monetization.  For the avoidance of doubt, nothing in this Plan or in the Sale Metrics requires the payment of the foregoing lien upon the sale of the Llano Ranch Parcel 1, and said lien with respect to the Llano Ranch Parcel 1 shall be released by the Plan Agent at the closing thereof even if no proceeds remain (after payment of all higher priority liens) for payment towards said lien.

5.11    Assumption of Executory Contracts.

5.11.1  General.  The Debtors shall file motions to assume or reject all Executory Contracts within three Business Days of entry of the Confirmation Order.

5.11.2  Oil and Gas Leases.  Oil and Gas Leases are not leases or executory contracts subject to section 365 of the Bankruptcy Code and are instead interests in real property, all of which are retained under this Plan and vest in the respective Reorganized Debtor subject to all burdens, claims, liabilities, and obligations thereunder, except as otherwise modified by this Plan for any of the foregoing arising prior to the Effective Date.

5.11.3  Brokerage and Listing Contracts.  All contracts for the listing, brokerage, marketing, and sale of the Oregon Ranch and the Llano Ranch Parcel 1 in existence immediately prior to the Effective Date are assumed automatically on the Effective Date without need for further order or document and shall be retained by or vested in the respective Reorganized Debtor.  No Cure Claim shall be payable for the same, but the counterparties shall retain all of their pre-assumption rights, including to payment, as otherwise provided for in said assumed contracts.

5.12    Vesting of Assets.  On the Effective Date, and without need for further action, document, or instrument, all property of the Debtors and the Estates shall vest in the Reorganized Debtors free and clear of all claims, liens, interests, and encumbrances, except to the extent that any such claim, lien, interest or encumbrance is expressly preserved or created in this Plan, and subject to the Consolidated Estate created under this Plan.

5.13    Assumption of Debt.  The Reorganized Debtors and the Consolidated Estate shall assume only that debt of, and only those Claims against, the Debtors and the Estates as provided for in this Plan, including, without limitation, all obligations to make any payment to any Class provided for in this Plan, and then only as restructured and provided for in this Plan and subject to all releases and waivers of claims and causes of action otherwise provided for in this Plan. Otherwise, the Reorganized Debtors do not assume, and shall not be liable for, any other debt of, or Claims against, the Debtors or the Estates, including any such debt that is discharged.

5.14    Automatic Stay.  The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on

the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

5.15    <u>Rights Under Section 505</u>. All Claims for taxes by Governmental Units and any claim to a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code and shall vest in the Reorganized Debtors. The Reorganized Debtors may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.16    <u>Management of the Reorganized Debtors</u>. On and after the Effective Date, the officers and directors (or managers, if an LLC) of the Reorganized Debtors shall be Ryan C. Hoerauf with an annual salary, to be paid by the Oil and Gas Debtors, of $250,000.00, plus reimbursement and payment of pass-through taxes incurred by or payable for the Oil and Gas Debtors (in addition to other customary and ordinary expense reimbursement). The Reorganized Debtors shall have no other directors, managers, or officers, subject to such future change and variation as is otherwise appropriate under all applicable non-bankruptcy law. For the avoidance of doubt, nothing in this Plan limits any future compensation to any director, officer, or employee by the Reorganized Debtors, subject to any otherwise applicable rights, rules, laws, or principles. The Plan Agent shall not manage the Reorganized Debtors or have any role over their operations, but shall instead be limited to selling the real properties and taking the other actions specified in this Plan.

5.17    <u>Prohibition on Dividends</u>. So long as any Class of Creditor under this Plan remains unpaid in whole or in part, to the extent such payment is otherwise payable under this Plan, then none of the Reorganized Debtors shall make any distribution, dividend, or other transfer on account of any Equity Interest. For the avoidance of doubt, the foregoing shall not include: (i) ordinary wages and expense reimbursement; (ii) any payment on account of a Royalty Claim or Working Interest Claim; (iii) indemnification as otherwise provided for under any corporate governance document and Texas law; and (iv) payment of pass-through income or other taxes. A breach by the Reorganized Debtors of these requirements, including any attempt to circumvent these requirements through disguised transactions, shall be a default by the Reorganized Debtors under this Plan. The Plan Agent shall monitor the Reorganized Debtors to ensure compliance with these requirements and the Reorganized Debtors shall cooperate with any reasonable document requests from the Plan Agent related to this section of the Plan.

5.18    <u>Corporate Existence</u>. The Reorganized Debtors shall retain the Debtors' corporate existence and governing charters, articles, membership agreements, and bylaws, together with all tax and corporate attributes otherwise applicable to the Debtors, unless any change to any of the foregoing is necessitated by this Plan, in which case such parties as appropriate shall take such actions as are appropriate to effectuate the same and to ensure the continued and continuing corporate existence, in good standing, of the Reorganized Debtors. As soon as practicable after the Effective Date, any Reorganized Debtor that is a corporation shall amend its corporate charter to include a provision prohibiting it from issuing nonvoting securities.

5.19    <u>Incorporation of Exhibits</u>. Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.20   <u>Prepayment</u>.  For the avoidance of doubt, the Reorganized Debtors may prepay any Claim that they are responsible to pay under this Plan, which prepayment shall be without future interest, prepayment premium, prepayment penalty, or any yield maintenance.

5.21   <u>Retention and Preservation of Causes of Action</u>.  Unless expressly and specifically released in this Plan or through any order entered in the Bankruptcy Case, all claims and causes of action, including Avoidance Actions, are reserved and preserved under this Plan and transfer to and vest in the Reorganized Debtors and the Consolidated Estate except as otherwise provided for in this Plan, including in Section 5.8 of this Plan, subject to all defenses and affirmative defenses thereto.

5.22   <u>Prohibition Against Creditor Action</u>.   On and after the Effective Date, and unless otherwise released in this Plan, the Avoidance Actions, claims and causes of action (and remedies) for *alter ego*, single business enterprise, and any other veil piercing claim, and all actions that the Estates may bring in addition to any Creditor, whether asserted or asserted by such Creditor or not, shall be the sole property of the Reorganized Debtors and the Consolidated Estate vesting in the Plan Agent as provided for in Section 5.8.1 above, and no Creditor may assert, file, or prosecute any such claim, cause or action, or action (or remedy) (including for fraudulent transfer, *alter ego*, single business enterprise, and any other veil piercing claim) for itself, for Creditors, or for the Reorganized Debtors or the Consolidated Estate with respect to a debt or Claim arising at any time prior to the Effective Date; *provided, however,* that in the event of a conversion of the Bankruptcy Case after the Effective Date, all such claims, causes of action, or action shall be property of the Chapter 7 estate(s) to be administered as is otherwise appropriate by any Chapter 7 trustee(s).  For the avoidance of doubt, the foregoing does not apply to any claim, cause of action, or action (or remedy) that is personal to any Creditor (*e.g.* neither a different Creditor nor the Debtors or the Estates can bring such action individually, collectively, or derivatively).

5.23   <u>Plan Agent</u>.

5.23.1   <u>Creation of Plan Agent</u>.  On the Effective Date, the Plan Agent shall be created pursuant to 11 U.S.C. § 1123(b)(3)(B).

5.23.2   <u>Identification of Plan Agent</u>.  The Plan Agent shall be disclosed in the Plan Supplement.

5.23.3   <u>Role and Authority</u>.  The purpose, role, and authority of the Plan Agent shall be to market and sell the Oregon Ranch, to market and sell the Llano Ranch Parcel 1, to hold, prosecute, and monetize the claims and causes of action the subject of Section 5.8 of this Plan, to hold and foreclose on the lien(s) granted under Section 5.10 of this Plan, to monitor the payments and performance of the Reorganized Debtors, to object to and resolve Unsecured Claims, and to otherwise take such actions as provided for in this Plan. The Plan Agent shall have fiduciary duties to act as the Plan provides, but shall otherwise not be a fiduciary to any given Creditor or to the Reorganized Debtors.

5.23.4   <u>Exclusion of Role</u>.   The Plan Agent shall have no role, authority, or obligation to market and sell the Llano Ranch Parcel 2 or to manage any aspects of the business of the Oil and Gas Debtors.

5.23.5 <u>Exculpation and Indemnification</u>.  In no event shall the Plan Agent have any liability to anyone for negligence, and shall instead only have potential liability for gross negligence, intentional act, or breach of fiduciary duty, all as the same applies to his actions under this Plan after the Effective Date.  The Reorganized Debtors shall indemnify and hold harmless the Plan Agent, including for any reasonable attorney's fees and expenses, with respect to any action that may be commenced against him, unless he is found by Final Order to have any liability not exculpated under this Plan.

5.23.6 <u>Compensation</u>.  The Oil and Gas Debtors, as Reorganized Debtors, shall compensate the Plan Agent at an hourly rate to be disclosed in the Plan Supplement.  The Reorganized Debtors shall be in default under this Plan if they fail to timely pay the same.  The Creditor Escrow may be used to make any such defaulted payment prior to any payment from the Creditor Escrow on Allowed Royalty Claims, Allowed Working Interest Claims, and Allowed Unsecured Claims.

5.23.7 <u>Retention of Professionals</u>.  The Plan Agent may retain legal counsel as is necessary to enable him to fulfill his roles and duties under this Plan, the reasonable fees and expenses of which will be paid by the Oil and Gas Debtors as Reorganized Debtors in addition to his fees and expenses, no later than thirty (30) days after an invoice from the Plan Agent for the same.  The Reorganized Debtors shall be in default under this Plan if they fail to timely pay the same. The Creditor Escrow may be used to make any such defaulted payment prior to any payment from the Creditor Escrow on Allowed Royalty Claims, Allowed Working Interest Claims, and Allowed Unsecured Claims.  Upon the expiration of the retention of any real estate broker retained pursuant to this Plan, or the termination or resignation of the same, the Plan Agent may retain replacement brokers, upon the written approval of Prosperity Bank, and provided that they are paid from the sale proceeds at any closing of their respective real properties.

5.23.8 <u>Duration</u>.  The role of the Plan Agent shall cease when Classes 3, 4, 6, and 7 are paid in full as provided for in this Plan.

5.23.9 <u>Relief from Bankruptcy Court</u>.  The Plan Agent shall have standing to appear and be heard, and to seek relief, from the Bankruptcy Court and any other court of competent jurisdiction as may be necessary or appropriate to enable him to carry out his role and duties, to protect him from alleged liability not otherwise provided for in this Plan, and for all such purposes as may be appropriate under all applicable law.  Any creditor with an Allowed Claim may petition the Bankruptcy Court to remove the Plan Agent as such for cause, which matter shall be heard on expedited motion.

5.23.10 <u>Replacement Plan Agent</u>.  In the event of the removal or resignation of the Plan Agent, Prosperity Bank and Halliburton shall designate the replacement Plan Agent, except potentially with respect to rights and role of the Plan Agent specified in Section 5.8 of this Plan, in which case there may be two Plan Agents with the latter being limited to those matters specified in Section 5.8 of this Plan. In connection with the selection of a replacement Plan Agent under this Section 5.23.10, Halliburton shall consult with the Gill Parties (but only to the extent any of the Gill Parties has an Allowed Claim).  For purposes of this Section, the Gill Parties and Halliburton can and should be contacted through their counsel of record in this matter. To the extent Prosperity Bank and Halliburton are unable

to designate the replacement Plan Agent, Prosperity Bank and Halliburton may request the Court appoint the replacement Plan Agent.

5.23.11 <u>Inchoate Lien</u>. The Plan Agent shall have a lien against any remaining sale proceeds after the payment thereof to AgWest and to Prosperity Bank as otherwise provided for in this Plan, to secure all unpaid indemnification, compensation and expenses, and legal counsel fees and expenses, as otherwise provided for in this Plan, which lien shall be paid from any next available sale proceeds of all such property prior to the payment of any such proceeds to any creditor junior in priority to AgWest or Prosperity Bank or to any Reorganized Debtor. With respect to his administration and foreclosure of the lien granted to Allowed Royalty Claims under Section 4.6.4 of this Plan, Allowed Working Interest Claims under Section 4.6.12, and Allowed Unsecured Claims under Section 4.7.3 of this Plan, all reasonable fees and expenses of the Plan Agent and any legal counsel employed to assist him with respect to the same shall be paid from the proceeds of such lien prior to the payment of any such proceeds on Allowed Royalty Claims and Allowed Working Interest Claims, together with the administration of such proceeds.

5.24 <u>Postconfirmation Reporting</u>. In addition to any otherwise applicable reporting requirements, and until all Allowed Claims are paid in full as otherwise provided for in this Plan, the Reorganized Debtors shall provide the following documents and information to the Plan Agent: (i) within twenty (20) days after the end of each calendar quarter, a report which lists, with respect to the preceding calendar quarter: (a) each payment made under the Plan or paid into the Disputed Claims Reserve, including the identity of the Creditor, the amount paid to such Creditor, and the date of such payment; and (b) the amount of each outstanding Creditor's claim, including any accrued interest (if applicable); and (ii) within thirty (30) days after the end of each calendar quarter, the following financial statements for the Reorganized Debtors as generated by the Reorganized Debtors' accounting software: (a) balance sheet, and (b) income statement; (iii) within thirty (30) days after the following documents are produced or filed: (a) financial statements for any of the Reorganized Debtors; (b) Federal Tax returns for any of the Reorganized Debtors including all attachments; and (iv) such other information as may be reasonably requested by the Plan Agent in order for the Plan Agent to fulfill his obligations under this Plan. Notwithstanding the foregoing, the Reorganized Debtors shall have no obligation to share any otherwise privileged (by the attorney-client or the attorney work product privilege(s)) documents and information with the Plan Agent. The failure by the Reorganized Debtors to timely provide such reporting shall constitute a default of their obligations under this Plan.

5.25 <u>Default and Cure</u>. In the event of any default by the Reorganized Debtors under this Plan, where such default is capable of monetary or cure, and expressly excluding any default that is a maturity default, which cannot be cured, any affected Creditor or the Plan Agent may transmit notice of such default to the Reorganized Debtors as provided for in Section 11.9 of this Plan, whereafter the Reorganized Debtors shall have ten (10) Business Days after the transmission of said notice to cure said default. If they fail to fully cure said default during said period, then they shall be in uncured default of this Plan and any affected Creditor or the Plan Agent may take any and all actions otherwise authorized under this Plan or any lien instrument. The Reorganized Debtors shall be entitled to cure only one such default in any full 365 day period after the Effective Date, whereafter the second such default in said 365 day period will not entitle the Reorganized Debtors to any opportunity to cure such default and the Reorganized Debtors shall be in uncured default of this Plan upon the transmission of the notice of said default as provided for in Section

11.9 of this Plan, whereafter any affected Creditor or the Plan Agent may take any and all actions otherwise authorized under this Plan or any lien instrument.

5.26 <u>Creditor Escrow</u>. Any remaining net proceeds from the sales of the Oregon Ranch and the Llano Ranch Parcel 1 under Sections 5.3 and/or 5.4 of this Plan shall be placed into an escrow account (the "<u>Creditor Escrow</u>"). The Creditor Escrow shall be under the exclusive control of the Plan Agent, who shall deposit such funds into an interest-bearing account. The Creditor Escrow shall exist solely to pay the Plan Agent and the Allowed Class 6 and Class 7 Claims, pro-rata, by the Plan Agent, as though the Allowed Claims in said Classes were part of the same Class, if the Reorganized Debtors default under this Plan on their obligations to said Classes, up to the full amount of such Allowed Claims and the Reorganized Debtors' remaining unpaid obligations to said Classes; *provided, however*, that any net proceeds from the sale of Llano Ranch Parcel 1 transferred into the Creditor Escrow for the benefit of the unpaid Allowed Royalty Claims and unpaid Allowed Working Interest Claims shall be subject to the lien granted in Sections 4.6.4 and 4.6.12 of this Plan and shall be used solely to pay any defaults to Allowed Class 6 Claims pursuant to this Plan, subject to the Reorganized Debtors' remaining unpaid obligations to Class 6. For the avoidance of doubt, after Allowed Class 6 Claims are paid in full, any remaining proceeds in the Creditor Escrow (including from the sale of Llano Ranch Parcel 1) shall be used to pay any defaults to Allowed Class 7 Claims, subject to the Reorganized Debtors' remaining unpaid obligations to Class 7. Upon the full payment of Allowed Class 6 and Class 7 Claims, any funds in the Creditor Escrow shall be promptly released by the Plan Agent to the Reorganized Debtors.

5.27 <u>Dissolution of Committee</u>. The Committee shall cease to exist on the Effective Date, provided that this shall be without prejudice to any member thereof asserting an Administrative Claim and to the Professionals thereof asserting a Professional Claim.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1. <u>Impairment Controversies</u>. If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

6.2. <u>Classes and Claims Entitled to Vote</u>. Classes: 2, 3, 4, 5, 6(a), 6(b), 7, and 10 are impaired and entitled to vote on this Plan. Classes: 1, 8, 9(a), 9(b), and 11 are not impaired and are deemed to accept this Plan, subject to any objection to confirmation of this Plan.

## ARTICLE VII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

7.1. <u>Objection Deadline</u>. Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived. Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim. Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate. Unless arising from

an Avoidance Action, any Proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Reorganized Debtors may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date. Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

7.2.    Creditor Response to Objection. With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Debtor and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

7.3.    No Waiver of Right to Object. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release, or impair any Debtor's or other appropriate party-in-interest's right to object to any Claim. A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

7.4.    Miscellaneous Provisions for Disputed Claims. Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely Proof of Claim, and the holder of such Disputed Claim who is required to file a Proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise. The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim. Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Fort Worth Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. The Debtor shall retain all rights of removal to federal court as to any proceeding involving a Disputed Claim.

7.5.    Allowance of Disputed Claims. All Disputed Claims shall be liquidated and determined as follows:

7.5.1.    Application of Adversary Proceeding Rules. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a

Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules.  However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings.  The Reorganized Debtors may, at their election, make and pursue any objection to a Claim in the form of an adversary proceeding.

       7.5.2.  <u>Scheduling Order</u>.  Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof.  The Reorganized Debtors may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

       7.5.3.  <u>Mediation</u>.  The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim.  The Reorganized Debtors may include a request for mediation in its objection, and request that the Court require mediation as part of the scheduling order.

       7.5.4.  <u>Post-Substantial Consummation</u>.  All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

       7.5.5  <u>Offsets</u>.  The Reorganized Debtors shall retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

   7.6    <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>.  Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

   7.7    <u>Disputed Claims Reserve</u>.  Each time that the Reorganized Debtors are required to make a payment under this Plan to any particular Class pro-rata or *pari passu*, the Reorganized Debtors shall calculate and make such payments as though all Claims in such Class have been Allowed in the amounts asserted (or estimated or as otherwise ordered by the Bankruptcy Court), but they shall withhold any such payments attributable to Disputed Claims (or the amounts of Claims that are disputed) or that have yet to be Allowed (or the amounts of Claims that  have yet to be Allowed) (the "<u>Disputed Claims Reserve</u>").  Upon the resolution of the respective Disputed Claim or the allowance thereof, no later than ten (10) Business Days after the entry of a Final Order providing for such resolution or allowance, the Reorganized Debtors shall pay such withheld amounts to the respective Creditors such that, at that time, such Creditors shall have been paid *pari passu* with other Creditors whose Claims have been Allowed.  Upon the disallowance of a Disputed Claim or a Claim not being Allowed, by Final Order, such withheld amounts shall be included in the next payment by the Reorganized Debtors to Allowed Claims within such Class in addition to any regularly scheduled payment.  Should withheld amounts on account of Disputed

Claims or Claims not yet Allowed remain at the conclusion of any repayment schedule for any Class, the Reorganized Debtors shall continue to hold the same and shall either pay the same when such Disputed Claims become Allowed or, when all Claims within the respective Class have been finally adjudicated by Final Order, shall pay any such remaining withheld funds to the remaining Allowed Claims within such Class notwithstanding the conclusion of the repayment period. If such withheld funds remain and all Allowed Claims within the respective Class have been paid in full as otherwise provided for in this Plan, then such withheld funds may be retained and used by the Reorganized Debtors for such purposes as they wish. As part of their reporting to the Plan Agent, the Reorganized Debtors shall include all reasonable information regarding the maintenance, calculation, and funding of the Disputed Claims Reserve, and the Plan Agent shall have the authority to require the Reorganized Debtors to properly fund, maintain, and distribute from the same.

## ARTICLE VIII
## EFFECTS OF PLAN CONFIRMATION

8.1     <u>Discharge</u>.  On the Effective Date, and automatically, without need for further document, order, or action, each Debtor is discharged of all Claims arising prior to the Effective Date pursuant to the provisions of section 1141(d) of the Bankruptcy Code.

8.2     <u>Plan Injunction</u>.  Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the Estates or any of their property, or against the Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim or debt that is discharged under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Estates or their property, or against the Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim or debt that is discharged under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors or the Estates or their property, or against the Reorganized Debtors and the Consolidated Estate or any of their property, on account of a Claim, interest, lien, or debt that is discharged under this Plan, unless specifically and expressly permitted in this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtors or their property, or against the Reorganized Debtors or any of their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

8.3     <u>No Liability for Solicitation or Participation</u>.  Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account

of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

8.4    Exculpation.    Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that any of the Debtors or their Estates may have or be able to assert against: (i) any of the Debtors or Reorganized Debtors; and (ii) the Committee and its members after the Petition Date through the Effective Date, solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case, the Disclosure Statement, or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released; *provided further, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional act.

**ARTICLE IX**
**CONDITIONS PRECEDENT**

9.1.    Conditions Precedent to Confirmation and Effectiveness of Plan.    The Plan shall not become effective until the following conditions shall have been satisfied or waived in writing by the Debtors, Prosperity Bank, and the Committee: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors, Prosperity Bank, and the Committee; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) a deed of trust evidencing the lien granted under Section 5.10 of this Plan shall have been executed and recorded; (iv) all other specific condition precedents contained in this Plan shall have been satisfied; and (v) a notice of the Effective Date shall have been filed by the Debtor in the Bankruptcy Case.

9.2.    Non-Occurrence of the Effective Date.    If the Plan is confirmed but the Effective Date does not occur by October 1, 2025, unless such date is extended by the Debtors: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtors and other parties-in-interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

9.3.    Notice of the Effective Date.    On or before three (3) Business Days after occurrence of the Effective Date, the Debtor shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the

deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

9.4.   <u>Modification of this Plan</u>.  The Debtors may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtors or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan.

9.5.   <u>Revocation or Withdrawal of this Plan</u>.  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

9.6   <u>Inadmissible Settlement Offer</u>.  If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Debtors or the Estate.

## ARTICLE X
## <u>RETENTION OF JURISDICTION AND CLAIMS</u>

10.1.   <u>Jurisdiction of Bankruptcy Court</u>.   Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

10.1.1.   To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

10.1.2.   To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

10.1.3.   To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

10.1.4.   To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

10.1.5.        To construe and to take any action to enforce this Plan and the Confirmation Order;

10.1.6.        To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

10.1.7.        To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

10.1.8.        To hear and determine all applications for Administrative Claims;

10.1.9.        To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

10.1.10.        To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.1.11.        To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

10.1.12        To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Debtors find it necessary or appropriate to seek an order authorizing the same.

10.1.13.        To enter the Final Decree upon proper request;

10.1.14.        To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtors and the Estates free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may due to the same with the same full force and effect;

10.1.15.        To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or the Estate, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and

10.1.16    To hear and determine any Avoidance Actions, including any Avoidance Action against the Hoerauf Releasees.

10.1.17    To hear and determine all matters affecting the Plan Agent and to provide him appropriate relief.

10.2.    <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

10.3.    <u>No Creation of Jurisdiction</u>.    This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists.  For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

10.4.    <u>Retention and Preservation of General Rights</u>.  Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtors and the Estates retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtors; and (vii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

10.5    <u>Retention and Preservation of Specific Rights</u>.  Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the Debtors and the Estates specifically reserve and retain the following claims and causes of action, which shall in no way be extinguished, released, or prejudices as a result of the confirmation of this Plan, and which are transferred to the Reorganized Debtors and the Consolidated Estate:

    (i)    the Avoidance Actions;

    (ii)    objections to all Mechanics Liens Secured Claims, and the determination of the validity, extent, and priority of any liens securing the same;

    (iii)    all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code;

(iv)    all causes of action, Including Avoidance Actions, related in any way to the PB Materials Stock;

(v)     all claims and causes of action (including remedies) of any and all of the Estates against any of the Hoerauf Releasees, whether known or unknown, scheduled or unscheduled, arising in tort or contract, including any Avoidance Action, action for breach of fiduciary duty, action for alter ego, action for single business enterprise or any other veil piercing cause of action, and any other claim or cause of action that any of the Estates may hold or that any Creditor may assert derivatively through any Debtor or Estate, and including any claim or cause of action that is property of the estate under the Bankruptcy Code; and

(vi)    all causes of action of the Estates and the Consolidated Estate.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1.   <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date, shall be timely paid by the Reorganized Debtors, subject to the rights of the Reorganized Debtors to contest the same.  After the Effective Date, the Reorganized Debtors shall each file individual quarterly reports, in a form reasonably acceptable to the U.S. Trustee, and pay all quarterly fees when they become due until the Bankruptcy Case is closed.

11.2.   <u>Exercise of Liens</u>.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

11.3.   <u>No Admissions</u>.   Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

11.4.   <u>Plan Controls</u>. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

11.5.   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

11.6.   <u>Substantial Consummation of Plan</u>.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

11.7.   <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

11.8.   <u>Severability</u>.   Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

11.9.   <u>Notices and Distributions</u>.  On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's Proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtors.  Any holder of a Claim may designate another address for the purposes of this section by providing the Reorganized Debtors written notice of such address, which notice will be effective upon receipt by the Reorganized Debtors as otherwise appropriate.

Any notices required to be sent under this Plan to the Reorganized Debtors may be sent as follows:

| To the Reorganized Debtors: | with a copy to: |
|---|---|
| Scanrock Oil & Gas, Inc., *et al.* | Scanrock Oil & Gas, Inc., *et al.* |
| Attn: Ryan C. Hoerauf | c/o Munsch Hardt Kopf & Harr, P.C. |
| 8180 Lakeview Center, Ste. 300 | Attn: Garrick C. Smith |
| Odessa, Texas 79765 | 500 N. Akard Street, Suite 4000 |
| | Dallas, Texas 75201 |

11.10.   <u>Interest</u>.  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, "interest" shall mean simple interest accruing on an annual basis with regard to outstanding principal debt unless expressly stated otherwise therein.

11.11   <u>Unclaimed Property</u>.  If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtors.

11.12.   <u>Binding Effect</u>.  The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

11.13.  <u>Withholding and Reporting</u>.  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements.  Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtors shall be authorized, but not required, to deduct from such payments any necessary withholding amount.

11.14.  <u>Credit for Non-Debtor Payments</u>.  Notwithstanding the Allowance of a Claim under this Plan or otherwise, the Reorganized Debtors shall be entitled to a credit against their obligations under this Plan for each Claim on account of which the holder thereof obtains any recovery from a non-Debtor or from the property of a non-Debtor.  In no event shall a Claim be entitled to more than one, full satisfaction, regardless of source.

## ARTICLE XII
## CONFIRMATION REQUEST

The Debtors hereby request confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

[*Remainder of page intentionally left blank*]

Dated: July 18, 2025

**FOR THE DEBTORS:**

/s/ *Ryan C. Hoerauf*
Ryan C. Hoerauf

/s/ *Bradford C. Walker*
Bradford C. Walker
Chief Restructuring Officer

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ *Davor Rukavina*
　　Davor Rukavina, Esq.
　　Texas Bar No. 24030781
　　Thomas D. Berghman, Esq.
　　Texas Bar No. 24082683
　　Garrick C. Smith, Esq.
　　Texas Bar No. 24088435
　　Jonathan S. Petree, Esq.
　　Texas Bar No. 24116897
　　500 N. Akard Street, Suite 4000
　　Dallas, Texas  75201-6659
　　Telephone: (214) 855-7500

**ATTORNEYS FOR THE OIL AND GAS
DEBTORS AND THE OREGON DEBTORS**

**-- and --**

**JOBE LAW PLLC**

By: /s/ *Hudson M. Jobe*
　　Hudson M. Jobe
　　Texas Bar No. 24041189
　　6060 North Central Expressway, Suite 500
　　Dallas, Texas 75206
　　Telephone: (214) 807-0563

**ATTORNEYS FOR O'RYAN RANCHES, LTD**

United States Bankruptcy Court
Northern District of Texas

In re:                                                                     Case No. 25-90001-mxm

Scanrock Oil & Gas, Inc.                                                   Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

District/off: 0539-9                          User: admin                              Page 1 of 6
Date Rcvd: Sep 03, 2025                        Form ID: pdf024                    Total Noticed: 3

The following symbols are used throughout this certificate:

**Symbol        Definition**

+               Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS
                regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Sep 05, 2025:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Scanrock Oil & Gas, Inc., 8180 Lakeview Center, Ste. 300, Odessa, TX 79765-8873 |
| aty | + | Deborah A. Buchanan, Randall L. Rouse and B. Blue Hyatt, Lynch Chappell & Alsup PC, 300 N. Marienfeld, Ste. 700, Midland, TX 79701-4393 |
| aty | + | Munsch Hardt Kopf & Harr, P.C., c/o Thomas Berghman, 500 N. Akard St. Ste. 4000, Dallas, TX 75201-6605 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| aty | | Munsch Hardt Kopf & Harr, P.C. |
| aty | | Porter Hedges LLP |

TOTAL: 2 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Sep 05, 2025                          Signature:          /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on September 3, 2025 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Aimee E. Marcotte | |
| | on behalf of Creditor Tarrant Regional Water District amarcotte@condontobin.com |
| Alysia Cordova | |
| | on behalf of Creditor Gray County Tax Office  Collingsworth County Appraisal District, Hutchinson County Tax Office, and Wheeler County Tax Office amabkr@pbfcm.com, amabkr@pbfcm.com |
| Alysia Cordova | |

District/off: 0539-9                     User: admin                          Page 2 of 6
Date Rcvd: Sep 03, 2025                  Form ID: pdf024                       Total Noticed: 3

on behalf of Creditor Midland County amabkr@pbfcm.com  amabkr@pbfcm.com

Amber Michelle Carson

on behalf of Creditor Eastham Drilling  Inc. d/b/a Big E. Drilling Co. acarson@grayreed.com

Andrew B. Curtis

on behalf of Creditor ZJ Falcon Management  LLC, dba Falcon Energy Services andrew@bigbeecurtislaw.com,
grant@bigbeecurtislaw.com;christi@bigbeecurtislaw.com

Annmarie Antoniette Chiarello

on behalf of Creditor Prosperity Bank achiarello@winstead.com  poakley@winstead.com

Blake Bryan

on behalf of Creditor Eastham Drilling  Inc. d/b/a Big E. Drilling Co. bbryan@grayreed.com, vsalazar@grayreed.com

Charles E. Lauffer, Jr.

on behalf of Creditor Genecov Group  Inc. raeannr@rllawfirm.net

Charles E. Lauffer, Jr.

on behalf of Creditor The Genecov Group  Inc. raeannr@rllawfirm.net

Conor White

on behalf of Debtor Scanrock Oil & Gas  Inc. cwhite@munsch.com, CourtMail@munsch.com;hvalentine@munsch.com

David G. Adams

on behalf of Creditor Small Business Administration david.g.adams@usdoj.gov
southwestern.taxcivil@usdoj.gov;david.adams4@usdoj.gov;brooke.lewis@usdoj.gov;CaseView.ECF@usdoj.gov

Davor Rukavina

on behalf of Debtor Scanrock Oil & Gas  Inc. drukavina@munsch.com, Courtmail@munsch.com

Dawn Whalen Theiss

on behalf of Creditor Small Business Administration dawn.theiss@usdoj.gov
brooke.lewis@usdoj.gov;CaseView.ECF@usdoj.gov

Diane W. Sanders

on behalf of Creditor Llano County austin.bankruptcy@lgbs.com

Don Stecker

on behalf of Creditor Ector CAD don.stecker@lgbs.com

Don Stecker

on behalf of Creditor Ward County don.stecker@lgbs.com

Don Stecker

on behalf of Creditor Pecos County don.stecker@lgbs.com

Eric M. English

on behalf of Other Professional Official Committee of Unsecured Creditors eenglish@porterhedges.com
emoreland@porterhedges.com;mwebb@porterhedges.com;eliana-garfias-8561@ecf.pacerpro.com

Eric Thomas Haitz

on behalf of Creditor Ad Hoc Royalty Interest Owners Group eric.haitz@bondsellis.com  linda.gordon@bondsellis.com

Fernando M. Bustos

on behalf of Defendant O'Ryan Production & Exploration  Ltd. fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Sage Fountain Hills Partners  LLC fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Scanrock Oil & Gas  Inc. fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant EON Production  LLC fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Ryan E&P Management  Inc. fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant O'Ryan Mission Ltd. fbustos@bustoslawfirm.com
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

District/off: 0539-9 | User: admin | Page 3 of 6
Date Rcvd: Sep 03, 2025 | Form ID: pdf024 | Total Noticed: 3

Fernando M. Bustos

on behalf of Defendant Lease Supervisors  LLC fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Smackover Oil Treaters Ltd. fbustos@bustoslawfirm.com
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant O'Ryan Oregon Ranches  LLC fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant O'Ryan Ponderosa  LLC fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Deanna K. Hoerauf fbustos@bustoslawfirm.com
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Ryan Mission  Inc. fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant O'Ryan Ranches  Ltd. fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Fernando M. Bustos

on behalf of Defendant Ryan Properties  Inc. fbustos@bustoslawfirm.com,
dtrotter@bustoslawfirm.com;pdoporto@bustoslawfirm.com;bcallahan@bustoslawfirm.com;zhernandez@bustoslawfirm.com;esee
ley@bustoslawfirm.com;bcasey@bustoslawfirm.com

Garrick Chase Smith

on behalf of Debtor Scanrock Oil & Gas  Inc. gsmith@munsch.com

Garrick Chase Smith

on behalf of Debtor O'Ryan Ranches  LLC gsmith@munsch.com

Garrick Chase Smith

on behalf of Debtor O'Ryan Oregon Ranches  LLC gsmith@munsch.com

Gina Johnnie

on behalf of Creditor AgWest Farm Credit  FLCA gina@shermlaw.com, bjorn@shermlaw.com

Hudson M. Jobe

on behalf of Debtor O'Ryan Ranches  Ltd. hjobe@jobelawpllc.com,
cswoveland@jobelawpllc.com;9222306420@filings.docketbird.com;mberryman@jobelawpllc.com

Hudson M. Jobe

on behalf of Interested Party O'Ryan Ranches  Ltd hjobe@jobelawpllc.com,
cswoveland@jobelawpllc.com;9222306420@filings.docketbird.com;mberryman@jobelawpllc.com

Hudson M. Jobe

on behalf of Creditor O'Ryan Ranches  Ltd. hjobe@jobelawpllc.com,
cswoveland@jobelawpllc.com;9222306420@filings.docketbird.com;mberryman@jobelawpllc.com

Jacob J King

on behalf of Defendant Scanrock Oil & Gas  Inc. jking@munsch.com, CourtMail@munsch.com

Jeff P. Prostok

on behalf of Creditor Bite My Pipe  LLC jeff.prostok@vhh.law,
jprostok@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankrupt
cy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com

Jeffery D. Carruth

on behalf of Creditor Halliburton Energy Services  Inc. jcarruth@condontobin.com,
jsteele@condontobin.com;jcarruth@aol.com;atty_carruth@trustesolutions.com;carruthjr87698@notify.bestcase.com;ATTY_CAR
RUTH@bluestylus.com;jcarruth@ecf.courtdrive.com

John J. Kane

on behalf of Creditor AgWest Farm Credit  FLCA jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com;srhea@krcl.com

John Kendrick Turner

on behalf of Creditor Navarro County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

District/off: 0539-9

Date Rcvd: Sep 03, 2025

User: admin

Form ID: pdf024

Page 4 of 6

Total Noticed: 3

John Kendrick Turner
on behalf of Creditor Kaufman County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Malakoff ISD john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Reagan County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Rusk County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Mark Stern
on behalf of Creditor Texas Comptroller of Public Accounts Revenue Accounting Division bk-jstern@oag.texas.gov, sherri.simpson@oag.texas.gov

Jonathan Summerfield Petree
on behalf of Debtor O'Ryan Production & Exploration Ltd. jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor EON PRODUCTION LLC jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor O'Ryan Oregon Ranches LLC jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor Smackover Oil Treaters Ltd. jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor Ryan C. Hoerauf Inc. jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor Scanrock Oil & Gas Inc. jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor O'Ryan Ponderosa LLC jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor O'Ryan Ranches LLC jpetree@munsch.com, CourtMail@munsch.com

Jonathan Summerfield Petree
on behalf of Debtor O'Ryan Family Limited Partnership jpetree@munsch.com CourtMail@munsch.com

Julie Anne Parsons
on behalf of Creditor The County of Freestone Texas jparsons@mvbalaw.com, karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons
on behalf of Creditor Central Appraisal District of Taylor County jparsons@mvbalaw.com karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons
on behalf of Creditor Reeves County Tax Districts jparsons@mvbalaw.com karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons
on behalf of Creditor Midland Central Appraisal District jparsons@mvbalaw.com karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons
on behalf of Creditor The County of Henderson Texas jparsons@mvbalaw.com, karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons
on behalf of Creditor Burnet Central Appraisal District jparsons@mvbalaw.com karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons
on behalf of Creditor The County of Anderson Texas jparsons@mvbalaw.com, karla.alexander@mvbalaw.com;theresa.king@mvbalaw.com;juanie.montalvo@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Katharine Battaia Clark
on behalf of Creditor Electrum Energy LLC kclark@thompsoncoburn.com smeiners@thompsoncoburn.com;lcarranza@thompsoncoburn.com;ldebardeleben@thompsoncoburn.com;lbrasher@thompsoncoburn.com;hfischer@thompsoncoburn.com

Katharine Battaia Clark
on behalf of Creditor Amber Gill kclark@thompsoncoburn.com smeiners@thompsoncoburn.com;lcarranza@thompsoncoburn.com;ldebardeleben@thompsoncoburn.com;lbrasher@thompsoncoburn.com;hfischer@thompsoncoburn.com

Katharine Battaia Clark
on behalf of Creditor Shad Gill kclark@thompsoncoburn.com

smeiners@thompsoncoburn.com;lcarranza@thompsoncoburn.com;ldebardeleben@thompsoncoburn.com;lbrasher@thompsoncoburn.com;hfischer@thompsoncoburn.com

Kerry L. Haliburton

on behalf of Creditor Don Wallace Covey 1993 Trust haliburton@namanhowell.com
karen@namanhowell.com;raquel@namanhowell.com;belinda@namanhowell.com

Kerry L. Haliburton

on behalf of Creditor Frank Paul Covey 1993 Trust haliburton@namanhowell.com
karen@namanhowell.com;raquel@namanhowell.com;belinda@namanhowell.com

Kerry L. Haliburton

on behalf of Creditor Mary Helen Covey haliburton@namanhowell.com
karen@namanhowell.com;raquel@namanhowell.com;belinda@namanhowell.com

Kyle L. Dickson

on behalf of Creditor Pure-Flow Technologies  Inc. kdickson@murray-lobb.com, mgarcia@murray-lobb.com

Lynda L. Lankford

on behalf of Creditor Bite My Pipe  LLC lynda.lankford@vhh.law,
llankford@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankruptcy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com

Mark Stromberg

on behalf of Creditor S2DST OGM  Ltd. mark@strombergstock.com, deanna@strombergstock.com;elise@strombergstock.com

Mark Stromberg

on behalf of Creditor Wiley Roosth Family Partnership  Ltd. mark@strombergstock.com,
deanna@strombergstock.com;elise@strombergstock.com

Mark Stromberg

on behalf of Creditor Steven C. Roosth mark@strombergstock.com  deanna@strombergstock.com;elise@strombergstock.com

Matthew Thomas Taplett

on behalf of Creditor Tarrant Regional Water District mtaplett@popehardwicke.com

Michael L Atchley, II

on behalf of Creditor Tarrant Regional Water District matchley@popehardwicke.com

Michael Scott Held

on behalf of Creditor Propak Systems  Ltd. mheld@jw.com, kgradney@jw.com;osalvatierra@jw.com

Michael Shane Johnson

on behalf of Other Professional Official Committee of Unsecured Creditors sjohnson@porterhedges.com

Micheal Wayne Bishop

on behalf of Creditor Eastham Drilling  Inc. d/b/a Big E. Drilling Co. mbishop@grayreed.com

Phillip L. Lamberson

on behalf of Creditor Prosperity Bank plamberson@winstead.com

Randall L Rouse

on behalf of Attorney Deborah A. Buchanan  rrouse@lcalawfirm.com  varmendariz@lcalawfirm.com

Robert W. Berleth

on behalf of Other Professional Robert Berleth rberleth@berleth.com

Ryan J. McNeel

on behalf of Plaintiff Well Castle Limited rmcneel@brockettmcneel.net

Sahrish Khan Soleja

on behalf of Interested Party Texas Commission On Environmental Quality sahrish.soleja@oag.texas.gov
bankruptcy@oag.texas.gov

Sean T. Flynn

on behalf of Interested Party Texas Commission On Environmental Quality Sean.Flynn@oag.texas.gov
bankruptcy@oag.texas.gov

Stephen Wilcox

on behalf of Creditor Americredit Financial Services  Inc. d/b/a GM Financial kraudry@wilcoxlaw.net,
swilcoxndtx@wilcoxlaw.net;krw77@sbcglobal.net;kraudry@ecf.inforuptcy.com

Susan B. Hersh

on behalf of U.S. Trustee United States Trustee susan.hersh@usdoj.gov

Thomas Daniel Berghman

on behalf of Debtor O'Ryan Ranches  LLC tberghman@munsch.com,
amays@munsch.com;CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman

on behalf of Defendant Scanrock Oil & Gas  Inc. tberghman@munsch.com,
amays@munsch.com;CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor O'Ryan Family Limited Partnership tberghman@munsch.com
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Defendant Scanrock Oil and Gas  Inc. tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor Scanrock Oil & Gas  Inc. tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor O'Ryan Oregon Ranches  LLC tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor O'Ryan Production & Exploration  Ltd. tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor O'Ryan Ponderosa  LLC tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor EON PRODUCTION  LLC tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor Smackover Oil Treaters  Ltd. tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Thomas Daniel Berghman
on behalf of Debtor Ryan C. Hoerauf  Inc. tberghman@munsch.com,
amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com

Todd Jeffrey Johnston
on behalf of Creditor Arnold Oil Company of Austin  L.P. tjohnston@mcjllp.com, tlofgren@mcjllp.com

Todd Jeffrey Johnston
on behalf of Creditor Arnold Oil Company Fuels  LLC tjohnston@mcjllp.com, tlofgren@mcjllp.com

Todd Jeffrey Johnston
on behalf of Plaintiff Well Castle Limited tjohnston@mcjllp.com  tlofgren@mcjllp.com

Todd Jeffrey Johnston
on behalf of Creditor Well Castle Limited tjohnston@mcjllp.com  tlofgren@mcjllp.com

Todd Jeffrey Johnston
on behalf of Plaintiff Arnold Oil Company Fuels  LLC tjohnston@mcjllp.com, tlofgren@mcjllp.com

Todd Jeffrey Johnston
on behalf of Defendant Arnold Oil Company of Austin  L.P. tjohnston@mcjllp.com, tlofgren@mcjllp.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

TOTAL: 108